Alexis DeLaCruz (SBN 031273)
adelacruz@nativedisabilitylaw.org
NATIVE AMERICAN DISABILITY
LAW CENTER
3535 E. 30th Street, Suite 201
Farmington, NM 87402
Telephone: 505.566.5880

Mark Rosenbaum (*pro hac vice*)
mrosenbaum@publiccounsel.org
Kathryn Eidmann (*pro hac vice*)
keidmann@publiccounsel.org
Anne Hudson-Price (*pro hac vice*)
aprice@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: 213.385.2977

Elisabeth Bechtold (*pro hac vice*)
ebechtold@aclu-nm.org
Maria Martinez-Sánchez (*pro hac vice*)
mmartinez@aclu-nm.org
AMERICAN CIVIL LIBERTIES UNION
of NEW MEXICO
1410 Coal Avenue SW
Albuquerque, NM 87104
*Attorneys for Plaintiffs*

Bradley S. Phillips (*pro hac vice*)
Brad.Phillips@mto.com
Bryan H. Heckenlively (*pro hac vice*)
bryan.heckenlively@mto.com
Seth J. Fortin (*pro hac vice*)
Seth.Fortin@mto.com
Emily Curran-Huberty (*pro hac vice*)
Emily.Curran-Huberty@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071

Judith M. Dworkin (SBN 010849)
Judith.Dworkin@SacksTierney.com
David C. Tierney (SBN 002385)
David.Tierney@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Tara C. Ford (*pro hac vice*)
taraford@law.stanford.edu
Stanford Law School
MILLS LEGAL CLINIC
559 Nathan Abbott Way
Stanford, CA 94305-8610

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| STEPHEN C., a minor, by Frank C., guardian ad litem, et al. | No. 3:17-cv-08004-SPL |
|---|---|
| Plaintiffs, | **REDACTED** |
| v. | **OPPOSITION TO DEFENDANTS'** |
| BUREAU OF INDIAN EDUCATION, et al. | **SECOND PARTIAL MOTION TO** |
| Defendants. | **DISMISS** |

## I.     INTRODUCTION AND BACKGROUND

This action is brought by nine Havasupai children and the Native American Disability Law Center (collectively, "Plaintiffs") to redress the federal government's pervasive and longstanding deprivations of educational rights at Havasupai Elementary School, which is operated and funded by Defendants. The Second Amended Complaint ("SAC") is organized around Plaintiffs' three primary claims:

**(1)** Defendants have failed to provide basic general education required by the

1884763.v2

Indian Education Act and its implementing regulations. *E.g.*, SAC ¶¶ 138-56 (documenting violations of 25 U.S.C. §§ 2000, 2001; 25 C.F.R. §§ 32.2-32.4). The numerous violations of federal law include a curriculum that provides no instruction in any subject other than math and English, SAC ¶¶ 138-39, and routine, severe understaffing requiring the school to shut down when it should otherwise be in session. *Id.* ¶¶ 140-47.

**(2)** Defendants have failed to establish a system for the delivery of special education to students with disabilities, in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations. *E.g.*, *id.* ¶¶ 171-79. As a result, instead of receiving education, students with disabilities are functionally excluded from the school: placed on "restricted hours" schedules in which they receive as few as three hours of instruction per week, sent home from school early nearly every day, or, as in the case of Plaintiff Stephen C., prosecuted in federal court for pulling the cord out of the back of a computer monitor. *Id.* ¶¶ 176, 53.

**(3)** Despite clear evidence that these students are subjected to repeated and severe childhood adversity, Defendants have failed to provide reasonable accommodations necessary to ensure that Student Plaintiffs whose ability to learn has been impaired by exposure to complex trauma have meaningful access to public education, in violation of Section 504. *Id.* ¶¶ 157-70.

These cumulative deprivations have resulted in indefensible deficits in academic achievement and educational attainment, with tragic costs for Student Plaintiffs and their peers. *Id.* ¶¶ 180-85. According to the most recent data, Havasupai Elementary School students performed at the *1st percentile in reading and the 3rd percentile in math*, by far the lowest of any BIE school surveyed. *Id.* ¶ 182. Students who complete eighth grade at the school are so far behind that they often cannot meet the coursework and proficiency requirements to attend BIE high schools. *Id.* ¶ 184. Twelve-year-old Stephen C. can barely read and write. *Id.* ¶ 57.

Defendants have filed a partial motion to dismiss ("MTD"). **First**, Defendants

argue that Student Plaintiffs who no longer attend Havasupai Elementary School lack standing to sue. But all Student Plaintiffs have been injured by the denial of required educational services when they attended or were eligible to attend the school, and those injuries can be redressed by the equitable remedy of compensatory education. **Second**, Defendants move to dismiss Count IV, which alleges that Defendants have violated Section 504 by failing to accommodate students whose ability to learn has been impacted by exposure to complex trauma. As discussed *infra* Section II.B.1., the SAC alleges that the effects of childhood adversity and complex trauma endured by Student Plaintiffs cause palpable, physiological harm to brain function and brain development, which impedes the ability to learn, read, think, concentrate, and communicate. *Id.* ¶¶ 161-64. This constitutes a disability within the meaning of Section 504. Moreover, Defendants' argument that knowledge is required is derived from mistaken application of an employment law standard under the Americans with Disabilities Act—no such requirement exists under Section 504 of the Rehabilitation Act. **Third**, contrary to Defendants' claim, the regulations implementing Section 504 are enforceable by an implied private right of action. **Fourth**, Defendants' argument that the head of a Cabinet-level department or agency is the sole proper defendant here likewise mistakenly applies another statute's legal standard. Defendants' authority interprets *Section 501* of the Rehabilitation Act—again, no such limitation exists with respect to Section 504.

