CHAD A. READLER
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director
LISA A. OLSON, D.C. Bar No. 384266
CESAR A. LOPEZ-MORALES, MA Bar No. 690545
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C.  20530
Telephone:  (202) 305-8550
Facsimile:  (202) 616-8460
Email: cesar.a.lopez-morales@usdoj.gov
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Stephen C., a minor, by Frank C., guardian ad litem, et al,

Plaintiffs,

v.

Bureau of Indian Education, et al,

Defendants.

No. 3:17-cv-08004-SPL

**REPLY IN SUPPORT OF DEFENDANTS' SECOND PARTIAL MOTION TO DISMISS**

## INTRODUCTION

Plaintiffs' opposition fails to provide sufficient bases to rebut Defendants' arguments that this suit should be streamlined by dismissing: (1) all claims by students who no longer attend Havasupai Elementary for lack of standing; (2) Count IV for failure to state a claim upon which relief can be granted; (3) Counts V and VI for lack of subject matter jurisdiction; and (4) all but the Secretary of the Interior as superfluous defendants with respect to Counts III-VI.

## ARGUMENT

### I.     STUDENT PLAINTIFFS LEVI R., LEO R., JENNY A., JEREMY A., AND JORDAN A. LACK STANDING TO BRING THEIR CLAIMS.

Students Levi R., Leo R., Jenny A, Jeremy A., and Jordan A. no longer attend Havasupai Elementary School. See Partial MTD, ECF No. 67, at 4-5.  Plaintiffs' opposition does not explain how these plaintiffs have standing, given that they are no longer eligible to

receive educational services at the School, or are enrolled in school elsewhere. As Defendants have shown, these Plaintiffs do not face a threat of impending injury and would not benefit from any changes made to the school or a declaration that past actions were illegal. *See id*. at 5-6. In their Opposition, Plaintiffs only respond to Defendants' argument that compensatory education does not constitute prospective injunctive relief. Plaintiffs' contention that compensatory education is an appropriate remedy in this instance is misguided.

Plaintiffs do not cite any cases discussing an award of compensatory education as a form of equitable relief under the Rehabilitation Act (or the Indian Education Act) against the Federal Government. Rather, the cases cited in the Opposition are in the context of the Individual with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*, a statute that does not contain an anti-discrimination mandate and provides for compensatory education in cases where a school deviates from an individualized education program. See R.P. ex rel. C.P. v. Prescott Unified Sch. Dist., 631 F.3d 1117, 1120 (9th Cir. 2011) (noting that "IDEA offers compensatory education as a remedy for the harm a student suffers while denied a [free appropriate public education ('FAPE')]," see Parents of Student W. v. Puyallup Sch. Dist. No. 3, 31 F.3d 1489, 1496-97 (9th Cir. 1994), and that it "is an equitable remedy that 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violations of IDEA'") (quoting Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005)) (citing 20 U.S.C. § 1415(i)(2)(C)(iii)).

Moreover, "[c]ompensatory services, like the award of a money judgment, would be measurable against past educational deprivation" and "[t]he expenditure of state monies to provide compensatory services would not, in other words, ensure compliance in the future with a substantive federal question determination." Miener v. State of Mo., 673 F.2d 969, 982 (8th Cir. 1982) (citation omitted). Rather than ensure future compliance with a legal obligation, the claims in question seek retroactive compensation from the government for a past breach of a legal duty, see Edelman v. Jordan, 415 U.S. 651, 677-78 (1974), and

Plaintiffs have not demonstrated that this form of relief is available against the Federal Government in the context of the Rehabilitation Act.

Finally, Plaintiffs claim that the cases cited in the Partial Motion to Dismiss—namely, Alexopulos  v. San Francisco Unified Sch. Dist. 817 F.2d 551, 553 (9th Cir. 1987) and Alexopulos v. Riles, 784 F.2d 1408, 1412 (9th Cir. 1986)—contain mere dicta and are no longer good law.  Plaintiffs are mistaken.  First, the Ninth Circuit's conclusion that compensatory education constitutes retrospective relief indistinguishable from money damages is not dicta—the fact that it was discussed "as an additional [and independent] barrier to [the plaintiff's] claim for compensatory education," Opp'n, ECF No. 76, at 5 , shows that it is part of the holding's underlying reasoning and therefore law of the Circuit. See The Cetacean Community v. George W. Bush, 386 F.3d 1169, 1173 (9th Cir. 2004) (noting that "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of circuit, regardless of whether doing so is necessary in some strict logical sense") (citation omitted).

