IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen C., a minor, by Frank C., guardian ad litem, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>Bureau of Indian Education, et al.,<br><br>Defendants. | No. CV-17-08004-PCT-SPL<br><br>**ORDER** |

Before the Court is Defendants' Second Partial Motion to Dismiss. (Doc. 69.) For the reasons set forth below, the motion is granted in part and denied in part.

**I.   Background[1]**

The present action is brought by Nine Havasupai students and the Native American Disability Law Center ("NADLC") to address alleged longstanding educational deprivations at Havasupai Elementary School ("HES")—a school operated by the Bureau of Indian Education on the Havasupai Indian Reservation.[2] Plaintiffs allege that Defendants have "knowingly failed to provide basic general education, a system of special education, and necessary wellness and mental health support to Havasupai students, resulting in indefensible deficits in academic achievement and educational attainment." (Doc. 60 at 1-2.) In connection with these alleged deprivations, Plaintiffs

---

[1]   The Court assumes the parties' familiarity with the facts and proceedings.

[2]   HES is the only option available to Havasupai children who wish to obtain an elementary education in their community. (Doc. 60 at 2.)

have filed suit against the following federal government agencies and officials: the Bureau of Indian Education ("BIE"); United States Department of the Interior ("DOI"); Ryan Zinke in his official capacity as Secretary of the DOI; Michael Black, in his official capacity as Acting Assistant Secretary—Indian Affairs; Tony Dearman, in his official capacity as the Director of the BIE; and Jeff Williamson, in his official capacity as Principal of HES (collectively, "Defendants"). (Doc. 60.) Plaintiffs seek declaratory and injunctive relief. (Doc. 60 at 62-64.)

## II.   Standard of Review

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under Federal Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Although a complaint "does not need detailed factual allegations," a plaintiff must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.*

In deciding a motion to dismiss the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-

moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *id.*, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (internal citation omitted). A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012).

**III.   Discussion**

Plaintiffs' Second Amended Complaint contains six causes of action: (1) Count I is brought by all Plaintiffs against all Defendants under 5 U.S.C. § 706(1) for failure to provide basic education; (2) Count II is brought by all Plaintiffs against all Defendants under 5 U.S.C. § 706(2) for failure to provide basic education; (3) Count III is brought by Plaintiffs Stephen C., Durell P., Levi. R., Jenny A., Jordan A., and NADLC against Defendants Zinke, Black, Dearman, and Williamson under 29 U.S.C. § 794 for failure to provide a system enabling students with disabilities to access public education; (4) Count IV is brought by Plaintiffs Stephen C., Durell P., Taylor P., Leo R., Levi R., Jenny A., and Jordan A. against Defendants Zinke, Black, Dearman, and Williamson under 29 U.S.C. § 794 for failure to provide a system enabling students impacted by childhood adversity to access public education; (5) Count V is brought by Plaintiffs Stephen C., Durell P., Levi R., Jenny A., Jordan A., and NADLC against Defendants Zinke, Black, Dearman, and Williamson under 34 C.F.R. § 104.32 for violations of Department of Education "location and notification" regulations; and (6) Count VI is brought by Plaintiffs Stephen C., Durell P., Levi R., Jenny A., Jordan A., and NADLC against Defendants Zinke, Black, Dearman, and Williamson under 34 C.F.R. § 104.36 for violations of Department of Education "procedural safeguards" regulations. (Doc. 60 at 50-62.)

Defendants have moved to dismiss the following parties and claims: (1) dismissal of certain student Plaintiffs; (2) dismissal of Count IV or in the alternative, consolidation

of Counts III and IV; (3) dismissal of Counts V and VI; and (4) dismissal of each Defendant with the exception of Defendant Zinke for Counts III, IV, V, and VI. (Doc. 69 at 4-20.) The Court will address each in turn.