## II.    ARGUMENT

### A.    Plaintiffs Who No Longer Attend Havasupai Elementary School Have Standing to Sue for the Equitable Remedy of Compensatory Education

The Student Plaintiffs who no longer attend Havasupai Elementary School satisfy all three prongs of Article III's case or controversy requirement by alleging that Defendants have denied them required educational services, which can be redressed by a favorable decision awarding compensatory education. All Student Plaintiffs have been harmed by the Defendants' failure to provide required education during each Plaintiff's time at the school or when students were eligible to attend the school but were forced to obtain education away from home due to the pervasive deprivations of education at the

school.[1] Compensatory education can remedy these injuries regardless of whether a particular Plaintiff currently attends the school or is still eligible to attend the school, which only serves grades K-8. All Student Plaintiffs have therefore sought compensatory education as an equitable remedy for Defendants' failure to provide required educational services, SAC Request for Relief 3.k., which is authorized under both the APA and Section 504.

Compensatory education is a form of equitable relief appropriate to remedy Defendants' past failure to provide education to which students are entitled. Time and again, the Ninth Circuit has held that compensatory education is "an equitable remedy, part of the court's resources in crafting 'appropriate relief'." *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994); *see, e.g.*, *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) ("Compensatory education is an equitable remedy that seeks to make up for 'educational services the child should have received in the first place'."); *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) ("Compensatory education services can be awarded as appropriate equitable relief.").[2] All Plaintiff Students will benefit from the provision of the education to which they are legally entitled. The remedy of compensatory education is "designed to ensure that the student is appropriately educated," not to provide a simple "day-to-day compensation for time missed." *Puyallup*, 31 F.3d at 1497. Courts, therefore, have been "creative in fashioning the amount and type of compensatory education services to award." *Prescott*, 631 F.3d at 1126. Student

---

[1] Plaintiffs reserve the right to brief any statute of limitations defenses raised by Defendants at a later date. *See* MTD at 7 n.2.

[2] The Ninth Circuit has cited with approval other circuit decisions regarding the authority of the court to order compensatory education as an equitable remedy. *Prescott*, 631 F.3d at 1126 (citing *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 718-19 (3d Cir. 2010) (court can order school to provide annual IEPs to student who had aged out of a statutory right to a FAPE), and *M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd.*, 553 F.3d 315, 324-26 (4th Cir. 2009) (court can order that private school tuition be reimbursed)). More recently, the Third Circuit has specifically addressed compensatory education when a child moves. *See D.F. v. Collingswood*, 694 F.3d 488, 497-99 (3d Cir. 2012) (holding that a claim for compensatory education is not rendered moot by an out-of-district move, even if that move takes the child out of state; "Continuity of residence cannot be a prerequisite to the grant of compensatory education.").

Plaintiffs have already lost years of education that can never be made up. The compensatory education sought here is not a backward-looking request for tuition reimbursement or monetary damages, but prospective equitable relief intended to deliver the education that should have already been provided. It is necessary to enable Plaintiffs to access educational opportunities now and in the future.

Defendants' claim that compensatory education is no different than money damages and is therefore barred under federal sovereign immunity is based on a single piece of thirty-year old dicta that has clearly been superseded in the intervening years. MTD at 6 (citing *Alexopulos v. San Francisco Unified Sch. Dist*., 817 F.2d 551, 553 (9th Cir. 1987) and *Alexopulos v. Riles*, 784 F.2d 1408, 1412 (9th Cir. 1986)). This proposition was first invoked as dicta by *Alexopulos v. Riles*, which suggested it as an additional barrier to a claim for compensatory education that would nonetheless have failed on two additional and independent grounds. 784 F.2d at 1412. *Alexopulos v. Riles* is no longer good law. Decided in 1986, its reasoning relied exclusively on out-of-circuit cases and has not been discussed or relied upon since, except in glancing fashion the following year in a similar case brought by the same plaintiffs. *Alexopulos v. San Francisco Unified Sch. Dist*., 817 F.2d at 553. In the past three decades these cases have been superseded by the more robust line of binding cases cited above, which holds an award of compensatory education to be equitable in nature.

And rightly so. Compensatory education, as sought here, is not "virtually identical" to tuition reimbursement, or a request for monetary damages. MTD at 6. Here, compensatory education requires Defendants to perform the duties they had long neglected to perform and, consequently, to dedicate resources they were already obligated to use in order to comply with their duties. *See Bowen v. Massachusetts*, 487 U.S. 879, 893-94 (1988) ("[R]elief that orders a town to reimburse parents for education costs that Congress intended the town to pay is not 'damages'."). The specific remedy of compensatory education, sought to provide Student Plaintiffs with the education to which they are legally entitled, is therefore not a money substitute. *Cf. Burr*

*v. Sobel*, 863 F.2d 1071, 1073, 1078-79 (2d Cir. 1988) (holding that mandatory injunction requiring compensatory education for the plaintiff was "purely prospective in nature" and not a damages claim for purposes of Eleventh Amendment immunity), *reaffirmed*, 888 F.2d 258, 259 (2d Cir. 1989).