Second, the reasoning and holding of both Alexopulos cases continue to be the law of this Circuit.  Plaintiffs' contention that "these cases have been superseded by the more robust line of binding cases" cited in the Opposition, Opp'n at 5, lacks merit.  "Of course, the decision of one three-judge panel cannot overrule another three-judge panel unless intervening higher authority"—namely, a Ninth Circuit en banc decision or the Supreme Court—"is *clearly irreconcilable* with our prior circuit authority . . . ." Rendon v. Holder, 782 F.3d 466, 472 (9th Cir. 2015) (citation omitted) (emphasis added).   None of the cases relied upon in Plaintiffs' Opposition are Supreme Court or Ninth Circuit *en banc* decisions and therefore cannot supersede the clear conclusion of the Alexopulos cases.  The law of this Circuit on this issue is clear: Since the Federal Government is immune from suits in federal court for monetary relief under section 504 of the Rehabilitation Act—a premise that is well established and undisputed by Plaintiffs—and "[b]ecause a request for compensatory education is virtually identical to a request for monetary damages measured

by the cost of the educational services provided," Alexopulos v. San Francisco Unified Sch. Dist. 817 F.2d at 553 (citing Alexopulos v. Riles, 784 F.2d at 1412), then it follows that the Federal Government "is shielded by [federal sovereign immunity] from liability for compensatory education." Id. at 553-554; see also Miener, 673 F.2d at 982 (8th Cir. 1982).[1]

The claims of student plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. should therefore be dismissed.

## II.   ALLEGATIONS OF EXPOSURE TO ADVERSITY AND TRAUMA ARE INSUFFICIENT TO STATE A CLAIM UNDER SECTION 504.

Count IV must be dismissed because it fails to establish that the students have a qualifying disability, specifically related to trauma, or that they were denied access to educational opportunities solely by reason of such disability.  Rather than shoring up the validity of their position, Plaintiffs' Opposition in fact highlights the core deficiencies of the Second Amended Complaint.

### A. Count IV Fails To Plead That The Students Have Recognized Impairments That May Give Rise To Trauma-Related Disabilities.

Plaintiffs claim that "it is the neurobiological effects" of the trauma "on the child's developing brain—and not the adverse experiences themselves—that impair the ability to learn."  Opp'n at 8.  Under the Rehabilitation Act, however, an individual is not disabled simply because he or she has experienced violence, poverty, the juvenile criminal system,

---

[1] It is well established that "plaintiffs must establish standing *independently for each remedy sought . . . .*" Vegan Outreach, Inc. v. Chapa, 454 F. App'x 598, 600 (9th Cir. 2011)(citing Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 185 (2000)) (emphasis added).  Compensatory education is only one of fifteen different remedies sought in the Second Amended Complaint. See Second Am. Compl. (hereinafter "SAC"), Request for Relief at 62-64. Because Plaintiffs generally seek broad, systemic relief for the Havasupai Elementary School, Plaintiffs have not established how students who no longer attend the school and, thus, "would not stand to benefit from such [systemic and institutional] relief, Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1047-48 (9th Cir. 2014) (citation omitted), have standing.

4

or alcohol abuse in the family; a plaintiff must have a recognized impairment in order to be entitled to relief. Because the Second Amended Complaint alleges merely that the Count IV Plaintiffs' exposure to adversity and trauma has substantially limited their ability to think and learn, but does not identify specific physical or mental impairments, Plaintiffs have failed to state a plausible claim that each of the Count IV Plaintiffs has a qualifying disability.

To be clear, Defendants do not dispute the validity of Plaintiffs' general assertions that "exposure [to adversity and trauma] *can* lead to palpable, physiological harm to a young person's developing brain," Opp'n at 9-10 (emphasis added), and that "[t]rauma *is associated* with mental health conditions" that constitute recognized impairments (*i.e.*, schizophrenia, post-traumatic stress disorder, and somatic symptom disorders, such as hypochondria and body dysmorphia), SAC ¶ 162 (emphasis added). The deficiencies in the Second Amended Complaint stem, however, from the absence of any ties between each of the Count IV Plaintiffs and any allegations of the specific physical or mental harm each student has suffered due to exposure to adversity and complex trauma.