**A.     Standing for Plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A.**

Plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. previously attended HES, but are no longer enrolled as students there for reasons related to the gravamen of this suit—that is, the alleged "inadequacy of the education provided at the School." (Doc. 60 at 4-6.) Sibling Plaintiffs Levi R. and Leo R. both attended HES from kindergarten through eighth grade until their family relocated from Supai so that they could attend public schools in Coconino County. (Doc. 60 at 4-5.) Similarly, sibling Plaintiffs Jenny A., Jeremy A., and Jordan A. each attended HES from kindergarten through the sixth, fifth, and third grades, respectively, until their mother decided to enroll them in a BIE boarding school in Oklahoma because of the school's inability to meet her children's educational needs. (Doc. 60 at 5-6.) Defendants contend that because the aforementioned student Plaintiffs are no longer enrolled at HES, they do not have standing to bring their claims and should be dismissed under Federal Rule of Civil Procedure 12(b)(1). (Doc. 69 at 4-7.)

"Article III of the United States Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 861 (9th Cir. 2017) (citing U.S. Const. art. III, § 2, cl. 1). The restriction that federal courts are limited to hearing cases and controversies "requires a party invoking a federal court's jurisdiction to demonstrate standing." *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016) (internal citation omitted). A party invoking federal jurisdiction bears the burden of establishing the irreducible constitutional minimums of standing—that is, an injury in fact, a causal connection between the injury and the conduct complained of, and the ability of a favorable decision to provide redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted). If Plaintiff is unable to meet this burden, the federal court lacks subject matter jurisdiction and the suit should be dismissed

under Federal Rule of Civil Procedure 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (internal citations omitted).

### 1. Compensatory Education

Because student Plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. are no longer enrolled at HES, standing is predicated on the availability of compensatory education as an equitable remedy. (Doc. 76 at 3-7.) "Compensatory education is an equitable remedy that seeks to make up for 'educational services [a] child should have received in the first place,' and 'aim[s] to place disabled children in the same position they would have occupied but for the school district's violation of *IDEA*.'" *R.P. ex rel. C.P. v. Prescott Unified Sch. Dist.*, 631 F.3d 1117, 1125 (9th Cir. 2011) (internal citations omitted) (emphasis added). Plaintiffs have not directed the Court to any case law that stands for the proposition that compensatory education is an appropriate equitable remedy outside the context of the Individuals with Disabilities Education Act (IDEA), nor has the Court's own research yielded any such case.[3] Without such redress, these student Plaintiffs have failed to meet their burden of establishing that they have standing to bring their claims against Defendants. Defendants' motion to dismiss Plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. for lack of standing is granted.

### B. Count IV

Student Plaintiffs Stephen C., Durell P. Taylor P., Leo R., Levi R., Jenny A., and Jordan A. allege that Defendant Zinke, Black, Dearman, and Williamson violated Section 504 of the Rehabilitation Act by failing to establish systems that address their exposure to adversity[4] and complex trauma[5] so as to facilitate meaningful access to the benefits of

---

[3] As Defendants point out, "Plaintiffs do not cite any cases discussing an award of compensatory education as a form of equitable relief under the Rehabilitation Act (or the Indian Education Act) against the Federal Government." (Doc. 92 at 2.)

[4] Adverse Childhood Experiences ("ACEs") are "inherently disruptive experiences in childhood that produce significant potentially damaging level[s] of stress and associated physical changes." (Doc. 60 at 40, n.5.) "Although a child can be profoundly affected by one traumatic experience, Student Plaintiffs impacted by Childhood Adversity have all experienced complex trauma." (*Id.*)

5

public education. (Doc. 60 at 56-58.) Count IV is thus predicated on an initial, underlying finding that these student Plaintiffs are disabled under Section 504 by virtue of their exposure to complex trauma and adversity, including, but not limited to: "experiences of physical and sexual violence, involvement in the child welfare and juvenile justice systems, alcohol and substance abuse in the family and community, extreme poverty, denial of access to education, and historical trauma." (Doc. 76 at 7.) Defendants challenge Plaintiffs' characterization of exposure to complex trauma and adversity as a disability within the meaning of Section 504 and their claims that they were denied benefits solely because of their disabilities. (Doc. 69 at 8-12.) Defendants alternatively argue that Count IV—if allowed to proceed—is duplicative of Count III and should be consolidated. (Doc. 69 at 14-16.)

> Section 504 of the Rehabilitation Act, reads in part:
>> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency.