The Supreme Court has made clear that a federal court's powers of equitable relief are broad, and that "those equitable powers assume an even broader and more flexible character" when "the public interest is involved." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946). Therefore, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Id.*

Defendants have pointed to nothing in the APA or Section 504 that restricts this Court's jurisdiction in equity. The APA permits all suits "seeking relief other than money damages," 5 U.S.C. § 702, and the Supreme Court has been express that this "exception for an action seeking 'money damages' should not be broadened beyond the meaning of its plain language," *Bowen*, 487 U.S. at 900. Here, compensatory education is a form of specific equitable relief that "attempt[s] to give the plaintiff the very thing to which he was entitled" and "enforce the statutory mandate itself." *Id.* at 894, 900. Section 504 likewise has broad remedial purpose—typically allowing for all "remedies . . . at law and in equity," 42 U.S.C. § 2000d-7(a)(2)—and sovereign immunity does not bar Section 504 claims for equitable relief against the federal government. *See Doe v. Attorney General*, 941 F.2d 780, 785 (9th Cir. 1991) (holding that private right of action exists under Section 504 for equitable and injunctive relief against the federal government), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187, 191 (1996).[3] Defendants have not and cannot tender any explanation that would justify a limitation on this Court's broad equitable authority to remedy violations of Section 504. This Court may therefore

---

[3] Cases decided after *Lane* recognize that district courts remain bound by the Ninth Circuit's holding in *Doe v. Attorney General* that Section 504 authorizes a private right of action for equitable or injunctive relief against the federal government. *See, e.g.*, *Shankar v. U.S. Dept. of Homeland Security*, No. 13-cv-01490 NC, 2014 WL 523960, at *7 (N.D. Cal. Feb. 6, 2016); *Mendez v. Gearan*, 947 F. Supp. 1364, 1367 (N.D. Cal. 1996).

exercise its full array of equitable powers—including the remedy of compensatory education—when fashioning appropriate relief for Plaintiffs' claims.

### B. Count IV States A Claim Under Section 504

To establish a violation of Section 504 of the Rehabilitation Act, "a plaintiff must show: (1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance." *Weinreich v. Los Angeles Metropolitan Transportation Authority*, 114 F.3d 976, 978 (9th Cir. 1997). The only two elements in dispute are whether the seven Student Plaintiffs bringing Count IV ("Count IV Plaintiffs") have adequately alleged that (1) they are individuals with a disability within the meaning of Section 504, and (2) they have been denied meaningful access to public education solely by reason of their disability. MTD at 7.

Count IV Plaintiffs have pleaded sufficient facts as to all elements of Section 504. The SAC documents the lengthy trauma histories of each of the Count IV Plaintiffs, which include experiences of physical and sexual violence, involvement in the child welfare and juvenile justice systems, alcohol and substance abuse in the family and community, extreme poverty, denial of access to education, and historical trauma. SAC ¶¶ 47-49, 68-71, 86-88, 94-97, 109-10, 117-19, 133-34, 158-60. The effects of such childhood adversity and complex trauma cause palpable, physiological harm to brain function and brain development, which impedes the ability to learn, read, think, concentrate, and communicate. *Id.* ¶¶ 161-64. As a result of Defendants' failure to implement a school-wide system of trauma-informed practices and mental health services to accommodate Count IV Plaintiffs and other students impacted by the disabling effects of complex trauma, Count IV Plaintiffs have been denied meaningful access to public education. *Id.* ¶¶ 165-70.

### 1. Count IV Plaintiffs Are Individuals with Disabilities

The federal definition of disability is "a physical or mental impairment that substantially limits one or more life activities of [an] individual." 42 U.S.C. § 12102; *see*

29 U.S.C. § 794(a) (defining disability under Section 504 by cross-referencing the definition in the Americans with Disabilities Act). Congress expanded and clarified this definition in 2008, outlining a non-exhaustive list of "major life activities" specifically including "learning, reading, concentrating, thinking, communicating," and the operation of "major bodily functions," including "neurological", "brain" and "endocrine" functions. 42 U.S.C. § 12102(2)(A), (B).

As a threshold matter, contrary to Defendants' mischaracterization, Count IV Plaintiffs have alleged that they are physiologically impacted by the concrete *effects* of complex trauma, not merely that they have been exposed to "[e]nvironmental, cultural, or economic disadvantages." MTD at 9. As the Complaint makes clear, it is the neurobiological effects of these prolonged, repeated, and unpredictable traumas on the child's developing brain—and not the adverse experiences themselves—that impair the ability to learn.[4] *See, e.g.*, SAC ¶¶ 161-64; 239 ("The effects of complex trauma cause impairment . . ."). The Ninth Circuit and other courts have repeatedly acknowledged that manifestations of exposure to trauma, which by definition are a consequence of environment, may constitute a disability within the meaning of federal disability law.[5]

The SAC pleads facts alleging that exposure to childhood adversity and complex trauma affects brain function and development, creating a "physical or mental impairment" within the meaning of Section 504. Congress has established that "[t]he definition of disability . . . shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A). To effectuate this breadth, Congress deliberately chose not to limit the physical or mental impairments that would qualify as a disability by setting forth a list of

---

[4] The fact that a disability is *caused* by an external factor—and is not congenital or hereditary—does not make the impairment itself "environmental." Many disabilities are the result of environmental factors, such as exposure to violence, neglect or malnutrition. If an individual required a wheelchair as a consequence of a neighborhood shooting, for example, that individual would be protected under Section 504. An intellectual disability due to exposure to lead paint or extreme malnutrition would be likewise cognizable.