Without pleading how the students' experience of trauma manifests in a particular impairment that substantially affects each of the Count IV students' ability to think and learn (or otherwise perform major life activities), the Second Amended Complaint fails to state a claim upon which relief can be granted. Plaintiffs' Opposition does not address this issue head on, and instead presents an internally inconsistent argument that underscores their failure to state a plausible claim. On the one hand, Plaintiffs claim that the Count IV students need not be evaluated for trauma-related disabilities, contending that such evaluations are unnecessary and that "the systemic, universal interventions sought as remedies by Plaintiffs [in Count IV] *do not require identifying any individual student as disabled.*" Opp'n at 12, n.10 (emphasis added). On the other hand, Plaintiffs assert that as part of the broad, systemic relief they seek for the school, one feature would be the "employment of appropriately trained counselors who can assist with identification of

students who have mental-health difficulties."[2]  Opp'n at 12 (quoting SAC ¶ 242).  At bottom, Plaintiffs appear to concede that, in order to make out a claim under Section 504 of discrimination against a "qualified individual with a disability . . . , solely by reason of her or his disability," see 29 U.S.C. § 794(a), an individualized assessment of each plaintiff's disability is necessary.  Because the Second Amended Complaint fails to plead the existence of recognized impairments for each student resulting from the alleged trauma and adversity, Count IV must be dismissed.[3]

**B.  Count IV Does Not Satisfy The Causation Requirement Of Section 504.**

In their Opposition, Plaintiffs argue that Defendants have violated the Rehabilitation Act regardless of whether they knew or should have known of the alleged disabilities of the Count IV students.  This contention lacks merit.  As a matter of both logic and law, and regardless of whether the relief sought is for damages or for an injunction,  no defendant could or should be found liable for failing to provide an accommodation, the need for which it was not aware.  See, e.g., Patton v. Phoenix Sch. Of Law LLC, No. CV 11-0748-PHX-

---

[2] Plaintiffs assert that they "have not requested this remedy" of individual evaluations. Opp'n at 12.  But, an evaluation for physiological and mental disorders is not a "remedy"; rather, it is an indispensable tool to demonstrate the existence of a recognized impairment that rises to the level of a disability, which in turn triggers the process for reasonable accommodation under Section 504.  Individualized evaluations are required to identify the students as disabled within the meaning of the statute. *See* 34 C.F.R. § 104.35 and the development of a free appropriate public education under § 104.33 is contingent upon adherence to § 104.35.

[3] The cases on which Plaintiffs rely for the proposition that generalized claims of trauma are sufficient, see Opp'n at 8 n.5, are inapposite.  None of the cases found that allegations of trauma standing alone were adequate to establish a qualified disability.  For example, in Mustafa v. Clark County School District, the plaintiff's claim of  employment discrimination  under the Rehabilitation Act  based on her  "severe depression, panic disorder, and post-traumatic stress disorder,"  157 F.3d 1169, 1172-73 (9th Cir. 1998), raised a factual issue of whether plaintiff suffered from a qualifying disability or, instead, from  a "temporary, nonchronic impairment."  Id. at 1174.  Similarly, in Desmond v. Mukasey, the determination of whether plaintiff was a qualified individual with a disability turned on whether his condition of post-traumatic stress disorder substantially limited his ability to sleep.  530 F.3d 944, 946-48, 953 (D.C. Cir. 2008).  In Whelan v. Potter, No. CIV 09-3606 KJM, 2012 WL 3535869, at *12 (E.D. Cal. Aug. 15, 2012) and Linder v. Potter, No. 05-0062-FVS, 2009 WL 2595552, at *3 (E.D. Wash. Aug. 18, 2009), the district courts considered disability discrimination claims premised on "post-traumatic stress disorder" as the relevant recognized impairment and did not rely solely on allegations of exposure to trauma and adversity to plead the existence of a qualifying disability.

6

GMS, 2011 WL 1936920, at *4 (D. Ariz. May 20, 2011) (involving claim of reinstatement); Stearns v. Bd. Of Educ. for Warren Twp. High Sch. Dist. #121, No. 99 C 5818, 1999 WL 1044832, at *3 (N.D. Ill. Nov. 16, 1999) (involving claim that athletic eligibility in high school be restored).[4]

Indeed, one of the primary cases on which Plaintiffs rely stands for this proposition. Plaintiffs claim, quoting D.R. ex. rel. Courtney R. v. Antelope Valley Union High Sch. Dist., 746 F. Supp. 2d 1132, 1144 (C.D. Cal. 2010), that Defendants have "a duty to identify and evaluate children who are suspected of having a qualifying disability[. . . .]" and, thus, that knowledge of an actual disability is not required. Opp'n at 13. The court in Courtney R., however, clarified that a school district has "a duty to identify and evaluate children who are *suspected of* having a qualifying disability **within a reasonable time *after school officials are placed on notice*.**'" Id. (emphasis added); see also 34 C.F.R. § 104.32(a). Thus, once a school has been placed on notice that a student may have a qualifying disability, the school then has the duty to evaluate the student to determine if he or she has an actual disability (again, once on notice, the regulations require the very process that Plaintiffs have described as "unnecessary and potentially counterproductive," Opp'n at 12).