29 U.S.C. § 794(a).

By cross-reference to the Americans with Disabilities Act ("ADA"), Section 504 defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities pertinent to this case include: learning, reading, concentrating, thinking, and communicating. 42 U.S.C. § 12102(2)(A). To state a claim under Section 504, Plaintiffs must establish that: (1) they are individuals with a disability; (2) they are otherwise qualified to receive the benefit; (3) they were denied the benefits of the program solely by reason of their disability; and

---

[5] "Complex trauma stems from an individual child's exposure to multiple persistent sources of violence, loss, and other adverse childhood experiences ('ACEs') and describes children's exposure to these events and the impact of [such] exposure." (Doc. 60 at 40-41.)

(4) the program receives federal financial assistance.[6] *Updike v. Multnomah Cty.*, 870 F.3d 939, 949 (9th Cir. 2017) (internal citation omitted).

First, Defendants' characterization of Plaintiffs' allegations as rote recitations of the legal definition of disability and sweeping generalizations of historical trauma within the Havasupai community ignore the actual allegations contained in Plaintiffs' Second Amended Complaint. (Doc. 69 at 8-12.) Plaintiffs make substantial reference to the historical, environmental, and socioeconomic factors contributing to the prevalence of trauma within the students' community, including, but not limited to:

> involvement in the juvenile justice and child welfare systems; family disruption, including separation from caregivers due to boarding school placements; historical trauma, including parent experience with boarding schools; physical and sexual violence, including exposure to restraints in the school setting; alcohol and substance abuse in the community; denial of access to education; and poverty.

(Doc. 60 at 39.)

For purposes of the present motion, it is important to note that Plaintiffs' allegations do not stop there; rather, Plaintiffs explain the ways in which "[e]xposure to trauma can lead to palpable, physiological harm to a young person's developing brain," and how these physiological impacts manifest in the classroom. (Doc. 60 at 40.) Moreover, the Second Amended Complaint is replete with allegations relating each student Plaintiffs' unique exposure to complex trauma and adverse childhood experiences to their ability to read, think, and concentrate—i.e. how their brains' physical response to trauma substantially limits their ability to learn. (Doc. 60 at 13-36.) Thus, the Court finds that Plaintiffs have adequately alleged that complex trauma and adversity can result in physiological effects constituting a physical impairment that substantially limits major life activities within the meaning of Section 504 of the Rehabilitation Act.

---

[6] "[A]ll BIE-operated schools must comply with Section 504 of the Rehabilitation Act pursuant to the Education Amendments of 1978, as amended by the No Child Left Behind Act of 2001." (Doc. 69 at 8, n.4.)

Second, Defendants' argument that Plaintiffs are unable to satisfy the causation requirement of their Section 504 claims conflates the standards for discrimination claims in the employment and educational contexts. Defendants maintain that Plaintiffs have not established "that the duty to accommodate was triggered here because there are no allegations showing that defendants knew, had notice of, or had reason to believe that any of the plaintiffs had a disability as a result of trauma and adversity." (Doc. 69 at 13.)

Section 504 of the Rehabilitation Act is intended "to protect disabled persons from discrimination arising out of both discriminatory animus and 'thoughtlessness,' 'indifference,' or 'benign neglect.'" *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985)). In determining whether disabled individuals are being discriminated against in violation of Section 504, courts may look to "whether disabled persons were denied meaningful access to state-provided services." *Id.* (internal punctuation and citations omitted).

Defendants contend that Plaintiffs have not—and cannot—establish that they were denied the benefits of public education solely by virtue of their disabilities because Defendants did not have the requisite knowledge of the Plaintiffs' disabilities resulting from exposure to complex trauma and adverse childhood experiences. (Doc. 69 at 12-14.) Specifically, Defendants point to Plaintiffs' failure to (1) provide notice to Defendants of their disabilities and (2) engage in interactive processes to discuss possible accommodations prior to bringing this suit. (*Id.*) To agree with this argument, however, would be to import the pre-litigation notice and accommodation request requirements for ADA claims in the workplace to the classroom. *See P.P. v. Compton Unified Sch. Dist.*, 135 F.Supp.3d 1098, 1114-15 (C.D. Cal. 2015). Even if this were the standard—which it is not—Plaintiffs have sufficiently alleged in their Second Amended Complaint facts which make it plausible that Defendants were in fact on notice of student Plaintiffs' disabilities by virtue of their exposure to trauma and adversity. Defendants have previously acknowledged the impact that trauma and adversity within the Havasupai community has on HES students:

> [HES] is a U.S. Bureau of Indian Education operated K-8 school and is considered to be the most isolated and remote school in the lower 48 states. High levels of poverty, unemployment, low levels of literacy and substance abuse and family violence plague this community. . . . During the current school year, 2010-2011, HES has a total population of 68 , [sic] 100% are Havasupai tribal members, 100% qualify for Free or Reduced Lunch, 90% are identified limited English proficient and 90% are identified as needing Special Education Services.