[5] *See, e.g.*, *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1174 (9th Cir. 1998); *Desmond v Mukasey*, 530 F.3d 944 (D.C. Cir. 2008); *Whelan v. Potter*, No. 09-3606, 2012 WL 3535869, at *12 (E.D. Cal. Aug. 15, 2012); *Linder v. Potter*, No. 05-0062-FVS, 2009 WL 2595552, at *3 (E.D. Wash. Aug. 18, 2009).

particular disorders or conditions.[6] 34 C.F.R. § 104 Subpart A. Rather, disability is defined categorically and functionally, with reference to the effects or impact of the impairment on the affected individual. *See* 42 U.S.C. § 12102.

The regulations implementing Section 504 provide that "physical or mental impairment[s]" include—among other physiological, mental, and psychological impediments—those affecting the "neurological," "brain" and "endocrine" systems. 29 C.F.R. § 1630.2(h). On this basis, a court has held that allegations that "complex trauma can result in neurobiological effects constituting a physical impairment" under Section 504 are sufficient to defeat a motion to dismiss. *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1098, 1110-11 (C.D. Cal. 2015).

Here, the SAC alleges that exposure to trauma has substantial effects on the brain development and functioning of a child: "The cumulative effect of trauma affects the core processing abilities of the brain in areas critical to learning, such as thinking, reading, concentrating, communicating, and regulating emotions." SAC ¶ 161. The SAC explains that trauma prompts "resultant changes in the brain" that "induce behaviors that reflect an inability to emotionally self-regulate—including aggression, disproportionate reactivity, impulsivity, distractibility, or withdrawal and avoidance." *Id.* ¶ 163. In short, Plaintiffs have alleged that "[e]xposure to trauma can lead to palpable, physiological harm to a young person's developing brain." *Id.* ¶ 162.[7] The SAC alleges that the effects of

---

[6] Although it is not necessary for impairments to be recognized as "disorders" in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), *see generally* 29 C.F.R. § 1630.2, the SAC alleges that "[t]rauma is associated with mental health conditions such as somatoform disorders, major depression, schizophrenia, and substance abuse and dependence." SAC ¶ 162. Although "exposure to traumatic stressors can cause developmental disruption and consequent educational loss for children, even if they do not meet the threshold for a diagnosable mental health disorder", *id.*, most Count IV Plaintiffs have been identified as students with disabilities associated with trauma exposure and in need of mental health support. *See id.* ¶¶ 75 (Durell P., oppositional defiant disorder and significant mental health needs); 50, 55, 98, 102 (Stephen C. and Levi R., behavior and mental health needs requiring counseling); 119 (Jenny A., emotional disturbance and significant mental health needs). In addition, ▮▮▮▮

[7] In light of the Court's guidance to streamline the Complaint and avoid academic citation, Plaintiffs have refrained from citing the voluminous, peer-reviewed brain science research documenting the concrete neurological and endocrine effects of

exposure to adversity and complex trauma substantially limit the major life activities of "learning, reading, thinking, concentrating, and communicating." *Id.* ¶¶ 161, 239-240. It goes on to allege that these impairments have significant consequences for educational attainment, including academic failure, grade repetition, low performance on standardized tests, disengagement in school, absenteeism, behavioral problems, and drop outs. *See id.* ¶ 164.

Defendants falsely claim that the allegations about Count IV Plaintiffs are "conclusory" and "threadbare" and that "Count IV relies for the most part on generalized notions about the historical trauma of Native Americans, particularly the Havasupai."[8] MTD at 10. This is a blatant mischaracterization of the record.[9] The Second Amended Complaint contains specific and detailed recitations of the consequences of trauma experienced by each of the seven Count IV Plaintiffs, all of which are consistent with the effects of trauma described in the scientific literature. *See P.P.*, 135 F. Supp. 3d at 1112 ("Student Plaintiffs have experienced particular limitations in their abilities to perform tasks such as learning, reading, concentrating, thinking, and communicating . . . which are alleged to be causally related to the trauma the Student Plaintiffs have experienced and are consistent with the neurological changes discussed."). By way of example only:

- Because of substantial unaddressed childhood adversity and complex trauma, *see* SAC ¶ 47, **Stephen C.** ███████████████████████████

███████████████████████████

---

exposure to trauma on the developing brain of a young person. Plaintiffs will provide an offer of proof to support these medical and scientific allegations if such additional information would assist the Court at this stage of the litigation.

[8] To the extent the SAC discusses the high incidence of exposure to childhood adversity and complex trauma among Native Americans and in the Havasupai community specifically, these facts are relevant to establish that trauma is pervasive among Havasupai students, widely known, and well-documented, placing Defendants on notice of the need for trauma-sensitive interventions and mental health support. *See* Section II.B.2., *infra.*

[9] This claim is particularly incredible because, in response to Defendants' argument that the allegations in the First Amendment Complaint ("FAC") were insufficiently particularized, Plaintiffs filed a SAC, adding 12 pages of detailed allegations documenting the exposure to complex trauma and resulting impact specific to each Count IV Plaintiff. See Dkt. 57-1 (documenting changes between FAC and SAC).

1884763.v2                                          10

████████████████████████████████████████████

████████████████████████████████████████ As a result, Stephen C. has been excluded from the classroom, "repeatedly sent home from school early, suspended, and referred to the juvenile justice system" and has "tremendous difficulty reading and writing." *Id.* ¶ 49.

- Due to the impact of the repeated and sustained childhood adversity he has endured, *see id.* ¶¶ 68-70, **Durell P.** ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ As a result, Durell P. "has been subject to classroom-based arrest and prosecution by law enforcement" and "has been on a homebound or restricted-hours schedule for over four years." *Id.* ¶¶ 78-79.