Plaintiffs further assert that Defendants' awareness of the "poverty, unemployment, low levels of literacy and substance abuse and family violence [that] plague th[e] community," as well as "the harmful impacts of complex trauma on Native Youth and the critical need to provide wellness and mental health services to address trauma in BIE

---

[4] Plaintiffs contend that "Defendants attempt to import into the Section 504 education context a standard that is specific to the private employment discrimination context under the American with Disabilities Act," namely the pre-litigation interactive process of requesting and evaluating requests for reasonable accommodation. Opp'n at 13. While there is substantial support for the applicability of that standard in the education context, see Partial MTD at 13 n.7, Plaintiffs mischaracterize Defendants' argument. Defendants are not claiming that their duty to accommodate the Count IV students was not triggered because the students never requested reasonable accommodation. Rather, Defendants argue that they did not have actual or constructive notice of any alleged disabilities and without such notice, it is impossible for Defendants to have discriminated against the students solely because of their disability.

7

schools," Opp'n at 15 (citation omitted), is sufficient to put Defendants on notice that each student Plaintiff is disabled.  Plaintiffs, however, again fail to allege that Defendants are aware or should have been aware that the seven students in Count IV suffer from a specific impairment resulting from their exposure to adversity and trauma.  Any general awareness of the students' difficulties concentrating, thinking, or communicating (all of which are life activities and not physiological or mental disorders), and of their exposure to trauma is not sufficient to put Defendants on notice of their particular disabilities as defined for purposes of section 504.

Under section 504, "[t]he knowledge required must be of the disability itself, not just its causes, consequences, or effects."  Partial MTD at 14 (collecting cases).  If it were otherwise, Defendants would be obliged to presume that all students in the Havasupai Tribe, Native youth, and children in underdeveloped communities across the United States, are disabled and hence subject to physical and mental health evaluations.  Not only would this create a "wholly unwieldy administrative and adjudicative burden" for elementary and secondary educational agencies, Alexander v. Choate, 469 U.S. 287, 298 (1985), but also, it would inevitably lead to the "inappropriate over-identification or disproportionate representation by race and ethnicity of children as children with disabilities," 20 U.S.C. § 1412(a)(24), thereby perpetuating a stigma that mere exposure to adversity and trauma in certain communities leads to disabled individuals.[5]  Because Plaintiffs have failed to address this argument or otherwise come forth with sufficiently valid reasons, Count IV should be dismissed.

## III.    COUNTS V AND VI MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Plaintiffs do not, nor could they, dispute that the implementing regulations identified

---

[5] To the extent Count IV states a claim, for the sake of succinctness and to avoid repetition, Defendants rely on the arguments made in the Partial Motion to Dismiss as to why it is duplicative of Count III.  See Partial MTD at 14-16.

in Counts V and VI, 34 C.F.R. §§ 104.32 & 104.36, lack a private right of action. Rather, Plaintiffs agree with Defendants that, under Ninth Circuit case law, these implementing regulations could only be enforced through Section 504's right of action to the extent they "authoritatively construe" the statute, Alexander v. Sandoval, 532 U.S. 275, 284 (2001), which in turn "will turn on whether [the regulations' requirements] fall within the scope of the prohibition [against disability discrimination] contained in § 504 itself," Mark H. v. Lemahieu, 513 F.3d 922, 935 (9th Cir. 2008).

The Ninth Circuit has not held that these implementing regulations are enforceable through Section 504's right of action and Defendants are not aware of any other circuit that has construed these regulations to be enforceable, and for a good reason. These regulations include affirmative obligations that go beyond the Rehabilitation Act's nondiscrimination mandate and create duties that are separate and apart from the language of the statute. See Partial MTD at 18-19. To support the notion that these implementing regulations are enforceable in federal court, Plaintiffs rely mainly on the dicta in Mark H., in which the Ninth Circuit stated in a short footnote that some of Section 504's Free Appropriate Public Education ("FAPE") regulations "are arguably intended to ensure 'meaningful access' to public education." Mark H., 513 F.3d at 938 n.14. Relying on this dicta concerning an issue that was never briefed by the parties is problematic because it lacks a limiting principle and would expand the scope of the Rehabilitation Act beyond its "manageable bounds" by allowing, among other things, mere procedural claims.[6] Choate, 469 U.S. 287 at 299.