(Doc. 60, Ex. A at 3.)[7]

For these reasons, Defendants' motion to dismiss Count IV is denied. With respect to Defendants' alternative argument that Counts III and IV should be consolidated (Doc. 69 at 14-17), these claims are brought by different Plaintiffs, are predicated on different conduct and factual circumstances, and seek different remedies. Because of these fundamental distinctions between Counts III and IV, Defendants' motion to consolidate is denied. *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."); *see also Bautista v. L.A. Cty.*, 216 F.3d 837, 840 (9th Cir. 2000) ("Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims.") (quoting JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE, § 10.3[2][a] (3d ed. 1997)).

### C. Claims under Department of Education Regulations

Counts V and VI of Plaintiffs' Second Amended Complaint allege that Defendants have violated DOE regulations implementing Section 504 of the Rehabilitation Act, specifically those regarding "Location and Notification" and "Procedural Safeguards." (Doc. 60 at 59-62.) Defendants move to dismiss these claims on the theory that these DOE regulations contain no private right of action and cannot be enforced through an implied private right of action. (Doc. 69 at 17-19.)

---

[7] As recently as 2014, Plaintiffs allege HES self-reported that approximately half of its students had been identified as students with disabilities. (Doc. 64 at 43.)

"Section 504 establishes an implied private right of action allowing victims of prohibited discrimination, exclusion, or denial of benefits to seek the full panoply of remedies, including equitable relief and compensatory damages." *Mark H. v. Lemahieu*, 513 F.3d 922, 930 (9th Cir. 2008) (internal citations and punctuation omitted). In order for Plaintiffs to successfully bring their claim against Defendants under these provisions by virtue of a private right of action, it must first be determined whether each regulation at issue is "tightly enough linked to § 504 that they 'authoritatively construe' that statutory section, rather than impose new obligations." *Lemahieu*, 513 F.3d at 939 (citing *Alexander v. Sandoval*, 532 U.S. 275, 284 (2001)). "[T]he Ninth Circuit has previously found § 504 'reasonable accommodation' and 'meaningful access requirements' relevant when evaluating whether regulations 'come within § 504's substantive scope.'" *P.P.*, 135 F.Supp.3d at 1118 (citing *Lemahieu*, 513 F.3d at 938.)

The "Location and Notification" provision of Section 504's implementing regulations requires that:

> A recipient that operates a public elementary . . . education program or activity shall annually:
> (a) Undertake to identify and locate every qualified handicapped person residing in the recipient's jurisdiction who is not receiving a public education; and
> (b) Take appropriate steps to notify handicapped persons and their parents or guardians of the recipient's duty under this subpart.

34 C.F.R. § 104.32.

Following the reasoning adopted by the *P.P.* Court, this Court finds that the "Location and Notification" regulation is necessary to ensure meaningful access to an appropriate education in this case. *Lemahieu*, 513 F.3d at 938, n.14 ("Depending on the particular circumstances, testing and evaluation of a disabled child might be necessary to ensure 'meaningful access' to an appropriate education, *as might notice to a child's parents of the educational plan for that child*.") (emphasis added); *see also P.P.*, 135 F.Supp.3d at 1119.

Having determined that the "Location and Notification" regulation contains an implied private right of action, the Court now turns to the sufficiency of the allegations in Plaintiffs' Second Amended Complaint. Plaintiffs allege that Defendants have failed to establish a system for identifying and assessing the needs of students with disabilities as follows:

> Havasupai Elementary School does not employ, and has not employed at any time in recent years, sufficient numbers of the following personnel necessary to adequately provide special education services to students with disabilities: highly qualified special education teachers, mental health providers, occupational therapists, physical therapists, and speech therapists. At no time in recent years has the School employed sufficient numbers of paraprofessionals or support staff to meet the needs of students with disabilities. The staffing of Havasupai Elementary School is so inadequate that the School cannot even hold IEP meetings on a timely basis.