- As a consequence of the unaddressed childhood adversity she has experienced, *see id.* ¶ 86, **Taylor P.** ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

*See also id.* ¶¶ 94-97 (Levi R.); 109-10 (Leo R.); 117-19 (Jenny A.); 133-134 (Jordan A.).

Defendants conclude their argument with three unfounded assertions on page 11 of their motion that mischaracterize the nature of Plaintiffs' claim, the relief sought, and applicable law. **First**, Defendants falsely suggest that Plaintiffs have claimed that "all Native Americans suffer from adversity and historical trauma which affects their ability to learn, read, concentrate, think, or communicate." MTD at 11. Contrary to Defendants' totalizing generalization, Havasupai students—like children in every community—experience varying amounts and types of adversity, different mitigating factors that

bolster resilience, and a range of effects and degrees of impairment. The SAC specifically identifies seven children who have endured significant childhood adversity and who, as a result, have experienced substantial impairment that rises to the level of a disability within the meaning of Section 504. *See* SAC ¶ 240. **Second**, Defendants engage in baseless speculation that Plaintiffs' claim would require an individual evaluation of every student. MTD at 11. Plaintiffs have not requested this remedy, *see* SAC Request for Relief 3.i., and many experts in trauma-sensitive school systems consider universal individualized evaluations to be unnecessary or potentially counterproductive. Rather, Plaintiffs seek "a system that is responsive to and capable of addressing the impact of complex trauma," SAC ¶ 242, including "employment of appropriately trained counselors who can assist with identification of students who have mental-health difficulties," SAC Request for Relief 3.i.[10] **Third**, Defendants fear that complying with the law's mandate that children impacted by trauma have meaningful opportunity to access public education would "impose a significant responsibility . . . to locate and evaluate all children who are exposed to such generalized adversity." MTD at 11. But under the U.S. Department of Education's regulations implementing Section 504, all schools already have a legal obligation to identify and locate qualified children with disabilities within their jurisdiction not receiving a free appropriate public education. 34 C.F.R. § 104.32(a).

### 2. Prior "Knowledge of Plaintiffs' Disability" Is Not a Predicate for Obtaining Equitable Relief, and Defendants Had Reason To Know of Count IV Plaintiffs' Disabilities

Defendants' only argument that the SAC fails to allege that Count IV Plaintiffs were deprived of meaningful access to public education "solely by reason of a disability" is that Defendants lacked knowledge of the disability. MTD at 12-14. Plaintiffs are

---

[10] Defendants also speculate—based on relief that Plaintiffs have not requested—that complying with Section 504's mandate could contribute to overrepresentation of students of color identified as students with disabilities. MTD at 11 n.6. But the systemic, universal interventions sought as remedies by Plaintiffs do not require identifying any individual student as disabled. SAC Request for Relief 3.i. To the contrary, meaningful provision of training and universal interventions to address complex trauma and support students' social-emotional needs could reduce the number of students identified as students with disabilities.

unaware of any case in the Ninth Circuit or any other circuit that has ever construed Section 504 to require plaintiffs to plead that the defendant have prior "knowledge of Plaintiffs' disability" as a predicate for obtaining *injunctive or declaratory relief*—the only relief sought here. *See P.P.*, 135 F. Supp. 3d at 1115 (noting that the Ninth Circuit has not imposed a pre-litigation notice requirement in the context of a lawsuit against educational institutions brought under Section 504 and the ADA). The language of the statute imposes no such requirement, nor would it make any sense within this statutory and regulatory scheme.

**First**, the leading Ninth Circuit case has made clear that where *damages* are sought under Section 504 in the education context, a plaintiff must show that the school acted with "deliberate indifference" to plaintiff's rights. *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). But no such intent standard—deliberate indifference, knowledge, or otherwise—has ever been demanded as a condition for obtaining equitable or injunctive relief.   **Second**, in the K-12 education context, Defendants have an affirmative obligation to locate qualified children with disabilities within their jurisdiction not receiving a free appropriate public education. 34 C.F.R. § 104.32(a); *see D.R. ex. rel. Courtney R. v. Antelope Valley Union High Sch. Dist.*, 746 F. Supp. 2d 1132, 1144 (C.D. Cal. 2010) (a district "has a duty to identify and evaluate children who are suspected of having a qualifying disability"). Defendants cannot avoid liability under Section 504 by confessing failure to comply with the statute's implementing regulation.

Defendants attempt to import into the Section 504 education context a standard that is specific to the private employment discrimination context under the Americans with Disabilities Act ("ADA"). The portion omitted from the language quoted in Defendants' brief from *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114-15 (9th Cir. 2000), makes this context clear: "we join explicitly with the vast majority of our sister circuits in holding that the interactive process is a mandatory rather than a permissive obligation ***on the part of employers under the ADA***" (emphasis added). This required "interactive process" in the employment context stems directly from Equal Employment Opportunity

Commission ("EEOC") regulations and guidance. *Id.* at 1112 (citing 29 C.F.R. § 1630.2(o)(3), 29 C.F.R. Pt. 1630 App. § 1630.9, and EEOC Enforcement Guidance). No such regulations exist in the Section 504 or education context. Predictably, then, the cases cited by Defendants are primarily private employment cases brought under the ADA, typically involving damages requests.[11] And the unpublished *Patton v. Phoenix School of Law LLC*, No. CV-11-0748-PHX-GMS, 2011 WL 1936920, at *4 (D. Ariz. May 20, 2011), is also brought exclusively under the ADA[12] and quotes a private employment discrimination case brought under the ADA, *see id.* (quoting *Downey v. Crowley Marine Servs., Inc.*, 236 F.3d 1019, 1023 n.6 (9th Cir. 2001)).[13]