Because Section 504 does not contain or guarantee any procedural rights, regulations that set forth procedural, as distinct from substantive, rights concerning access to special education—such as the regulations in § 104.32 and § 104.36—are not linked directly to

---

[6] The other cases cited in the Opposition similarly rely on the dicta in the footnote and conclude without much independent analysis that these procedural regulations authoritatively construe Section 504. See J.M. v. Liberty Union High Sch. Dist., No. 16-CV-5225-LB, 2017 WL 2118344, at *4 (N.D. Cal. May 16, 2017); P.P. v. Compton Unified Sch. Dist., 135 F. Supp. 3d 1098, 1115 (C.D. Cal. 2015).

Section 504's nondiscrimination mandate so as to create a right of action.[7]   See Power ex. rel. Power v. School Board of City of Virginia Beach, 276 F. Supp. 2d 515 (E.D. Va. 2003) ("There is no statutory due process right separate and apart from the right to be free from discrimination.").   Thus, to the extent a school agency could violate the implementing regulations in § 104.33 and § 104.36 without violating Section 504 itself, that is only because the regulations go beyond what the statute requires to create additional affirmative obligations on educational institutions.[8]

Plaintiffs attempt to undermine the holding in Power by claiming that it "is inapposite because the Plaintiff did not plead an underlying violation of Section 504 claiming disability discrimination; the only claimed violation was procedural."   Opp'n at 19.   Although factually different, it is a meaningless distinction.   Whether a regulation is enforceable through a statutory right of action does not turn on whether or not a plaintiff chooses to assert a claim pursuant to the underlying statute.   Plaintiffs do not explain why this artificially-drawn distinction is important and, thus, fail to properly develop the argument. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.   It is not enough merely to mention a possible argument in the most skeletal

[7] The implementing regulation in 34 C.F.R. § 104.33(a) provides that "[a] recipient that operates a public elementary or secondary education program or activity shall provide a [FAPE] to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap."

[8] In addition to the regulations' unenforceability, Plaintiffs misrepresent the nature of Defendants' obligation under 34 C.F.R. § 104.32(a).   Plaintiffs allege that Defendants are required under the regulations to "identify and locate Havasupai students who are not properly receiving an adequate public education on account of their disabilities."   SAC ¶ 253.   However, section 104.32 simply requires Defendants to "identify and locate every qualified handicapped person . . . *who is not receiving a public education. . . .*" and "notify" such persons and "their parents or guardians of the recipient's duty under this subpart."   All student plaintiffs are, and at all relevant times within the applicable two-year statute of limitations have been, "receiving a public education" and therefore the Second Amended Complaint fails to allege properly a violation of 104.32(a).   Of course, Defendants are still required to evaluate any students *suspected of* having a disability, § 104.33, to provide the student with a FAPE, § 104.35.

10

way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). Plaintiffs cannot dispute that "[t]he weight of authority holds that there is no private right of action to enforce § 504's special education regulations . . . ." H v. Montgomery Cty. Bd. of Educ., 784 F. Supp. 2d 1247, 1264 (M.D. Ala. 2011) (collecting cases). Accordingly, the implementing regulations in sections 104.32 and 104.36 are not enforceable through Section 504's right of action. Counts V and VI must be dismissed.

## IV.    THE COURT SHOULD DISMISS ALL BUT THE SECRETARY OF THE INTERIOR AS SUPERFLUOUS DEFENDANTS IN COUNTS III-IV.

Plaintiffs correctly point out that Section 504, 29 U.S.C. § 794, "incorporates the remedies, procedures and rights of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d . . . ." Opp'n at 19-20. But nothing in Title VI suggests, as plaintiffs do, that Section 504 claims may be brought against "multiple individual defendants . . . rather than just a single agency head," Opp'n at 20. It has been held that "[t]he proper defendant in a Title VI case is an entity rather than an individual." Farm Labor Organizing Committee v. Ohio St. Highway Patrol, 95 F. Supp. 2d 723, 741 (N.D. Ohio 2000); Everson v. Leis, 556 F.3d 484, 501 & n. 7 (6th Cir. 2009) (noting that the proper defendant is the public entity responsible for the alleged discrimination).