(Doc. 64 at 44.)

Based on these allegations, as well as those regarding the inability of HES to effectively communicate with student Plaintiffs' parents and guardians about the services that are required to be available to students with disabilities, it is facially plausible that Defendants have violated 34 C.F.R. § 104.32 and Defendants' motion to dismiss Count IV is denied.

The "Procedural Safeguards" provision of 34 C.F.R. § 104.36 requires, in part:
> A recipient that operates a public elementary . . . program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.

34 C.F.R. § 104.36.

Again looking towards the sound reasoning demonstrated by sister courts within this Circuit, the Court finds that this regulation is necessary to ensure meaningful access to an appropriate education with respect to the present facts. *Lemahieu*, 513 F.3d at 938, n.14; *see also P.P.*, 135 F.Supp.3d at 1119; *J.M v. Liberty Union High Sch. Dist.*, No. 16-CV-05225-LB, 2017 WL 2118344, at *4 (N.D. Cal. May 16, 2017). The Court agrees with Plaintiffs that Defendants' reliance on *Power ex rel. Power v. Sch. Bd. of City of Va. Beach*, 276 F.Supp.2d 515, 519-520 (E.D. Va. 2003) is misplaced because of the underlying claims of discrimination present in this case. (Doc. 76 at 18-19.)

Further, the Court finds that Plaintiffs have sufficiently pleaded factual allegations that make it facially plausible that Defendants have violated 34 C.F.R. § 104.36. With respect to the procedural safeguards required DOE regulations, Plaintiffs allege as follows:

> 177. Havasupai Elementary School does not have the capacity to meet its obligation to identify and provide comprehensive assessments of students with disabilities. The School makes matters even more challenging for parents by failing to provide information required by federal statutes and regulations, including notice of procedural safeguards and information necessary to understand disabilities, participate in planning, and access educational records. The School also does not have an adequate recordkeeping system in place.

(Doc. 64 at 45.)

Based on these allegations, as well as those regarding the lack of adequate staffing, it is facially plausible that Defendants have violated 34 C.F.R. § 104.36 and Defendants' motion to dismiss Count VI is denied.

**D.     Proper Defendants for Counts III-VI**

Defendants argue that Defendant Zinke, in his official capacity as Secretary of the Interior, is the only proper defendant for Counts III, IV, V, and VI, and have moved to dismiss Defendants Black, Dearman, and Williamson. (Doc. 69 at 19-20.) Plaintiffs maintain that these claims may be asserted against all named defendants. (Doc. 76 at 19-20.)

Plaintiffs and Defendants agree that Section 504 of the Rehabilitation Act incorporates "the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C 2000d et seq.)." 29 U.S.C. § 794a(a)(1). (Doc. 76 at 19; Doc. 92 at 11.) In spite of this agreement, Plaintiffs and Defendants reach opposite conclusions regarding its application to this case. The Court is persuaded, however, by Defendants' argument that Secretary of the Interior Ryan Zinke is the only proper defendant for these claims. *See Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds by Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). Moreover, this conclusion is supported by the fact that any violations would ultimately be attributable to the Department of the Interior. As Defendants also point out, Plaintiffs have failed to attribute separate predicate acts to each defendant. (Doc. 92 at 11-12.) For these reasons, the Court concludes that Defendant Ryan Zinke in his official capacity as Secretary of the Interior is the only proper Defendant for Counts III, IV, V, and VI. Accordingly,

**IT IS ORDERED** that Defendants' Second Partial Motion to Dismiss (Doc. 69) is **granted in part** and **denied in part** as follows:

    1.    That Defendants' motion to dismiss Plaintiffs Levi R., Leo R., Jenny A., Jeremy A., and Jordan A. for lack of standing is **granted**;

    2.    That Defendants' motion to dismiss Count IV is **denied**;

    3.    That Defendants' motion to dismiss Counts V and VI is **denied**; and

    4.    That Defendants' motion to dismiss Defendants Michael Blackman, Tony Dearman, and Jeff Williamson with respect to Counts III, IV, V, and VI is **granted**.

Dated this 29th day of March, 2018.

Honorable Steven P. Logan
United States District Judge