But even if deliberate indifference—or even actual knowledge—were required, Defendants are incorrect that "there are no allegations showing that defendants knew, had notice of, or had reason to believe that any of the plaintiffs had a disability as a result of trauma and adversity." MTD at 13. As the SAC documents, Defendants have

---

[11] *See Tsuji v. Kamehameha Sch.*, 154 F. Supp. 3d 964, 978 (D. Haw. 2015); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995); *Willis v. Norristown Area Sch. Dis.*, 2 F. Supp. 3d 597, 608-09 (E.D. Pa. 2014); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 930-31 (7th Cir. 1995) (seeking damages); *Dutson v. Farmers Ins. Exch.*, 815 F. Supp. 349 (D. Or. 1993) (seeking damages).

[12] *Patton* also involved a private university that is not subject to 34 C.F.R. § 104.33(a)'s location and notification requirement, which applies only to "public elementary or secondary education program[s] or activit[ies]."

[13] The only published circuit case involving Section 504 cited by Defendants acknowledges that this standard had only been applied in the ADA employment discrimination context and held that no such process was required there "even if such an interactive process is required in an academic setting." *Stern v. Univ. of Osteopathic Med. & Health Scis.*, 220 F.3d 906, 909 (8th Cir. 2000). The remaining Section 504 cases consist of glancing dicta in inapposite, out-of-jurisdiction district court cases. *Girard v. Lincoln Coll. of New England*, 27 F. Supp. 3d 289, 294 (D. Conn. 2014) (dicta); *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010) (dicta). Like *Patton*, *Rivera-Concepcion v. Puerto Rico*, 786 F. Supp. 2d 442, 454-55 (D.P.R. 2010) likewise pertained to a university not subject to 34 C.F.R. § 104.32(a) and relies on private employment discrimination case law brought under the ADA. *Id.* at 454 (citing *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254 (1st Cir. 2001)). The unpublished opinion of *Stearns v. Board of Education for Warren Township High School District #121*, No. 99 C 5818, 1999 WL 1044832 (N. D. Ill. Nov. 16, 1999), which also appears to have involved a damages request, concerns whether allegedly disabled students may serve on school athletic teams and thus reflects the Seventh Circuit's refusal to "define the major life activity of learning in such a way that the Act applies whenever someone wants to play [scholastic] athletics." *Knapp v. Nw. Univ.*, 101 F.3d 473, 481 (7th Cir. 1996). *Stearns* further depends on the general doctrine, as commentators have recognized, that "conduct rules involving the use of alcohol may be imposed on students who claim to be alcoholic." James Rapp, Education Law § 3.09[7][a][iii] (Matthew Bender & Co. 2015).

acknowledged in writing the challenges at the school stemming from "[h]igh levels of poverty, unemployment, low levels of literacy and substance abuse and family violence [that] plague th[e] community" and a "high level of discipline and disruptive events." SAC ¶ 190 & Ex. A; *see also id.* ¶¶ 158-60 (documenting high exposure to childhood adversity and traumatic stressors among students at Havasupai Elementary School), ¶¶ 191-93 (alleging in-person and written notice). In this way, Defendants have "repeatedly recognized the harmful impacts of complex trauma on Native youth and the critical need to provide wellness and mental health services to address trauma in BIE schools." *Id.* ¶ 187. As the SAC alleges, the manifestations of unaddressed trauma at Havasupai Elementary School is evident and pervasive. Individual Count IV Plaintiffs, for example, exhibited the following indicators: reactive behavior or disproportionate responses to perceived threats in school, *id.* ¶¶ 48, 72-73, 96, panic and anxiety, *id.* ¶¶ 71, 86-87, avoidant or dissociative behavior, *id.* ¶¶ 48, 72, 96, difficulty concentrating, *id.* ¶ 48, difficulty communicating, *id.* ¶ 49, and repeated subjection to punitive suspensions, involuntary transfers, and referral to the juvenile justice system, *id.* ¶¶ 49, 70, 74, 97, 169.

### 3.    Count IV Is Not Duplicative of Count III

Defendants argue that Count IV, which alleges Defendants have failed to establish a system that is responsive to and capable of addressing the impact of complex trauma, should be dismissed as duplicative of Count III, which alleges that Defendants have failed to establish a system to enable students with disabilities to access public education. But Federal Rule of Civil Procedure 10(b) provides that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Although both Count III and Count IV allege violations of Section 504, they are properly pleaded as separate counts because they challenge different conduct and pertain to different factual circumstances. "Separate counts permit pleadings to serve their intended purpose and to frame the issue and provide the basis for informed pretrial proceedings." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th

Cir. 2000).[14] The touchstone of whether multiple claims should be stated as separate counts is whether it permits "the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." *Id.* at 840. The fact that in this very motion Defendants have raised substantive defenses they believe apply to Count IV, MTD at 7-14, but not to Count III, reflects that pleading separate counts has already promoted clarity and ease of administration in this litigation.[15]