Counts III-VI allege violations against four individual defendants in their official capacities. And, while there is support for the proposition that "no claim may be maintained against an individual under Title VI [or Section 504] even in his official capacity," TC and KC v. Valley Cent. Sch. District, 777 F. Supp. 2d 577, 594 (S.D.N.Y. 2011), generally, a suit against a person in an official capacity is considered to be a suit against the entity of which the officer is an agent, see Stewart v. Bright, No. C 13-1794 LB, 2013 WL 2355450, at *3 (N.D. Cal. May 29, 2013) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). The individual defendants in this instance are all agents of the same entity (*i.e.*, the Department of the Interior), and the Secretary of the Interior is the superior of the three other individuals. Because Plaintiffs fail to attribute separate predicate acts to each defendant, it follows that all officials except the Secretary of the Interior are mere surplusage to this

litigation and should be dismissed as redundant.  See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 262 (5th Cir. 1999); Fireman's Fund Ins. Co. v. City of Lodi, 41 F. Supp. 2d 1100, 1106-07 (E.D. Cal. 1999); see also Stewart v. Bright, No. C 13-1794 LB, 2013 WL 2355450, at *3 (N.D. Cal. May 29, 2013) (explaining that the proper defendant for the Section 504 claim would be the prison as an entity *or* the prison's chief medical officer in an official capacity).[9]

## V.  THE AMICUS BRIEFS DO NOT CURE ANY OF THE DEFECTS IN THE SECOND AMENDED COMPLAINT.

The amicus briefs of the Havasupai Tribe and the Society of Indian Psychologists do not cure any of the legal deficiencies in the Second Amended Complaint.  In fact, the briefs do not focus much, if at all, on Defendants' legal arguments.[10]  By focusing on historical background and providing a mostly incomplete, and sometimes inaccurate, characterization of the Federal Government's efforts to provide education to the children of the Havasupai reservation, the Tribe seems to be under the false impression that this is a class action lawsuit and does not focus on the specific legal arguments raised in the Defendants' motion.  And, while Defendants take serious issue with some of the factual representations made by the Tribe in its brief, such factual differences are immaterial to the resolution of the motion.  Finally, the amicus brief of the Society of Indian Psychologists simply reiterates and provides further credence to the general assertion that trauma may be associated under certain

---

[9] The three cases plaintiffs cite as having "explicitly approved" Section 504 claims against multiple defendants, Opp'n at 20, did not in fact "explicitly approve" such claims, because the question of who or what is a proper named federal defendant with respect to a Section 504 claim was not at issue in those cases.

[10] The Tribe simply reiterates some of Plaintiffs' arguments in only two paragraphs of their sixteen-page brief.  See Havasupai Tribe Amicus Br., ECF No. 78, at 14-15.  The Tribe appears to argue in passing that Plaintiffs' claims are not moot because the violations are capable of repetition.  See id. at 14.  This argument is meritless.  Defendants have not made a mootness argument, the alleged violations in the Havasupai school are not capable of repetition with respect to those students who no longer attend the school, and there are student plaintiffs in this lawsuit who do have standing to seek the relief requested.  Finally, The Society of Indian Psychologists do not make any legal arguments in response to Defendants' motion.  See generally Society of Indian Psych. Br., ECF No. 82.

12

circumstances with specific physiological and mental impairments.  Once again, Defendants do not dispute that trauma could be an external factor that may lead in certain situations to a qualifying disability under Section 504.  Nothing in the brief changes the fact that Plaintiffs have failed to state a claim in Count IV; if anything, reinforces Plaintiffs' pleading defect.

**CONCLUSION**

Defendants respectfully request that the Court dismiss (1) all claims by Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. for lack of standing; (2) Count IV for failure to state a claim or, in the alternative, as duplicative of Count III;  (3) Counts V and VI for lack of subject-matter jurisdiction; and (4) all defendants but the Secretary of the Interior as to Count III, and to the extent Counts IV-VI are allowed to proceed also as to those counts.

Dated:  September 15, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director

/s/  **Cesar A. Lopez-Morales**
LISA A. OLSON, D.C. Bar No. 384266
CESAR A. LOPEZ-MORALES,
    MA Bar No. 690545
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C.  20530
Telephone: (202) 305-8550
Facsimile: (202) 616-8460
Email: cesar.a.lopez-morales@usdoj.gov

**CERTIFICATE OF SERVICE**

13

I hereby certify that on September 15, 2017, I electronically transmitted the foregoing Affidavit of Service by Certified Mail to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

**/s/  Cesar A. Lopez-Morales**
Cesar A. Lopez-Morales