Count III and Count IV challenge different conduct, rely on different operative facts, and seek different relief. **Count III** is brought on behalf of five Student Plaintiffs *who have already been identified as students with disabilities* and the Native American Disability Law Center. Count III claims that because Defendants have failed to establish a system for the delivery of special education—including procedures, teachers, and appropriate providers—such that identified students with disabilities cannot access the special education services to which they are entitled. The requested remedy asks Defendants to "put into place a system—including procedures teachers, and appropriate providers—for delivery of specialized instruction and services" to students with disabilities. SAC ¶ 225. By contrast, **Count IV** is brought on behalf of seven Student Plaintiffs, *none* of whom the school has properly identified as a student with a trauma-related disability. Count IV claims that although Defendants are aware of the extreme adversity to which Count IV plaintiffs and many of their classmates are subjected and the consequences of this adversity for child development, Defendants have (1) failed to

[14] *Bautista* interpreted a prior version of FRCP Rule 10(b) that employed slightly different language but had the same meaning: "When each plaintiff's claim is founded upon a separate transaction or occurrence, it is properly stated in a separate count because a separation facilitates the clear presentation of the matters set forth."

[15] None of Defendants' cases support the proposition that dismissing Count IV or consolidating Count III and Count IV would be appropriate here. The only Ninth Circuit authority, *MM v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1091 (9th Cir. 2012) involved a plaintiff who brought two separate cases involving the same parties, each of which states the same claim "in identical terms." *Smith v. Bd. of Trustees Lakeland Cmty. Coll.*, 746 F. Supp. 2d 877, 899 (N.D. Ohio 2010), is inapposite because it actually concerns the inverse situation: the plaintiff plead as two separate counts claims pertaining to the exact same factual circumstances, but legal challenges under different statutes. And the other unpublished, out-of-jurisdiction district court opinions cited all contain duplicative claims that challenge the same transaction or occurrence.

acknowledge the disabling impact of trauma on students despite clear manifestations in the classroom, and (2) failed to implement the reasonable accommodations necessary to meet the particular, substantive needs of children whose ability to learn and participate in school has been impaired by complex trauma. SAC ¶¶ 165-70. Unlike Count III, which seeks a wholly procedural remedy—a system capable of determining the needs of children with diverse types of disabilities and delivering the appropriate services—Count IV seeks a specific, substantive remedy—implementation of evidence-based practices that have been shown effective to address the impact of trauma on learning, such as staff training in trauma-sensitive practices and social-emotional learning and implementation of restorative practices. Request for Relief 3.i.

### C.    Section 504's Implementing Regulations 34 C.F.R. §§ 104.32 and 104.36 Are Enforceable Through a Private Right of Action

Defendants argue that Plaintiffs' claims under the Department of Education regulations implementing Section 504 should be dismissed because the implementing regulations do not create a private right of action. MTD at 17-19. In the Ninth Circuit, claims under Section 504 implementing regulations are enforceable through an implied right of action to the extent that they impose "meaningful access" or "reasonable accommodation" requirements. *Lemahieu*, 513 F.3d at 938. As Defendants recognize, this standard stems from *Alexander v. Sandoval*, in which the Supreme Court held that regulations can be enforced through a private right of action to the extent they "authoritatively construe" the statute. 532 U.S. 275, 284-86 (2001); *Lemahieu*, 513 F.3d at 935. As applied to the Rehabilitation Act, "whether the § 504 regulations are privately enforceable will turn on whether their requirements fall within the scope of the prohibition contained in § 504 itself." *Lemahieu*, 513 F.3d at 935. That scope includes "meaningful access" and "reasonable accommodation" requirements. *Id.* at 938.

Both of the regulations at issue fall squarely within Section 504's "meaningful access" mandate, and are therefore enforceable by an implied private right of action. Count V alleges violation of the "Location and Notification" requirements of 34 C.F.R.

§ 104.32, which require Defendants to "identify and locate" children who have been denied access to education as a result of their disabilities, and to notify parents and guardians of such a duty. As the *Lemahieu* court noted, the "testing and evaluation of a disabled child may be necessary to ensure 'meaningful access' to an appropriate education, as might notice to a child's parents of the educational plan for that child." 513 F.3d at 938 n.14. Without location and notification, children with special needs would not be properly evaluated in the first instance, and would thus be denied meaningful access to an education.

The same is true of Count VI, which alleges a violation of 34 C.F.R. § 104.36, which requires "Procedural Safeguards" to ensure the "identification, evaluation or educational placement" of children with disabilities, including notice and an opportunity for parents or guardians to access records and participate in hearings on behalf of their children. Just as § 104.32 protects a child's right to be identified and evaluated for disability in the first instance, § 104.36 ensures that "meaningful access" is preserved through the educational placement process. The *Lemahieu* court thus observed that § 104.36 was "arguably" among Section 504 regulations "intended to ensure 'meaningful access' to a public education." *Id*. at 938 n.14.

The only district courts in this Circuit to have considered this issue have held that these regulations are enforceable by a private right of action. *See P.P.*, 135 F. Supp. 3d at 1119 (34 C.F.R. §§ 104.32, 104.36 enforceable by a private right of action); *J.M. v. Liberty Union High Sch. Dist.*, No. 16-CV-05225-LB, 2017 WL 2118344, at *4 (N.D. Cal. May 16, 2017) (private right of action exists under § 104.36). The two out-of-circuit district court cases Defendants rely upon do not apply.[16] *H. v. Montgomery County Board of Education*, 784 F. Supp. 2d 1247, 1264 (M.D. Ala. 2011), did not rule on this issue because the plaintiff conceded "she does not assert a private right of action with respect to § 504's regulations." *Power ex rel. Power v. School Board of City of Virginia Beach*,

---

[16] The Ninth Circuit case cited by Defendants, *K.M. Ex. Rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (2013), does not address whether Section 504's implementing regulations are enforceable by a private right of action.

276 F. Supp. 2d 515 (E.D. Va. 2003), is inapposite because the Plaintiff did not plead an underlying violation of Section 504 claiming disability discrimination; the only claimed violation was procedural. *Id.* at 520 ("There is no statutory due process right separate and apart from the right to be free from discrimination."); *see P.P.*, 135 F. Supp. 3d at 1119 (distinguishing *Powers* on this basis). By contrast, here the SAC alleges an underlying violation of Section 504 and details the denial of meaningful access to education that flows from Defendants' failure to comply with these regulations. SAC ¶¶ 174, 177.

### D. The Secretary of the Interior is Not the Only Proper Defendant in a Section 504 Action

The head of the Cabinet-level department or agency is not the sole proper defendant in a Section 504 action, and Defendants' authorities do not suggest otherwise. Defendants' authorities reflect only that the head of the agency is the sole proper defendant in a cause of action for discrimination in *employment by a federal agency* brought under *Section 501* of the Rehabilitation Act. But, as the Ninth Circuit made clear in *Johnston v. Horne*, 875 F.2d 1415, 1418 (9th Cir. 1989), there is a clear and meaningful distinction between Sections 501 of the Rehabilitation Act (29 U.S.C. § 791), the cause of action for all employment-related Rehabilitation Act claims,[17] and Section 504 (29 U.S.C. § 794), the cause of action pleaded here.

Actions brought under Sections 501 and 504 are subject to different procedures and different remedies: actions brought under Section 501 utilize the "remedies, procedures, and rights set forth in section 717 of [Title VII of] the Civil Rights Act of 1964 (42 U.S.C. 2000e-16)." 29 U.S.C. § 794a(a)(1). Section 504 complaints, by contrast, utilize the "remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*)." 29 U.S.C. § 794a(a)(2) (emphasis

---

[17] A suit under Section 501 is "the exclusive remedy for an employee alleging handicap discrimination" by a federal employer, and "a federal employee . . . *may not under [Section 504] sue the federal employing agency.*" *Horne*, 875 F.2d at 1421 (emphasis added).

added).[18] While Title VII does make a suit against the head of the agency the sole remedy for employment discrimination, *see* 42 U.S.C. § 2000e-16(c), Title VI does not, *see Johnston*, 875 F.2d at 1421 n.5.

Defendants have not cited a single *non-employment* case—*i.e.*, a Section 504 action alleging disability discrimination against the users of federal programs or activities—that imports Title VII's agency-head rule to suits under Section 504. By the same token, the holding applying Title VII procedures in another employment case, *Lassiter v. Reno*, that "plaintiff may not sue more than one department or agency head in his or her official capacity," is irrelevant here. 885 F. Supp. 869, 873 (E.D. Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996). To the contrary, the Ninth Circuit and district courts within the circuit have explicitly approved Section 504 claims against multiple individual defendants, or the agency, rather than just a single agency head. *E.g.*, *Doe*, 941 F.2d 780 (private right of action against the Attorney General, the Director of the FBI, and a Special Agent alleging discrimination in medical referrals), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187 (1996); *J.L. v. Soc. Sec. Admin.*, 971 F.2d 260, 272 (9th Cir. 1992) (private right of action against Social Security Administration for discrimination in providing benefits), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187 (1996); *Shankar*, 2014 WL 523960, at \*7 (Department of Homeland Security an appropriate defendant).

## III.    <u>CONCLUSION</u>

Plaintiffs respectfully request the Court deny Defendants' motion to dismiss. In the alternative, Plaintiffs seek leave to amend the Complaint to cure any identified deficiencies. Fed. R. Civ. P. 15(a); *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("The standard for granting leave to amend is generous.").

RESPECTFULLY SUBMITTED this 25th day of August, 2017.

---

[18] *See also* S. Rep. 93-1297, 1974 U.S.C.C.A.N. 6373, 6390 (Nov. 26, 1974) ("Section 504 was patterned after, and is almost identical to, the anti-discrimination language of section 601 of [Title VI of] the Civil Rights Act of 1964, 42 U.S.C. 2000d-1 . . . ."); *Lloyd v. Reg'l Transp. Auth.*, 548 F.2d 1277, 1281 n.9 (7th Cir. 1977) (same).

By: _s/ Kathryn Eidmann_

Alexis DeLaCruz
NATIVE AMERICAN DISABILITY
LAW CENTER
3535 E. 30th Street, Suite 201
Farmington, NM 87402
Telephone: 505.566.5880

Mark Rosenbaum(*pro hac vice*)
Kathryn Eidmann (*pro hac vice*)
Anne Hudson-Price (*pro hac vice*)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: 213.385.2977

Bradley S. Phillips (*pro hac vice*)
Bryan H. Heckenlively (*pro hac vice*)
Seth J. Fortin (*pro hac vice*)
Emily Curran-Huberty (*pro hac vice*)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: 213.683.9100

Elisabeth Bechtold (*pro hac vice*)
Maria Martinez-Sánchez (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
of NEW MEXICO
1410 Coal Avenue SW
Albuquerque, NM 87104
Telephone: 505.266.5915

Judith M. Dworkin
David C. Tierney
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Tara C. Ford (*pro hac vice*)
Stanford Law School
MILLS LEGAL CLINIC
Youth and Education Law Project
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: 650.725.8581

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

By: _s/ Frances Fulwiler_

1884763.v2                                    21