Alexis DeLaCruz (SBN 031273)
adelacruz@nativedisabilitylaw.org
NATIVE AMERICAN DISABILITY
LAW CENTER
905 W. Apache St.
Farmington, NM 87401
Telephone:  505.566.5880

Mark Rosenbaum (*pro hac vice*)
mrosenbaum@publiccounsel.org
Kathryn Eidmann (*pro hac vice*)
keidmann@publiccounsel.org
Anne Hudson-Price (*pro hac vice*)
aprice@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: 213.385.2977

Maria Martinez-Sánchez (*pro hac vice*)
mmartinez@aclu-nm.org
AMERICAN CIVIL LIBERTIES UNION
of NEW MEXICO
1410 Coal Avenue SW
Albuquerque, NM 87104
Telephone: 505.266.5915

Bradley S. Phillips (*pro hac vice*)
Brad.Phillips@mto.com
Bryan H. Heckenlively (*pro hac vice*)
bryan.heckenlively@mto.com
Emily Curran-Huberty (*pro hac vice*)
Emily.Curran-Huberty@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA  90071
Telephone: 213.683.9100

Judith M. Dworkin (SBN 010849)
Judith.Dworkin@SacksTierney.com
David C. Tierney (SBN 002385)
David.Tierney@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone:  480.425.2600

Tara C. Ford (*pro hac vice*)
taraford@law.stanford.edu
Stanford Law School
MILLS LEGAL CLINIC
Youth and Education Law Project
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: 650.725.8581

*Attorneys for Plaintiffs*

---

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen C., a minor, by Frank C., guardian ad litem; Anna D., a minor, by Elsa D., guardian ad litem; Durell P., a minor, by Billie P., guardian ad litem; Taylor P., a minor, by Billie P., guardian ad litem; Levi R., a minor, by Laila R., guardian ad litem; Leo R., a minor, by Laila R., guardian ad litem; Jenny A., a minor, by Jasmine A., guardian ad litem; Jeremy A., a minor, by Jasmine A., guardian ad litem; Jordan A., a minor, by Jasmine A., guardian ad litem; Freddy P., a minor, by Billie P., guardian ad litem; Moana L., a minor, by Monica L., guardian ad litem; Olaf D., a minor, by Elsa D., guardian ad litem; and The Native American Disability Law Center, *Plaintiffs*, v. | No. 3:17-cv-08004-SPL<br><br>**REDACTED**<br><br>**THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Bureau of Indian Education; United States Department of the Interior; Ryan Zinke, in his official capacity as Secretary of the Interior; Tara Sweeney, in her official capacity as Acting Assistant Secretary - Indian Affairs; Tony Dearman, in his official capacity as Director of the Bureau of Indian Education; Maxine Roanhorse-Dineyahze, in her official capacity as Acting Principal of Havasupai Elementary School,

*Defendants.*

## **INTRODUCTION**

1.      Twelve Havasupai students and the Native American Disability Law Center (collectively, "Plaintiffs") bring this Amended Complaint to correct longstanding educational deprivations that have for years denied Havasupai children meaningful and equitable educational opportunity. Defendants—the federal government agencies and officials responsible for administering and ensuring the provision of education to Native students in the United States[1]—have knowingly failed to provide basic general education, a system of special education, and necessary wellness and mental health support to Havasupai students, resulting in indefensible deficits in academic achievement and educational attainment.

2.      Havasupai Elementary School ("the School"), which serves students in kindergarten through the eighth grade, is operated by Defendant Bureau of Indian Education ("BIE") and is the only option available to student Plaintiffs to obtain elementary education in their community. In direct violation of the numerous federal statutes and regulations that prescribe with specificity the content and form of the general and special education that must be provided in BIE-administered schools, federal

---

[1] Defendants are the United States Department of the Interior ("DOI"); United States Bureau of Indian Education ("BIE"); Defendant Ryan Zinke, in his official capacity as U.S. Secretary of the Interior; Tara Sweeney, in her official capacity as Assistant Secretary—Indian Affairs; Tony Dearman, in his official capacity as Director of the Bureau of Indian Education; and Maxine Roanhorse-Dineyahze, in her official capacity as Acting Principal of Havasupai Elementary School (collectively, "Defendants").

government officials have systemically deprived student Plaintiffs of meaningful access to education by the following means:

- failure to provide general education curriculum and instruction in any content areas other than math and reading and writing;

- persistent understaffing and teaching vacancies;

- denial of basic educational resources such as textbooks, a functioning school library, and extracurricular activities;

- lack of a system to provide special education and failure to provide a full day of public education to students with disabilities;

- excessive exclusionary discipline and abusive recourse to law enforcement;

- failure to provide necessary wellness and mental health support; and

- exclusion of the community from school decision making.

3. Numerous federal statutes and regulations, including the Indian Education Act and its implementing regulations, expressly require Defendants to provide an education to Native American children that meets basic educational standards and enables students to access post-secondary educational opportunities. *See, e.g.*, 25 U.S.C. §§ 2000, 2001; 25 C.F.R. §§ 32.3-32.4.

4. Binding regulations describe with specificity the content and form of the education that must be provided in BIE schools, including the subject areas that must be taught and the educational resources that must be available. 25 C.F.R. §§ 36.11-36.51.

5. Defendants are likewise directly responsible for enforcing federal statutes that prohibit discrimination on the basis of disability in schools funded and administered by the BIE. Since at least as early as 1978, Congress has made clear that Defendants bear the obligation to ensure that all Bureau-administered schools are in compliance with Section 504 of the Rehabilitation Act of 1973 ("Section 504"), which prohibits discrimination on the basis of disability in federally funded programs. Pub. L. No. 95-561, § 1125, 92 Stat. 2143, 2319 (1978); 25 U.S.C. § 2005(b)(1); Exec. Order No. 13,160, 65 Fed. Reg. 39775 (June 23, 2000).

6. Despite these legal mandates, Defendants have failed to provide basic general

education to students at Havasupai Elementary School and to establish a system to deliver specialized instruction, related services, and accommodations necessary for students with disabilities—including but not limited to students whose ability to learn has been impacted by exposure to childhood adversity—to access the benefits of a public education. These deprivations violate Defendants' substantive obligations under the Indian Education Act as amended, Section 504 of the Rehabilitation Act of 1973, and their implementing regulations. To redress this deprivation of rights, Plaintiffs bring this complaint for declaratory and injunctive relief.

7. Plaintiffs' allegations against Defendants are based upon information and belief. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under federal law. Venue is appropriate in this Court under 28 U.S.C. § 1402(a) because student Plaintiffs reside in the District of Arizona.

### FACTUAL ALLEGATIONS

### I.   PARTIES

#### *Plaintiffs*

8. **Plaintiff Stephen C.** is a thirteen-year-old Havasupai boy who resides on the Havasupai reservation in Supai, Arizona. Stephen C. recently completed the seventh grade at Canyon State Academy, a placement made by the Havasupai Elementary School through his Individual Education Program ("IEP"). He is legally required to attend school. Stephen C. attended Havasupai Elementary School from kindergarten until the School placed him at Canyon State Academy. Plaintiff Stephen C. has been identified as a student with a disability and is eligible to receive special education services. The Court has granted the petition of Frank C., guardian of Stephen C., to act as Stephen C.'s guardian *ad litem* in connection with this litigation.

9. **Plaintiff Anna D.** is a ten-year-old Havasupai girl who resides on the Havasupai reservation in Supai, Arizona. Anna D. attended Havasupai Elementary School from kindergarten through third grade. Because Havasupai Elementary School could not meet her educational needs, Anna D. completed the fourth grade at an Arizona public

school. Anna D is legally required to attend school. The Court has granted the petition of Elsa D., mother of Anna D., to act as Elsa D.'s guardian *ad litem* in connection with this litigation.

10.     **Plaintiff Durell P.** is a fourteen-year-old Havasupai boy who resides on the Havasupai reservation in Supai, Arizona. Durell P. recently completed the eighth grade at Canyon State Academy, a placement made by the Havasupai Elementary School through his Individual Education Program (IEP) . He is legally required to attend school. Durell P. was attended at Havasupai Elementary School from kindergarten until his placement by the School at Canyon State Academy, except for a 45-day period when the School compelled him to enroll in a residential placement because the School could not meet his educational needs. Plaintiff Durell P. has been identified as a student with a disability and is eligible to receive special education services. The Court has granted the petition of Billie P., mother of Durell P., to act as Durell P.'s guardian *ad litem* in connection with this litigation.

11.     **Plaintiff Taylor P.** is a seven-year-old Havasupai girl who resides on the Havasupai Reservation in Supai, Arizona. Taylor P. recently completed the first grade at Havasupai Elementary School and is legally required to attend school. The Court has granted the petition of Billie P., mother of Taylor P., to act as Taylor P.'s guardian *ad litem* in connection with this litigation.

12.     **Plaintiff Levi R.** is a seventeen-year-old Havasupai boy who resides in Coconino County, Arizona. Levi R. attended Havasupai Elementary School from kindergarten through the beginning of the eighth grade, except for a two-month period in 2014 when he was receiving online education services because the School could not meet his educational needs. Levi R. is legally required to attend school. Due to the inadequacy of the education provided at the School, Levi R.'s mother, Laila R., moved her family out of Supai, Arizona when Levi R. was in the eighth grade. Levi R. recently completed the eighth grade at a public school in Coconino County. Plaintiff Levi R. has been identified as a student with a disability and is eligible to receive special education services. The Court has granted the petition of Laila R., mother of Levi R., to act as Levi R.'s guardian *ad litem*

in connection with this litigation.[2]

13.     **Plaintiff Leo R**. is a seventeen-year-old Havasupai boy who resides in Coconino County, Arizona. Leo R. attended Havasupai Elementary School from kindergarten through the eighth grade. Because Havasupai Elementary School does not provide a high school education, Leo R. left his family in Supai, Arizona in order to attend a public school in Arizona in the ninth grade. Leo R. recently completed the eleventh grade at a public school in Coconino County, and is legally required to attend school. The Court has granted the petition of Laila R., mother of Leo R., to act as Leo R.'s guardian *ad litem* in connection with this litigation.

14.     **Plaintiff Jenny A**. is a fifteen-year-old Havasupai girl who resides on the Havasupai Reservation in Supai, Arizona. Jenny A. attended Havasupai Elementary School from kindergarten through the sixth grade. Due to the inadequacy of the education provided at the School, Jenny A.'s mother, Jasmine A., decided to enroll her daughter at a BIE boarding school in Oklahoma. Jenny A. recently completed the tenth grade, and she is legally required to attend school. Plaintiff Jenny A. has been identified as a student with a disability and is eligible to receive special education services. The Court has granted the petition of Jasmine A., mother of Jenny A., to act as Jenny A.'s guardian *ad litem* in connection with this litigation.

15.     **Plaintiff Jeremy A.** is a fourteen-year-old Havasupai boy who resides on the Havasupai Reservation in Supai, Arizona. Jeremy A. attended Havasupai Elementary School from kindergarten through the fifth grade. Due to the inadequacy of the education provided at the School, Jeremy A.'s mother, Jasmine A., decided to enroll Jeremy A. at a BIE boarding school in Oklahoma. Jeremy A. recently completed the eighth grade, and he is legally required to attend school. The Court has granted the petition of Jasmine A., mother of Jeremy A., to act as Jeremy A.'s guardian *ad litem* in connection with this

---

[2] Plaintiffs acknowledge the Court's rulings dismissing certain Plaintiffs and dismissing some causes of action against certain Defendants.  Plaintiffs have not modified the pleadings to reflect those rulings solely in order to preserve their rights on appeal.

litigation.

16.    **Plaintiff Jordan A.** is an eleven-year-old Havasupai boy who resides on the Havasupai Reservation in Supai, Arizona. Jordan A. attended Havasupai Elementary School from kindergarten through the third grade. Due to the inadequacy of the education provided at the School, Jordan A.'s mother, Jasmine A., decided to enroll Jordan A. at a BIE boarding school in Oklahoma. Jordan A. recently completed the fifth grade, and he is legally required to attend school. Plaintiff Jordan A. has been identified as a student with a disability and is eligible to receive special education services. The Court has granted the petition of Jasmine A., mother of Jordan A., to act as Jordan A.'s guardian *ad litem* in connection with this litigation.

17.    **Plaintiff Freddy P.** is a five-year old Havasupai boy who resides on the Havasupai Reservation in Supai, Arizona.  Freddy P. is scheduled to begin kindergarten at Havasupai Elementary School in August 2018, at which point he will be legally required to attend school. While enrolled in the Havasupai Head Start program, Freddy P. was identified as a student with a disability and received special education services. Plaintiffs have submitted to the Court the petition of Billie P., mother of Freddy P., to act as Freddy P.'s guardian *ad litem* in connection with this litigation.

18.    **Plaintiff Moana L.** is a six-year old Havasupai girl who resides on the Havasupai Reservation in Supai, Arizona. Moana L. recently completed kindergarten at Havasupai Elementary School, and she is scheduled to begin first grade at Havasupai Elementary School in August 2018. She is legally required to attend school. Plaintiffs have submitted to the Court the petition of Monica L., grandmother of Moana L., to act as Moana L.'s guardian *ad litem* in connection with this litigation.

*19.*    **Plaintiff Olaf D.** is a five-year-old Havasupai boy who resides on the Havasupai Reservation in Supai, Arizona. Olaf D. is scheduled to begin kindergarten at Havasupai Elementary School in August 2018, at which point he will be legally required to attend school. Olaf D. successfully graduated from the Havasupai Head Start program. Plaintiffs have submitted to the Court the petition of Elsa D., mother of Olaf D., to act as

Olaf D.'s guardian *ad litem* in connection with this litigation.

20.    **Plaintiff Native American Disability Law Center** ("NADLC") is a 501(c) nonprofit organization based in Farmington, New Mexico that advocates for the legal rights of Native Americans with disabilities. NADLC is a Protection and Advocacy Organization authorized by relevant federal statutes to initiate legal action designed to protect the rights of persons with disabilities. *See* 42 §§ U.S.C. 15041 *et seq.*, 42 U.S.C. §§ 10801 *et seq.* NADLC's mission is to advocate so that the rights of Native Americans with disabilities in the Four Corners area are enforced, strengthened, and brought in harmony with their communities.

21.    NADLC has received at least eight requests for assistance concerning the failure of Havasupai Elementary School to provide special education instruction, related services, and appropriate resources to enable students with disabilities to participate in public education. NADLC provided legal assistance in four of those cases. NADLC has filed two administrative complaints relating to Havasupai Elementary School's failure to provide appropriate special education and related services. Both of those cases were settled, and in both cases the BIE failed to provide the student with the services promised in the Settlement Agreement.

22.    NADLC has devoted significant organizational resources to identifying and counteracting Defendants' practices. As a direct consequence, Defendants' practices have caused NADLC to divert its scarce resources from other efforts to promote and protect the rights of Native Americans with disabilities. Continued advocacy on behalf of Havasupai students with disabilities against Defendants will significantly diminish NADLC's resources and impact its ability to serve other Native Americans with disabilities in the Four Corners area.

23.    In addition to such individual advocacy that NADLC has provided its clients, NADLC filed a Freedom of Information Act ("FOIA") request to obtain public records from the BIE about Havasupai Elementary School. NADLC filed the FOIA request on May 21, 2015. NADLC initially  received only a partial response from the BIE. On

March 21, 2017, NADLC filed a complaint against the federal government in U.S. District Court for the District of Columbia to address the BIE's failure to provide documents pursuant to the 2015 FOIA request. This case is still pending.

### *Defendants*

24.    **Defendant Bureau of Indian Education ("BIE")** is a bureau within the U.S. Department of the Interior. Pursuant to Department of the Interior regulations, the Assistant Secretary—Indian Affairs has delegated to the BIE the authority to provide education services to Native American children, including children with disabilities. The BIE is responsible for meeting the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children residing on reservations and attending elementary and secondary schools funded by the Department of the Interior.

25.    **Defendant United States Department of the Interior ("DOI")** is a federal agency. As the parent agency of the BIE, the DOI is responsible for meeting the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children residing on reservations and attending elementary and secondary schools funded by the Secretary of the Interior.

26.    **Defendant Ryan Zinke**, sued here in his official capacity, is the U.S. Secretary of the Interior (the "Secretary") and as such is responsible for meeting the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children residing on reservations and attending elementary and secondary schools funded by the Department of the Interior.

27.    **Defendant Tara Sweeney**, sued here in her official capacity, is the Assistant Secretary—Indian Affairs within DOI. By regulation, she is responsible for meeting the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children residing on reservations and attending elementary and secondary schools funded by the Department of the Interior.

28.    **Defendant Tony Dearman,** sued here in his official capacity, is Director of the BIE. As Director, he oversees all operations of the BIE. As such, he is responsible for

ensuring the constitutional, statutory, civil, and human rights of all Native American students. By delegation of authority by the Assistant Secretary—Indian Affairs, the Director of the BIE is responsible for meeting the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children residing on reservations and attending elementary and secondary schools funded by DOI.

29.     **Defendant Maxine Roanhorse-Dineyahze**, sued here in her official capacity, is the Principal of Havasupai Elementary School. In that capacity, she is responsible for assisting Defendant Dearman in ensuring that the BIE meets the requirements of Section 504 of the Rehabilitation Act and the educational needs of Native American children attending Havasupai Elementary School.

## II.     DEFENDANTS' OBLIGATION TO PROVIDE EDUCATION TO STUDENT PLAINTIFFS

30.     The Havasupai are a federally recognized Native American tribe who has resided for centuries in the Grand Canyon. The Havasupai Nation is located on a reservation established by the United States government on a parcel of land along the western corner of the Grand Canyon's South Rim. The only school on the Havasupai reservation is Havasupai Elementary School, which currently serves approximately 70 students and is both funded and operated by the BIE. It is not controlled or operated by the Havasupai government and is not subject to the jurisdiction of any State Educational Agency ("SEA") other than the BIE. 20 U.S.C. § 7801(30)(C).

31.     The federal government has committed to providing education for Native American students attending schools funded or operated by the BIE. Title XI of the Education Amendments of 1978, as amended by the Native American Education Improvement Act of 2001 ("Title XI"), expressly states that in order to fulfill the federal government's "unique and continuing trust responsibility . . . for the education of Indian children," the "Federal Government has *the sole responsibility* for the operation and financial support of the [BIE] funded school system. . . ." 25 U.S.C. § 2000 (emphasis added). The Act further "vest[s] in the Assistant Secretary for Indian Affairs all functions

with respect to formulation and establishment of policy and procedure and supervision of programs and expenditures of Federal funds for the purpose of Indian education administered by the Bureau." 25 U.S.C. § 2006(a).

**A.**   **Legal Requirements To Deliver Basic Education at Havasupai Elementary School to All Student Plaintiffs**

32.    The BIE must provide Native American children "with educational opportunities that *equal or exceed those for all other students in the United States*." 25 U.S.C. § 2001(a)(1) (emphasis added). Federal statutes and regulations refer to Defendants' obligation to provide education that is "adequate," "comprehensive," "of the highest quality," and that meets "basic elementary and secondary educational needs." 25 C.F.R. §§ 32.4(r), 32.3; 25 U.S.C. § 2000. These statutory and regulatory obligations are reinforced by the federal government's "trust" responsibility for Native American students. *See United States v. Navajo Nation*, 537 U.S. 488, 506 (2003).

33.    Federal statutes recognize Defendants' obligation to meet the distinct educational and cultural needs of Native students attending BIE schools. Title VI of the Elementary and Secondary Education Act, for example, requires Defendants to work to ensure "that programs that serve Indian children are of the highest quality and provide for not only the basic elementary and secondary educational needs, but also the unique educational and culturally related academic needs of these children." 20 U.S.C. § 7401.

**(1)**   **Defendants' Legal Obligations To Provide Required Instruction**

34.    Defendant BIE has issued comprehensive binding regulations detailing the content and form that a basic education must take. For each age group, the regulations articulate the governing educational philosophy, enumerate the instructional content that must be covered, and describe the educational concepts that must be incorporated into the curriculum. *See, e.g.*, 25 C.F.R. §§ 36.21; 36.22; 36.23, 36.24.

35.    Defendants are obligated to take into account the cultural, ethnic, and linguistic needs of Native students. Each "school's language arts program shall assess the English and native language abilities of its students and provide instruction that teaches and/or maintains both the English and the primary native language of the school

population," and each such program must "meet local tribal approval." 25 C.F.R. § 36.20(b)(1). Additionally, "[t]he school program shall include aspects of the native culture in all curriculum areas," and the content of the program must "meet local tribal approval." 25 C.F.R. § 36.20(b)(2). Each school must "assess the learning styles of its students and provide instruction based upon that assessment," and provide "for at least one field trip per child per year to broaden social and academic experiences." 25 C.F.R. §§ 36.20(b)(3), (b)(4).

### (2) Defendants' Legal Obligations To Ensure Adequate Staffing and Instruction

36.    Defendants are subject to a series of regulations specifying the staffing and administrative requirements at BIE schools in order to ensure both the quality and quantity of instruction and educational support received by Native students. *See* 25 C.F.R. §§ 36.11(a)(5); 36.42; 36.50(a); 25 U.S.C. § 2000.

37.    To ensure an adequate amount of instruction, BIE regulations further provide that any day that meets only "three-fourths of the instructional hours" may not be counted as a full school day except in the rare case of emergencies arising from "an uncontrollable circumstance during the school day." 25 C.F.R. § 36.20(a).

### (3) Defendants' Legal Obligations To Provide Appropriate Instructional Resources and Activities

38.    BIE regulations mandate that Defendants provide Native students with appropriate instructional resources as well as the opportunity to participate in a well-balanced range of student activities. Specifically, these regulations set forth a series of requirements that Defendants must satisfy in the provision of learning materials, such as textbooks, and student activities at BIE schools. *See* 25 C.F.R. §§ 36.40, 36.41, 36.43.

39.    Multiple statutes and regulations obligate Defendants to engage tribal community members in various areas of school decisionmaking. Notably, this regulatory regime envisions the role of a local school board that participates in setting and assessing educational goals. *See* 25 C.F.R. § 36.10(b); *see also* 25 C.F.R. §§ 36.13(a)(c), 36.12(b)(1),

36.20(b); 36.41(a), 36.12(b)(1), 36.42(a)(4).

**B.     Section 504 of the Rehabilitation Act Prohibits Discrimination Against Students with Disabilities**

40.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under . . . any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). A "program or activity" includes a school system, 29 U.S.C. § 794(b)(2)(B), and a disability is defined broadly to include any "physical or mental impairment that substantially limits one or more life activities," such as (but not limited to), "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, *learning, reading, concentrating, thinking, communicating*, and working." 42 U.S.C. §§ 12102(1)(A), (2)(A) (emphasis added).

41.     Section 504 requires that Defendants ensure that all children with disabilities have meaningful access to public education. "Access" to public education for students with disabilities is understood broadly to refer both to physical accessibility of the school site and the students' ability to receive a benefit from public education.

42.     Under Section 504, Defendants must guarantee students with disabilities an "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. § 104.4(b)(2). Therefore, a federally funded education system may be found in violation of Section 504 where the entity's practices preclude students with disabilities from obtaining system benefits realized by students without disabilities. *See New Mexico Ass'n. for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 853 (10th Cir. 1982).

43.     Section 504's nondiscrimination mandates require Defendants to ensure access to appropriate educational settings for students with disabilities; establish and conduct identification, evaluation, and placement procedures for students with disabilities; and establish and implement procedural safeguards for any actions related to the

"identification, evaluation, or educational placement" of students with disabilities. 34 C.F.R. §§ 104.32, 104.34, 104.35, 104.36.

44.     Section 504 further requires Defendants to provide educational services to students with disabilities in the least restrictive environment possible and appropriate to meet the students' educational needs. 34 C.F.R. § 104.34.

45.     Defendants must tailor the services made available to "meet [the] individual educational needs" of students with disabilities "as adequately as the needs of" students without disabilities. 34 C.F.R. § 104.33(b)(1). Defendants are prohibited from offering only a predetermined universe of placement options.

46.     Section 504 prohibits retaliation against individuals who advocate on behalf of students with disabilities. *See* 34 C.F.R. § 104.61.

## III.     EXPERIENCES OF STUDENT PLAINTIFFS

47.     **Plaintiff Stephen C.** is a rising eighth grader who was enrolled in Havasupai Elementary School from Fall 2009.  The School placed him at Canyon State Academy as part of his Individualized Education Program (IEP) for the 2017-18 school year.

48.     Stephen C. has been denied access to a general-education curriculum and culturally relevant instruction at Havasupai Elementary School. At Havasupai Elementary School, he received no formal instruction in any content area other than math and English.

49.     Stephen C. has been subject to the effects of chronic staffing shortages at Havasupai Elementary School. Stephen C.'s teachers have repeatedly left during the middle of the school year. In particular, in fifth grade, Stephen C. was taught by a series of temporary teachers who stayed only two weeks at a time before a permanent teaching position was filled. Along with other sixth-grade students at the School, Stephen C. received much of his instruction during the 2016-2017 school year in the same classroom with seventh- and eighth-grade students.

50.     Stephen C. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips. Stephen C. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to

carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Stephen C. and his family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Stephen C. has also experienced a traumatic classroom-based arrest and referral to the juvenile justice system. As a result of his bad memories related to this arrest, Stephen C. feels disengaged from school and associates school with maltreatment. Stephen C. routinely sees other children act out of control in the classroom and on the playground. For example, it is common

knowledge that students drink in the school bathroom and students have been treated for ingesting cleaning supplies at the School.

51.     ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███ ████ ███ ████ █████ ███ ████ ████ ███ ██ ████
████████████████████████████████████████
████████████████████████████████████████
██████████

52.     As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Stephen C.'s ability to learn, read, think, concentrate, and/or communicate, Steven C. has been deprived of meaningful access to the benefits of a public education. Stephen C.'s challenges with emotional self-regulation, behavior, and concentration have resulted in his repeated exclusion from the classroom. Stephen C. has missed a significant amount of instruction time because he has been repeatedly sent home from school early, suspended, and referred to the juvenile justice system. Stephen C. has also struggled academically and has tremendous difficulty reading and writing.

53.     Plaintiff Stephen C. is a student who has been identified with Attention Deficit Hyperactive Disorder ("ADHD") and is eligible to receive special education services. In addition to needing special education services, Stephen C. requires positive behavior support and counseling services to address his behaviors and mental health needs.

54.     As a direct result of Defendants' failure to ensure that Havasupai Elementary School has a system in place to deliver special education, Stephen C. has not been provided with the specialized instruction, related services, and accommodations necessary for him to access the benefits of a public education.

55.     Because Havasupai Elementary School lacks the capacity to meet Plaintiff

Stephen C.'s behavioral and mental health needs, Stephen C. was repeatedly suspended and subjected to punitive school discipline for behavior that is a manifestation of his disability and is a result of the School's failure to deliver required special education and related services. Stephen C. was sent home from school early four days per week, on average, over a period of years. As a result, his grandfather and legal guardian, Frank C., estimates that he attended school only approximately half of the time for years. The School regularly failed to provide Stephen C.'s guardians with any written records of disciplinary action against Stephen C. or to assign him homework or remedial work when he was suspended or sent home early.

56.     Plaintiff Stephen C. has been subject to classroom-based arrest and prosecution by law enforcement in response to classroom behavior that is a manifestation of his disability and that is a result of the School's failure to deliver required special education and related services. In September 2016, eleven-year-old Stephen C. pulled the cord out of the back of a computer monitor in the classroom. The police were called to respond to the incident, and Stephen C. was indicted in federal court.

57.     On or about November 21, 2016, Havasupai Elementary School excluded Stephen C. from attending class as a result of behavior that was a manifestation of his disability. Stephen C. was subsequently placed on a "homebound" schedule, and did not receive any instruction for months, except for intermittent one-hour tutoring sessions about once per week. By the end of his sixth grade year, Stephen C. was permitted to attend only approximately one hour of classroom instruction at Havasupai Elementary School each school day.

58.     Although Stephen C. was entitled to counseling under his IEP, School did not provide him with the hours of counseling to which he was entitled in under his IEP. .

59.     Stephen C.'s guardians were not provided with basic information regarding Stephen C.'s school program at Havasupai Elementary School. For example, they were never provided with a student handbook. They have not been adequately informed of their rights as educational decisionmakers. Nor has the School taken important steps to support

their engagement in Stephen C.'s education and school.

60.     As a result of Defendants' failure to ensure access to basic education, special education, and related services, Plaintiff Stephen C. is far behind in all academic areas. Because Defendants have denied him access to basic education, Stephen C. will be in the eighth grade but can barely read and write. Although Stephen C.'s guardian, Frank C., strongly prefers to have Stephen C. live with his family in his community, Frank C. met with Stephen C.'s special education team from School and the School's special education team placed Stephen C. in a boarding school in Phoenix for the seventh grade.  Frank C. has applied to enroll Stephen C. at another BIE boarding school in Oklahoma for the 2018-2019 school year because he is concerned that the placement in Phoenix is not appropriate for Stephen C. If Stephen C. is not accepted to the BIE boarding school in Oklahoma, Frank C. believes his only option is to keep Stephen C. at his current boarding school because he also continues to have grave concerns about the education Stephen C. would receive if he returned to Havasupai Elementary School for the eighth grade.

61.     **Plaintiff Anna D.** is a rising fifth grader at an Arizona public school. She was enrolled in Havasupai Elementary School from Fall 2013 until her mother, Elsa D., felt like she had to place her at a public school for the fourth grade in order for Anna D. to have her educational needs met. However, Elsa D. would prefer that Anna D. live and receive her education in Supai.

62.     Anna D. has been denied access to a general-education curriculum and culturally relevant instruction at Havasupai Elementary School. She has received no formal instruction in any content area other than math and English.

63.     Anna D. has been subject to the effects of chronic staffing shortages at Havasupai Elementary School. Anna D.'s teachers have frequently left during the middle of the school year. In the first grade, Anna D.'s teacher switched twice during the school year. In the second grade, Anna D.'s teacher switched at least five times over the course of the year.

64.     Anna D. received her third grade instruction in a combined classroom. She

also received instruction in the first and second grades in a combined classroom.

65.     Anna D. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips. Although Anna D. has a keen interest in basketball and tribal-cultural activities, there were no opportunities for her to pursue these interests through the Havasupai Elementary School. She was never even been offered an opportunity to participate in a school-sponsored field trip. The only structured activity outside of the School that her mother, Elsa D. can recall was when Anna D. and her classmates picked up trash outside of the School for Earth Day.

66.     Elsa D., the mother of Anna D., has observed that students in the School are routinely out of class and are not properly supervised. Given the rate of adverse childhood experiences impacting students in Havasupai, Anna D. requires a public school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

67.     Elsa D., the mother of Anna D., has been appointed by the Havasupai Tribal Council to serve on the Council's Advisory School Board.

68.     **Plaintiff Olaf D.** is a rising kindergartner for the 2018-2019 school year.

69.     Elsa D., Olaf D's mother, has not received any information from the School as to when the first day of school begins or even who his teacher will be. Although instruction was scheduled to begin on August 2, 2018, upon information and belief, the School has already delayed the start date until August 6, 2018.  The School is not fully staffed and does not have a principal hired for the 2018-2019 school year.

70.     On information and belief, the school has not taken any meaningful steps to ensure Olaf D. is not subjected to the same educational deprivations his sister, Anna D., experienced as a student at Havasupai Elementary School.

71.     Olaf D. has already been subject to the effects of chronic staffing shortages at Havasupai Elementary School.  The start of his kindergarten year has already been delayed.

72.     On information and belief, the school has not taken any steps to ensure Olaf

D. is not subjected to the same extra-curricular deprivations his sister, Anna D., experienced as a student at Havasupai Elementary School.

73.     In order to prepare him for the kindergarten, Elsa D. has been working with Olaf D. three to four evenings a week after work so he learns his colors and numbers. Given the lack of curriculum, she is concerned he will lose what he learned in Head Start and fall behind academically.

74.     Given the experiences of her daughter, Anna D., Elsa D. is concerned about the impact other students' behaviors will have on her son. She is concerned about having to decide whether to send him to an Arizona public school given his young age. Her preference is to have Olaf D. live in Supai and have his educational needs met by the School.

75.     **Plaintiff Durell P.** recently completed the eighth grade outside of the community following the Havasupai Elementary School's decision to place him at a boarding school as part of his Individualized Education Program (IEP).   Prior to this placement by Havasupai Elementary School, Durell P. had attended  Havasupai Elementary School continuously since Fall 2008, except for a 45-day period when the School compelled him to enroll in a residential placement because the School could not meet his educational needs.

76.     Durell P. was denied access to a general-education curriculum and culturally relevant instruction when he attended the Havasupai Elementary School. Until the filing of the First Complaint in this matter, he received no formal instruction in any content area other than math and English. His lack of exposure to a full general education curriculum continues to adversely impact his learning.

77.     Durell P. has been subject to the effects of chronic staffing shortages at Havasupai Elementary School. Durell P. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

78.     Durell P. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities

necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Durell P. and his family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. As a young child, Plaintiff Durell P. experienced sexual abuse by a family member, who was prosecuted and is now incarcerated for another assault. ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ Durell P. was separated from his caregivers again in 2016, when he was compelled by Havasupai Elementary School personnel to attend a residential boarding school placement in Utah for 45 days. During the placement, Durell P. was subjected to repeated use of physical restraints and was unable to communicate with his family for long periods of time.

79. Fourteen-year-old Durell P. has experienced repeated harassment and assault by the Bureau of Indian Affairs (BIA) police in the community. For example, in 2015, when Durell P. was only eleven years old, BIA police pulled his hand behind his back, threw him against a wall, and frisked him. Shortly thereafter, BIA police threatened to arrest and imprison him for swearing. In 2016, Durell P. was afraid to leave his home for

weeks because BIA police officers threatened to file federal charges against him and imprison him.

80.     Durell P. has also experienced repeated traumatic experiences at Havasupai Elementary School, which have made him terrified of the school grounds and school personnel. Durell P. was assaulted by a Havasupai Elementary School teacher. When Durell P. was in the second/third class, he was placed in the fifth/sixth grade for instruction in reading; the fifth/sixth grade teacher slapped him with a ruler and slammed a book on his hand. Durell P. has witnessed other students being punched, scratched, and having their hair pulled by other students. Durell P. has experienced bullying by classmates. Durell P. has also experienced traumatic classroom-based arrest and referral to the juvenile justice system by the school principal. In response to one incident, Durell P. spent over a week at the Colorado River Indian Tribes detention facility. In addition, Plaintiff Durell P. was arrested and criminally prosecuted for assault for pushing a teacher in the classroom during the school day. That incident arose when a student in the combined classroom punctured Durell P.'s skin with a sharpened pencil several times and threatened to continue to stab Durell P. if he did not push the teacher. ████████████████



81.

82.

83.     As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Durell P.'s ability to learn, read, think, concentrate, and/or communicate, Durell P. has been deprived of meaningful access to the benefits of a public education. Durell P.'s challenges with emotional self-regulation, panic and anxiety, reactive behavior, and withdrawal and isolating behavior have resulted in his repeated physical exclusion from school. Durell P. has missed years of instruction time because he was repeatedly sent home from school early, suspended, expelled, and referred to the juvenile justice system. Although he experienced some academic gains after he resumed tutoring away from school grounds, he remained excluded from many of the benefits of

public education because he could not access the physical environment of the School as a result of complex trauma.

84.     Plaintiff Durell P. is a student identified with Oppositional Defiant Disorder, ADHD, and significant mental health needs and is eligible to receive special education services. In addition to needing special education services, Durell P. requires positive behavior support and counseling to address his behaviors and mental health needs.

85.     As a direct result of Defendants' failure to ensure that Havasupai Elementary School has a system in place to deliver special education, Durell P. has not been provided with the specialized instruction, related services, and accommodations necessary for him to access the benefits of a public education. Plaintiff Durell P. has also been deprived of education as a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

86.     Because Havasupai Elementary School lacked the capacity to meet Durell P.'s behavioral and mental health needs, Durell P. was repeatedly suspended and subjected to punitive school discipline for behavior that was a manifestation of his disability and was a result of the School's failure to deliver required special education and related services. From third grade, Plaintiff Durell P. was suspended by the Havasupai Elementary School so often that he attended School only approximately 20% of the time. On several occasions, including a four-month period in 2012 and a six-month period in 2013, the School excluded Durell P. from school altogether. The School did not provide Durell P. with any educational or related services during his disciplinary exclusions.

87.     Plaintiff Durell P. has been subject to classroom-based arrest and prosecution by law enforcement in response to classroom behavior that was a manifestation of his disability and was a result of the School's failure to deliver required special education and related services. For example, Plaintiff Durell P. was arrested and criminally prosecuted for assault for pushing a teacher in the classroom during the school day.

88.     Plaintiff Durell P. was on a homebound or restricted-hours schedule for over four years. He did not attend school full-time at Havasupai Elementary School after third grade because the School did not meet his behavioral and mental health needs

89.     Havasupai Elementary School has also compelled Durell P.'s family to choose between receiving the special education services to which they are entitled and staying in their community. In spring 2016, Billie P., the mother of Plaintiff Durell P., was told that Durell P. would not be permitted to return to Havasupai Elementary School unless Billie P. consented to placing Durell P. in a residential placement in Utah for 45 days in the spring and summer of 2016. Having been told that she had no other choice, Billie P. submitted, even though she strongly desired for Durell P. to remain with his family in his community. During the placement, Durell P. was subjected to repeated use of physical restraints and was unable to communicate with his family for long periods of time. Yet, after Durell P. completed his 45-day residential placement, Defendants did not live up to their end of the bargain. Havasupai Elementary School again informed Billie P. that the School lacked the capacity to meet Durell P.'s needs, and that the family must choose between a residential placement outside of the canyon or a homebound schedule during which Durell P. would receive only about five hours of instruction per week.

90.     During the 2016-2017 school year, Durell P. continued to be enrolled at Havasupai Elementary School and was restricted to a maximum of about six hours of instruction per week. Although he is also entitled to at least two hours of counseling per week, he did not receive those services until a counselor was hired and began providing him with counseling services in January 2017. The School had suggested decreasing his counseling hours in the future.

91.     During the 2017-2018 school year, Durell P. continued to be enrolled at Havasupai Elementary School and he continued to receive restricted hours of instruction for much of the school year.  Over the course of the year his hours at the school site were increased; however, he regularly left his classroom, wandering around or serving students lunch. Although he continued to require counseling services, the school counselor died in

December 2017 and was not promptly replaced. Durell P. was not provided with the counseling services he required.

92.    Durell P. was sexually assaulted multiple times by another student at the School during the Spring 2018 semester. The School did not have a counselor available for Durell P. and School staff dismissed the behavior as children "playing." In addition, although School staff, including then Principal, Jeff Williamson, knew about these incidents, Billie P. was not informed. Because Durell P. was not provided with counseling, or any other supports available to him to address the trauma, Durell P. began fighting with other students to protect himself, and his sister, Taylor P., while they attended School. In response, the School placed Durrell P. at a private boarding school in Phoenix.  Durell P. has told his mother, Billie P. that he has been beat up by other students and forcibly restrained at his new school.

93.    **Plaintiff Taylor P.** is a rising second grader and has been enrolled in Havasupai Elementary School since Fall 2016.

94.    Taylor P. has been denied access to a general-education curriculum and culturally relevant instruction at Havasupai Elementary School. She has received no formal instruction in any content area other than math and English.

95.    Taylor P. has been subject to the effects of chronic staffing shortages at Havasupai Elementary School. Taylor P.'s kindergarten class was combined with the first-grade class since the beginning of the school year. In addition, her teacher will not be returning to teach at Havasupai Elementary School for the upcoming school year.

96.    Taylor P. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and has never gone on a field trip.

97.    Seven-year-old Taylor P. has already endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Taylor P. and her

family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. Taylor P. has experienced sexual and physical assault on school grounds. Taylor P. was pushed against a wall and choked by another student while her kindergarten teacher was not watching. In her first semester at the School, Taylor P. was sexually assaulted and penetrated by another student on the playground. In neither situation was Taylor P.'s mother, Billie P., informed by the School of what had happened. ████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

98.     Although she will be a second grader, Taylor P. recently began sucking on a bottle and carrying a "rag doll" around like a baby, according to Billie P. Billie P. is concerned that this regression is a result of the experiences she had as a kindergartner and her anxiety about returning to the School.

99.     ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████

100.   As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Taylor P.'s ability to learn, read, think, concentrate, and/or communicate, Taylor P. has been deprived of meaningful access to the benefits of a public education.

101.   Given the rate of adverse childhood experiences impacting students in Havasupai, Taylor P. requires a public school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

102.   **Plaintiff Freddy P.** is a rising kindergarten student at Havasupai Elementary School.

103.   Although School was scheduled to begin on August 2, 2018, upon information and belief, School has already delayed the start date until August 6, 2018. School is not fully staffed and does not have a principal hired for the 2018-2019 school year.

104.   On information and belief, the school has not taken any meaningful steps to ensure Freddy P. is not subjected to the same educational deprivations his siblings, Durell P. and Taylor P., have experienced as students at Havasupai Elementary School.

105.   Freddie P. has already been subject to the effects of chronic staffing shortages at Havasupai Elementary School. The start of his kindergarten year has already been delayed.

106.   On information and belief, the school has not taken any steps to ensure Freddy P. is not subjected to the same extra-curricular deprivations his siblings, Durell P. and Taylor P., have experienced as students at Havasupai Elementary School.

107.    Freddy P. was identified as a child with a disability when he was enrolled in the Head Start program, and he received special education services for speech.

108.    Freddy P. struggles with completing activities and frequently will say "I can't do it" when presented with a task that should be within the abilities of a child of his age. For example, when asked to name a word that starts with "A," he could not name one. When his mother, Billie P., asked him to draw an acorn, he said he could not.  When she asked him to draw his brother, Durrell P., he drew a stick figure with the letter "x" in place of his eyes, and said "I made him dead because he's mean to me."

109.    Freddy P. and his family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity.  As a consequence of the unaddressed childhood adversity that he has experienced, Freddy P. experiences significant fear and anxiety that impacts his ability to concentrate and access education.

110.    Freddy P. sometimes uses aggressive language, and his mother, Billie P. is concerned that the teacher will not treat him well as a result.

111.    Given the experiences of Durell P. and Taylor P., Billie P. is concerned that Freddy P. will be in a combined classroom with older students and that he may be physically or sexually assaulted by the older students.

112.    As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Freddy P.'s ability to learn, read, think, concentrate, and/or communicate, Freddy P. will be deprived of meaningful access to the benefits of a public education.

113.    Given the rate of adverse childhood experiences impacting students in Havasupai, Freddy P. requires a public school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

114.   **Plaintiff Levi R.** is repeating the ninth grade despite completing the eighth grade at an Arizona public school. Levi R. attended Havasupai Elementary School from Fall 2007, when he was in kindergarten, through Fall 2016, the beginning of the eighth grade, except for a two-month period in 2014 when he was receiving online education services because the Havasupai Elementary School could not meet his educational needs.

115.   Levi R. was denied access to a general-education curriculum and culturally relevant instruction when he attended the Havasupai Elementary School. He has received no formal instruction in any content area other than math and English.

116.   Levi R. has been subject to the effects of chronic staffing shortages at Havasupai Elementary School.

117.   Levi R. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

118.   Levi R. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Levi R. and his family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. Levi R. has experienced physical assault on school grounds. When Levi R. was ten years old and in fifth grade, Levi R. was forcibly restrained. A teacher sat and lay on Levi R. while he repeatedly cried out and yelled, "I can't breathe. Get off of me, you're hurting me."[3] Levi was then handcuffed by BIA police in the classroom in front of his peers and marched across town in handcuffs. ███████████████

---

[3] Although the mother of Levi R., Laila R., filed a Suspected Child Abuse/Neglect (SCAN) report in response to the incident, BIE officials have failed to comply with internal agency procedures in investigating and responding to the SCAN report. *See* BIE, Suspected Child Abuse/Neglect (SCAN) & Employee Incident Reporting Protocol (rev. 2009), http://www.rrds.bie.edu/Reporting%20Protocol.pdf.



██████████████████████████████████████████████████
██████████

121.   As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Levi R.'s ability to learn, read, think, concentrate, and/or communicate, Levi R. has been deprived of meaningful access to the benefits of a public education. Levi R.'s challenges with avoidance, isolation, and concentration, as well as with self-regulation and behavior as documented by the School, have resulted in his repeated exclusion from the classroom. Levi R. has missed a significant amount of instruction time because he has been repeatedly sent home from school early, suspended, and expelled. Levi R. has also struggled academically because of his experiences at the School. Although Levi R. was far behind in all academic areas, he has worked hard to overcome his past experiences and to improve his academic performance since enrolling in Arizona public schools. However, he continues to be impacted by the School's failure to address his exposure to adversity and complex trauma and despite his considerable efforts he will have to repeat his first year of high school.

122.   Levi R. is a student identified with ADHD and a specific learning disability and is eligible to receive special education services. In addition to needing special education services, Levi R. requires positive behavior support and counseling services to address his behaviors and mental health needs.

123.   As a direct result of Defendants' failure to ensure that Havasupai Elementary School has a system in place to deliver special education, Levi R. was not provided with the specialized instruction, related services, and accommodations necessary for him to access the benefits of a public education. Levi R. was also deprived of education as a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

124.   Laila R., the mother of Plaintiff Levi R., was told repeatedly that there was

not sufficient staff to hold an IEP meeting.

125.   Because Havasupai Elementary School lacked the capacity to meet Levi R.'s behavioral and mental health needs, Levi R. was repeatedly suspended and subjected to punitive school discipline for behavior that was a manifestation of his disability and was a result of the School's failure to deliver required special education and related services. The School repeatedly called Laila R. to come and pick up Levi R. in the middle of the school day as a means of addressing his behaviors. The School expelled Levi R. due to behavior that was a manifestation of his disability in August 2013. During this incident, Levi R. was forcibly restrained when a teacher sat and lay on Levi R. while he repeatedly cried out and yelled, "I can't breathe. Get off of me, you're hurting me."

126.   Plaintiff Levi R. was placed on a restricted-hours schedule for three years following the expulsion. From September 2013 to January 2014, he was permitted to attend school only from 3:15 to 4:15 p.m. on Monday, Tuesday, and Wednesday. And, because Levi R. complied with those excessive scheduling restrictions, the Havasupai Elementary School informed his mother that Levi R. had been unenrolled for lack of attendance. From January 2014 through the remainder of the school year, Levi R. was permitted to attend school for only a half day on Monday, Tuesday, and Wednesday. This pattern continued for years. The Havasupai Elementary School later unilaterally placed Levi R. on a shortened school-day schedule in which he was permitted to attend school for only half of the school day in October 2014 and again in December 2015. Although he is also entitled to counseling under his IEP, he received no counseling because the Havasupai Elementary School had not hired a counselor.

127.   Despite years of advocacy by his mother, Laila R., Levi R. is behind in many academic areas, particularly in the area of reading comprehension. For example, in the fifth grade, Levi R. tested at a second-grade reading level.

128.   In September 2016, Laila R. was compelled to move her family from Havasupai in part to place both her sons Levi R. and Leo R. at a public school where their needs would be met, despite the fact that Levi R. was then eligible to attend Havasupai

Elementary School.

129.   **Plaintiff Leo R**. recently completed the eleventh grade at an Arizona public high school. Leo R. attended Havasupai Elementary School full time from kindergarten in Fall 2005 through his graduation from eighth grade in Spring 2015.

130.   Leo R. was denied access to a general-education curriculum and culturally relevant instruction when he attended Havasupai Elementary School. He received no formal instruction in any content area other than math and English.

131.   Leo R. was subject to the effects of chronic staffing shortages at Havasupai Elementary School.

132.   Leo R. was denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

133.   Leo R. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Leo R. and his family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. ■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■

134.  ███████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█ ███████ █ ███████ █ ████ █████ ████████ ██████ █████ ███ ██
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████

135.    Leo R. is currently enrolled in an Arizona public high school. Because Leo R. was denied access to basic education at Havasupai Elementary School, in his first year in public high school, in ninth grade, he struggled academically, failing multiple classes and passing others with D's. As a result, Leo R. was required to take credit recovery classes in order to advance to the tenth grade. However, Leo R. continued to struggle during his tenth grade year. Leo R. failed several classes this year, and has been retained in the tenth grade for the 2017-2018 school year. Leo R.'s mother is concerned that Leo R. will not continue with education because he is being retained and feels like quitting school.

136.    Given the rate of adverse childhood experiences impacting students in Havasupai, Leo R. required a public elementary school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

137.    **Plaintiff Jenny A**. is a rising eleventh grader. She recently completed the tenth grade at a BIE boarding school in Oklahoma. She attended Havasupai Elementary School from kindergarten in Fall 2006 through the sixth grade in Spring 2014.

138.    Jenny A. was denied access to a general-education curriculum and culturally relevant instruction when she attended Havasupai Elementary School. She received no formal instruction in any content area other than math and English.

139.    Jenny A. was subject to the effects of chronic staffing shortages at Havasupai Elementary School.

35

140.   Jenny A. was denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

141.   Jenny A. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Jenny A. and her family have experienced historical trauma, including family experience with boarding schools, which has adversely impacted the Havasupai community and contributed to present day adversity. When Jenny A. attended Havasupai Elementary School, she was subjected to significant bullying by other students. She was also afraid of running into intoxicated adults in the community and on her way to school. She frequently witnessed intoxicated adults engaging in frightening behaviors such as verbal arguments or physical altercations. Jenny A. has experienced significant family disruption necessitated by her parents' commitment to obtain adequate education for her, as well as by her father's employment. As a condition of his employment as a wildlife ranger, Jenny A.'s father works both in and out of the canyon. When he is deployed out of the canyon, he sleeps in a trailer. He is unable to see the children every day, even when the children are home. It is difficult for Jenny A.'s parents to be involved in her education now that she is in boarding school. All members of the family grieve that they are not able to live together as a family.

142.   As a consequence of the unaddressed childhood adversity that she has experienced, Jenny A. has significant mental health needs which impact her ability to learn, read, think, concentrate, and/or communicate. As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Jenny A.'s ability to learn, read, think, concentrate, and/or communicate, Jenny A.'s has been deprived of meaningful access to the benefits of a public education.

143.   Plaintiff Jenny A. is a student identified with significant mental health needs

36

and is eligible to receive special education services as a student with an emotional disturbance ("ED"). In addition to needing special education services, Jenny A. requires positive behavior support and counseling to address her behaviors and mental health needs.

144.    As a direct result of Defendants' failure to ensure that Havasupai Elementary School has a system in place to deliver special education, Jenny A. has not been provided with the specialized instruction, related services, and accommodations necessary for her to access the benefits of a public education. Plaintiff Jenny A. has also been deprived of education as a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

145.    Because Havasupai Elementary School lacked the capacity to meet Jenny A.'s behavioral and mental health needs, Jenny A. was repeatedly suspended and subjected to punitive school discipline for behavior that was a manifestation of her disability and was a result of the School's failure to deliver required special education and related services. When Jenny A. attended Havasupai Elementary School, she was sent home early most days, without homework or remedial work to make up for lost instructional time.

146.    Jasmine A., Jenny A.'s mother, was compelled to send Jenny A. away from her family and community to a boarding school where her educational needs would be met, even though Jenny A. was eligible to attend school in her community at Havasupai Elementary School.

147.    **Plaintiff Jeremy A.** is a rising ninth grader. He recently completed the eighth grade at a BIE boarding school in Oklahoma. He attended Havasupai Elementary School from kindergarten in Fall 2009 through the fifth grade in Spring 2015.

148.    Jeremy A. was denied access to a general-education curriculum and culturally relevant instruction when he attended Havasupai Elementary School. He received no formal instruction in any content area other than math and English.

149.    Jeremy A. was subject to the effects of chronic staffing shortages at

Havasupai Elementary School.

150.   Jeremy A. was denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

151.   Given the rate of adverse childhood experiences impacting students in Havasupai, Jeremy A. required a public elementary school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

152.   Jasmine A., Jeremy A.'s mother, was compelled to send Jeremy A. away from his family and community to a boarding school where his educational needs would be met, even though Jeremy A. was eligible and remains eligible to attend school in his community at Havasupai Elementary School.

153.   **Plaintiff Jordan A.** is a rising sixth grader. He recently completed the fifth grade at a BIE boarding school in Oklahoma. He attended Havasupai Elementary School from kindergarten in Fall 2012 through the third grade in Spring 2016.

154.   Jordan A. was denied access to a general-education curriculum and culturally relevant instruction when he attended Havasupai Elementary School. He received no formal instruction in any content area other than math and English.

155.   Jordan A. was subject to the effects of chronic staffing shortages at Havasupai Elementary School.

156.   Jordan A. was denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

157.   Jordan A. has endured multiple adverse childhood experiences, which negatively affect child development and impact the ability to carry out basic life activities necessary to access education, including learning, thinking, reading, concentrating, and communicating. This adversity is not limited to discrete incidents, but consists of long-term, repeated, ongoing, and overlapping stressors. Jordan A. and his family have experienced historical trauma, including family experience with boarding schools, which

has adversely impacted the Havasupai community and contributed to present day adversity. Jordan A. was exposed to bullying when he attended Havasupai Elementary School. He was afraid of running into intoxicated adults in the community and on his way to school. He frequently witnessed intoxicated adults engaging in frightening behaviors such as verbal arguments or physical altercations. Jordan A. has experienced significant family disruption necessitated by his parents' commitment to obtain adequate education for him, as well as by his father's employment. As a condition of his employment as a wildlife ranger, Jordan A.'s father works both in and out of the canyon. When he is deployed out of the canyon, he sleeps in a trailer. He is unable to see the children every day, even when the children are home. It is difficult for Jordan A.'s parents to be involved in his education now that he is in boarding school. All members of the family grieve that they are not able to live together as a family.

158. As a consequence of the unaddressed childhood adversity that he has experienced, Jordan A. has difficulty learning, reading thinking, concentrating, and/or communicating. As a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary to address the impact of adversity and complex trauma on Jordan A.'s ability to learn, read, think, concentrate, and/or communicate, Jordan A.'s has been deprived of meaningful access to the benefits of a public education.

159. Plaintiff Jordan A. is a student identified with a specific learning disability ("SLD"), and is eligible to receive special education services. In addition to needing special education services, Jordan A. requires additional supports to address his SLD.

160. As a direct result of Defendants' failure to ensure that Havasupai Elementary School has a system in place to deliver special education, Jordan A. has not been provided with the specialized instruction, related services, and accommodations necessary for him to access the benefits of a public education. Jordan A. was also deprived of education as a result of Defendants' failure to establish a system to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of

a public education is affected by exposure to adversity and complex trauma.

161.   Jasmine A., Jordan A.'s mother, was compelled to send Jordan A. away from his family and community to a boarding school where his educational needs would be met, even though Jordan A. was eligible and remains eligible to attend school in his community at Havasupai Elementary School.

162.   **Plaintiff Moana L.** is a rising first grader. She attended kindergarten at the Havasupai Elementary School for the 2017-2018 school year.

163.   Moana L. has been denied access to a general-education curriculum and culturally relevant instruction at Havasupai Elementary School. She received no formal instruction in any content area other than math and English.

164.   Moana L. is subject to the effects of chronic staffing shortages at Havasupai Elementary School.

165.   Moana L. has been denied access to adequate textbooks, a functioning library, extracurricular activities, and field trips.

166.   Despite completing kindergarten, Moana L. is unable to read. She can identify only three letters of the alphabet, she does not know even simple words, and she cannot write her own name.

167.   Moana L. requires eyeglasses because of a visual impairment and is deaf in one ear. She has never been identified by Havasupai Elementary School as a child with a disability or even evaluated for special education services for either impairment.

168.   During her kindergarten year at Havasupai Elementary School, Moana L. was bullied and verbally taunted extensively by other students at school.  Moana L. cries at night as a result of the bullying and experiences nightmares so severe that they lead her to kick her grandmother, Monica L., in her sleep. Moana L. has cried out during these nightmares "they're coming, they're coming, they're going to hit me." Monica L. has to wake Moana L. to end the nightmares.

169.   While volunteering at the School during the 2017-2018 school year, Monica L. observed students cursing, standing on chairs, running around, leaving the classroom,

and throwing rocks at each other and teachers on the playground. She observed one student pushing and hitting other children waiting in the lunch line.

170.    Given her own traumatic experiences and the overall rate of adverse childhood experiences impacting students in Havasupai, Moana L. requires a public elementary school with a system that is responsive to complex trauma and able to deliver specialized instruction, related services, and accommodations necessary for students whose ability to access the benefits of a public education is affected by exposure to adversity and complex trauma.

## IV.    ADDITIONAL FACTS COMMON TO ALL STUDENT PLAINTIFFS

### A.    Failure To Provide Required Instruction

171.    Defendants do not provide instruction in all subjects or content areas, as required by federal regulations. Nor do Defendants provide required culturally relevant instruction.

172.    No comprehensive program of multicultural and multilingual education—including the creation and use of culturally appropriate instructional materials, methodologies, and assessments—exists at the School. Defendants have not engaged in collaboration or consultation with Havasupai families, community members, or tribal officials to enact such culturally relevant language programs.

### B.    Failure To Adequately Staff the School

173.    Defendants have consistently failed to ensure that Havasupai Elementary School is adequately staffed such that it can effectively deliver basic education. Teacher vacancies have been covered by adults who lack teaching credentials—including the school janitor and the school secretary—by temporary BIE instructors who rotate through the position on two-week details, and by combining students from multiple grade levels into a single classroom. Instead of certified teachers or trained aides, older children at the School sometimes help "teach" in these classrooms.

174.    For example, the principal position has been vacant at the beginning of every school year since at least Fall 2014. The 2016-2017 school year also began with the

counselor and first-grade teacher positions vacant.

175.   Insufficient staffing has repeatedly caused the School to shut down altogether. On multiple occasions, the School has been so severely understaffed that it has been unable to operate. For instance, although the 2015-2016 academic year was scheduled to begin on August 25, 2015, students did not begin attending school until September 15 due to a severe staffing shortage. For the remainder of the school year, most classrooms were covered by temporary BIE instructors who rotated through on two-week details.

176.   Around February 2017, a teacher who taught the middle-school grades was terminated by the BIE, while his students were subject to a series of temporary replacements in the middle of the school year.

177.   Many teacher terminations and other departures followed during the 2017-2018 school year. Two general-education teachers left the school in November 2017 and February 2018, the full-time counselor passed away in December 2017, and the special-education aide left the school in December 2017 and was temporarily replaced by the cook, who lacked any classroom or special-education experience and who left the school for medical reasons on March 7, 2018. The vacated "cook" position was filled by the person who had previously served as the janitor, and he had no food-handling license or experience. At one point, a single teacher was assigned to cover all students in grades four through eight. This teacher had to travel back and forth between two different physical classrooms during the school day, leaving students unsupervised in the other room.

178.   These staffing shortfalls left classrooms as chaotic and unpredictable environments in which learning could not take place. Students were regularly permitted to leave their classrooms and wander the school grounds unsupervised. The lack of supervision also permitted students to engage in unsafe behaviors, including bullying and physical and sexual assault, without appropriate intervention or response from the school. To take just one example, in February and March 2018, Plaintiff Durrell P. was sexually assaulted numerous times by other students on school grounds during the school day, causing him extreme emotional distress. The school failed to timely notify his mother,

Billie P., of these incidents and took no action to provide support to Durrell P. or prevent these incidents from recurring in the future.

179.   In addition, for years, Havasupai Elementary School has often closed after lunch on specified Fridays, depriving students of more than a half-day of instruction. On these days, the School permits teachers and staff to leave Havasu Canyon early for the weekend. Students are sent home because the School has insufficient numbers of teachers to operate. The learning time lost as a result of these closures alone adds up to more than two weeks of instruction per year.

180.   The School is also subject to repeated closures or early dismissals with little or no notice to families. During most of November 2016, school was only in session for half-days or was canceled altogether. And on May 8, 2017, families received notice that school would end about two weeks early and students would be released early every day for the remaining month of the school year.

181.   The BIE has exacerbated its failure to hire an adequate number of teachers in the first instance by creating conditions for high staff turnover.

182.   Even when Havasupai Elementary School is considered "fully staffed," multiple grade levels are combined into a single classroom. However, teachers are not provided the training or support necessary to serve such combined classrooms.

183.   The 2018-2019 school year reportedly was scheduled to begin on August 2, 2018, but that day has already been pushed back to August 6, 2018. The School has not hired a permanent Principal. It is unclear how many teachers the School will have to begin the 2018-2019 school year.

## C.   Lack of Basic Learning Materials and Activities

184.   Defendants have failed to meet the most basic of the federal regulations to ensure that Havasupai students have access to the instructional materials and activities that are both necessary for learning and required by BIE regulation.

185.   Havasupai Elementary School does not have sufficient numbers of textbooks, let alone a community-based review committee, to ensure that textbooks and other

instructional materials are appropriate.

186.   Sufficient learning resources and technology are not available at the Havasupai Elementary School to support student education, such as the presence of a functioning school library or media center. A dedicated librarian has not been assigned to the Havasupai Elementary School.

187.   Similarly, Havasupai students have been denied access to an "integral part of the overall education program" through Defendants' failure to provide access to any extracurricular activities. 25 C.F.R. § 36.43. There are no sports teams, student clubs, or art, music, or dance groups.

### D.   Exclusion of the Community from School Decisionmaking

188.   Defendants have repeatedly denied Havasupai community members the requisite opportunities to participate in important areas of school decisionmaking, including the development of culturally relevant curricula, the review of textbooks and instructional materials, and the evaluation of educational needs and goals.

189.   Defendants have not adequately informed parents and community members of school achievement results or provided access to a written handbook of current school policies. Defendants do not conduct outreach sufficient to secure family or community involvement in the schools. The Havasupai Elementary School does not hold culturally relevant events or community engagement activities, such as plays, dances, or sporting events. Parents are rarely invited onto school grounds except to pick up a student who has been suspended or otherwise subject to exclusionary discipline.

190.   Defendants have not only failed to engage the Havasupai community in school decision making. They have actively imposed barriers to such participation and discouraged advocacy to improve the School and secure student rights by engaging in a pattern of retaliation against individuals who have advocated to improve the education for Havasupai students.

191.   The Havasupai Advisory School Board[4] is appointed by the Havasupai Tribal

---

[4] Because the School is administered and operated by the BIE, the Advisory School Board

Council and has played an important advisory role in overseeing the activities of the Havasupai Elementary School and actively seeking to improve the education provided to Havasupai students. But Defendants have effectively disbanded the Advisory School Board by demanding that all members obtain burdensome and retaliatory FBI background checks before the Board may meet, even though it does not meet at the School when children are present. Advisory School Board members are prohibited from entering school grounds and otherwise participating in the work of the Advisory School Board until the background checks, which have taken many months to process, have cleared. No other community member is prohibited from entering school grounds absent a background check. The Advisory School Board has only begun meeting regularly in 2018 although Defendants still have not completed a background check for at least one member

192.    In addition, community leaders who advocated on behalf of families have been barred from school grounds and prohibited from participating in Individualized Education Program ("IEP") meetings.

## V.    ADDITIONAL FACTS COMMON TO STUDENT PLAINTIFFS IMPACTED BY CHILDHOOD ADVERSITY

193.    As a result of centuries of U.S. government policies that have oppressed and discriminated against Native communities, Student Plaintiffs Impacted by Childhood Adversity—like many Havasupai youth and Native youth across the nation—are exposed to childhood adversity that, absent appropriate intervention and support, has denied them the full opportunity to learn and receive the benefits of a public education.

### A.    Student Plaintiffs' Exposure to Childhood Adversity and Trauma

194.    As members of the Havasupai tribe, Student Plaintiffs Impacted by Childhood Adversity and their families bear the burden of generations of historical trauma stemming from a legacy of chronic discrimination—forced relocations, loss of homes, families, and culture. In particular, the historical and widespread consignment of Native

lacks authority to establish policies or make binding decisions for the School.

American children to boarding schools constituted a form of forcible assimilation that was designed to stamp out a child's tribal affiliations and cultural identity at an early age.

195.   Native children are disproportionately exposed to the chronic effects of unaddressed and unresolved historical trauma and adversity in their communities. Havasupai children are exposed to significant childhood adversity and trauma in their community. For example: 1) a disproportionate rate of Havasupai children live in poverty; 2) over 42% of all households with children in Supai are led by single mothers; 3) alcohol abuse rates are higher for Native youth than for other racial groups; and 4) Native children are more likely to experience violent crimes, have an incarcerated parent, and be subject to disciplinary exclusion, including involvement in the juvenile justice system.

196.   Student Plaintiffs Impacted by Childhood Adversity have been exposed to multiple adverse childhood experiences, including, but not limited to, involvement in the juvenile justice and child welfare systems; family disruption, including separation from caregivers due to boarding school placements; historical trauma, including parent experience with boarding schools; physical and sexual violence, including exposure to restraints in the school setting; alcohol and substance abuse in the community; denial of access to education; and poverty. *See* Section III, *supra*.

### B.   The Impact of Childhood Adversity and Trauma on Child Development and the Ability To Learn

197.   Complex trauma stems from an individual child's exposure to multiple persistent sources of violence, loss, and other adverse childhood experiences ("ACEs"), and describes children's exposure to these events and the impact of this exposure.[5] Unaddressed exposure to trauma can impair a child's ability to learn. The cumulative effect of trauma affects the core processing abilities of the brain in areas critical to learning, such as thinking, reading, concentrating, communicating, and regulating emotions.

---

[5] The terms "trauma" and "complex trauma" are often used interchangeably in this complaint. Although a child can be profoundly affected by one traumatic experience, Student Plaintiffs Impacted by Childhood Adversity have all experienced complex trauma, which is the subject of most of the academic literature cited.

198.    Exposure to trauma can lead to palpable, physiological harm to a young person's developing brain. Trauma is associated with mental health conditions such as somatoform disorders, major depression, schizophrenia, and substance abuse and dependence. In addition, exposure to traumatic stressors can cause developmental disruption and consequent educational loss for children, even if they do not meet the threshold for a diagnosable mental health disorder.

199.    Trauma impairs a child's ability to learn when the resultant changes in the brain induce behaviors that reflect an inability to emotionally self-regulate—including aggression, disproportionate reactivity, impulsivity, distractibility, or withdrawal and avoidance. These trauma-induced behaviors disrupt the learning environment and frequently lead to exclusionary school-discipline measures or absence from school.

200.    Unaddressed trauma affects a student's ability to participate and succeed in school. Children exposed to violence demonstrate significantly lower reading ability and grade-point averages, increased absences from school, and overall lower rates of high school graduation. Children exposed to Adverse Childhood Experiences ("ACEs")[6] are subject to an escalating array of detrimental educational impacts. Exposure to two or more such traumas, for example, makes a student 2.67 times more likely to repeat a grade or become disengaged with school.[7] Exposure to three or more traumas makes a student 4 times more likely to experience academic failure, and 5 times more likely to have serious attendance problems.[8] Students who have witnessed violence, in particular, meet state

---

[6] ACEs are "inherently disruptive experiences in childhood that produce significant and potentially damaging level[s] of stress and associated physical changes." Christopher Blodgett, *Adopting ACES Screening and Assessment in Child Servicing Systems* 1 (working paper, July 2012), https://del-public-files.s3-us-west-2.amazonaws.com/Complex-Trauma-Research-ACE-Screening-and-Assessment-in-Child-Serving-Systems-7-12-final.pdf.

[7] Christina D. Bethel et al., Adverse Childhood Experiences: Assessing the Impact on Health and School Engagement and the Mitigating Role of Resilience, 33:12 Health Affairs 2106, 2111 (2014).

[8] Christopher Blodgett, No School Alone: How *Community Risks and Assets Contribute to School and Youth Success, Report to the WA State Office of Financial Management in response to Substitute House Bill 2739* at 25 (March 2015), http://www.healthygen.org/sites/default/files/No%20School%20Alone_%20How%20community%20risks%20and%20assets%20contribute%20to%20school%20and%20youth%20s

academic-performance standards only half as often as peers who have not.[9] As a result, unaddressed trauma is a powerful driver of academic failure.

**C.** **Defendants' Failure To Provide Meaningful Access to Education to Student Plaintiffs Impacted by Childhood Adversity and Trauma**

201.    Particularly in schools like Havasupai Elementary School that serve populations of students who disproportionately have been impacted by adversity and/or have significant mental health needs, comprehensive school-wide practices are required to address childhood trauma and to create an environment in which students impacted by childhood adversity are able to learn. Such interventions can effectively address the disabling impact of adverse childhood experiences and give students the meaningful access to the public education to which they are entitled.

202.    The key components of these school-wide practices include (1) training educators to recognize, understand, and proactively address the effects of complex trauma and childhood adversity, in part through building children's self-regulation and social-emotional learning skills; (2) developing restorative practices that build healthy relationships, peacefully resolve conflicts, and avoid re-traumatizing students through punitive discipline; (3) ensuring the availability of consistent mental health support to meet student needs, and (4) adopting practices and interventions that are responsive to Havasupai cultural beliefs and traditions and are created in partnership with community members.

203.    Together, these school-wide practices create a safe, consistent, and supportive learning environment that allows students impacted by childhood adversity to learn. Schools that have put such practices in place have shown impressive improvements in student outcomes, with those children receiving appropriate intervention and receiving higher grades and demonstrating better behavior and concentration. Research has also indicated that appropriate remedial methods and supports can help mitigate the effects of

---

uccess.pdf.

[9] Christopher C. Henrich et al., *The Association of Community Violence Exposure with Middle-School Achievement: A Prospective Study*, 25 J. APPL. DEV. PSYCHOL. 327, 343 (2004).

ACEs.[10] With this support, Student Plaintiffs Impacted by Childhood Adversity can benefit from a system of education that allows them to learn effectively in the classroom and meaningfully access a public education.

204.    By failing to recognize and address the impact of trauma on students affected by adversity and failing to implement trauma-informed practices, Defendants have failed to ensure that Student Plaintiffs Impacted by Childhood Adversity are provided meaningful access to public education at Havasupai Elementary School. Havasupai Elementary School has no culturally responsive programming to address the impact of childhood adversity and promote wellness. It does not train or sensitize teachers or administrative personnel to recognize, understand, and address the complex effects of childhood adversity and trauma in children. Without such training, school staff are unable to appropriately identify students in need of support, notify their families, or provide adequate interventions that may reduce the impact of trauma and other mental health challenges on learning and student outcomes. Moreover, culturally sensitive mental health and support services are either entirely unavailable or grossly insufficient to meet student needs.

205.    Instead of receiving these and other appropriate resources, Student Plaintiffs Impacted by Childhood Adversity are subjected to punitive and counter-productive suspensions, expulsions, and referrals to law enforcement that push them out of school, off the path to graduation, and into the criminal justice system.

206.    NADLC's advocacy demonstrates that services and supports that are limited only to individual students are not sufficient to address the impacts of childhood adversity on its clients and that school-wide practices are required to address childhood trauma.

## VI.    ADDITIONAL FACTS COMMON TO ALL STUDENT PLAINTIFFS WITH DISABILITIES

207.    Defendants have failed to provide basic education to all students at Havasupai Elementary School, but students with disabilities face even more formidable

---

[10] Bethell, *supra* note 6, at 2112.

barriers to accessing public education. Plaintiffs with disabilities have been denied access to even the paltry general education that is provided at Havasupai Elementary School.

208.    The need for a well-functioning system of special education to address the needs of students with disabilities is critical at Havasupai Elementary School, which serves a high proportion of students with disabilities. The School reported to the Advisory School Board in 2014 that approximately half of the students in the School had been identified as students with disabilities.

209.    Havasupai Elementary School has no system for identifying those students who have disabilities or for ensuring that such students receive the specialized instruction, related services, and accommodations necessary for them to access a general education curriculum. Instead, students with disabilities are often excluded from school and subjected to punitive discipline and police prosecution on the basis of their disabilities.

210.    Havasupai Elementary School also has no system for meeting the procedural requirements of Section 504 and its implementing regulations, including identifying and assessing students with disabilities and providing notice and procedural safeguards to families.

211.    Staffing at Havasupai Elementary School is insufficient to provide the specialized instruction and related services required by federal law. Havasupai Elementary School does not employ, and has not employed at any time in recent years, sufficient numbers of the following personnel necessary to adequately provide special education services to students with disabilities: highly qualified special education teachers, mental health providers, occupational therapists, physical therapists, and speech therapists. At no time in recent years has the School employed sufficient numbers of paraprofessionals or support staff to meet the needs of students with disabilities. The staffing of Havasupai Elementary School is so inadequate that the School cannot even hold IEP meetings on a timely basis.

212.    The failure to provide federally mandated special-education services has had devastating consequences for students with disabilities. Even when such students are

present in the classroom, Defendants' failure to provide required specialized instruction and related services denies them meaningful access to general education. In addition, students with disabilities are routinely physically excluded from the School in various ways, including:

- **Restricted Hours Schedules:** Havasupai Elementary School students with disabilities are routinely denied a full day of public instruction. Because the School lacks the capacity to meet student needs by providing adequate specialized instruction or related services, students with disabilities are relegated to "homebound" placements or placed on restricted-hours schedules under which students receive only 3-6 hours of instruction per week.

- **Coercion to Leave Community:** Havasupai Elementary School students with disabilities are frequently compelled to choose between receiving the special education services to which they are entitled and staying in their community. Havasupai families who move outside the canyon in order to obtain services often endure significant financial hardships upon leaving their jobs and other sources of support on the reservation.

- **Exclusionary Discipline:** Instead of receiving the specialized instruction and related services to which they are entitled, and as a consequence of not receiving these services, Havasupai students with disabilities are routinely and repeatedly removed from the classroom and sent to the principal's office, suspended, or expelled in response to conduct that is a manifestation of the student's disability. Defendants fail to maintain accurate records of disciplinary action against students with disabilities, in clear violation of federal regulations implementing Section 504.

- **Referral to Law Enforcement:** Havasupai students with disabilities are frequently referred to law enforcement and even prosecuted in federal court for minor misbehavior that is a manifestation of their disabilities. Children miss weeks of instruction while awaiting hearings in a tribal court because those hearings are held only once per month. There has also been a pervasive BIA police presence on school grounds, where BIA officers frequently escorted home children who had been subject to exclusionary discipline.

213.   Havasupai Elementary School does not have the capacity to meet its obligation to identify and provide comprehensive assessments of students with disabilities. The School makes matters even more challenging for parents by failing to provide information required by federal statutes and regulations, including notice of procedural safeguards and information necessary to understand disabilities, participate in planning, and access educational records. The School also does not have an adequate recordkeeping system in place.

214.   Parents and community members who do assert the rights of students with

disabilities are often retaliated against by the School.

215.   Because onset of disabilities can occur at any time, all student Plaintiffs require an adequate system to identify and assess the needs of students with disabilities.

## VII.   ADVERSE CONSEQUENCES OF DEFENDANTS' FAILURE TO ENSURE ACCESS TO EDUCATION AT HAVASUPAI ELEMENTARY SCHOOL

216.   Defendants' legal violations have had devastating consequences for the educational achievement and life chances of Havasupai students. The federal government's failure to invest in and provide for Native education and wellness in the face of trauma has resulted in stark educational deprivations for Native youth in all educational settings.

217.   Native children attending BIE schools lag significantly behind their peers attending traditional public schools. But students who attend Havasupai Elementary School are among the most disadvantaged and furthest behind, even among students attending BIE-funded and -operated schools. Havasupai students perform many years below grade-level, even in the limited content areas such as reading, writing, and mathematics in which curriculum is provided.

218.   Although the BIE has failed to adequately collect and disseminate publicly available performance data for the School, available BIE data shows that in the 2012-2013 school year, Havasupai Elementary School students performed at the **1st percentile in reading and 3rd percentile in math**, based on a median percentile rank of 1 to 100. Moreover, BIE data reflects that Havasupai Elementary School students experienced a *large negative growth index* of **-.72** and **-.71** in reading and math, respectively, meaning that the academic progress made by individual Havasupai Elementary School students as they continued to attend the School was approximately 0.7 standard deviations lower than expected.[11] This performance placed the School dead last in both reading and math achievement out of nearly 60 BIE schools surveyed. Moreover, BIE data from two

---

[11] Northwest Education Evaluation Association, *BIE Report on Student Achievement and Growth: 2009-10 to 2012-13* at 56, 58 (2014), http://www.bie.edu/cs/groups/webteam/documents/document/idc1-028067.pdf.

consecutive school years running from 2011 through 2013 indicate that only about 15% of Havasupai students achieved grade-level proficiency in reading, and that not a single one achieved grade-level proficiency in math.[12]

219.   As a result, Havasupai students arrive at the secondary-school level unprepared for high school-level work and years behind their peers who were provided appropriate education in the elementary and middle school years.

220.   Because no high school instruction is available for Havasupai students in the community, students who have completed eighth grade must apply to BIE high schools—most of which are boarding schools with entrance requirements—or seek transfers to public schools outside of the canyon. Because of the substandard education provided at Havasupai Elementary School, students have repeatedly been unable to meet coursework and credit requirements or the basic proficiency standards necessary to attend BIE high schools.

221.   Havasupai Elementary School students who are admitted to a secondary school typically struggle academically because they lack basic elementary education. As a result, it is estimated that fewer than 20% of Havasupai students eventually graduate from high school. Families in the Havasupai community fear that children attending Havasupai Elementary School will not be able to gain admission to a secondary school or that they will not successfully complete high school as a result of the educational deprivations at Havasupai Elementary School. As a result, multiple families with young children in kindergarten through eighth grade who otherwise would have attended Havasupai Elementary School have been compelled to leave their community in order to provide their children meaningful access to education.

## VIII.   THE FEDERAL GOVERNMENT'S DELIBERATE INDIFFERENCE TO STUDENT PLAINTIFFS' RIGHTS

222.   For decades, the federal government has stood witness to profound disparities in the educational resources and outcomes of Native students. Numerous current and

---

[12] BIE Division of Performance and Accountability, *Annual Report: Havasupai Elementary School* at 2, 3 (2013), http://www.bie.edu/cs/groups/xbie/documents/text/idc1-026335.pdf.

former DOI and BIE leaders have acknowledged the failures in tribal education. They have also been made specifically aware of the problems at Havasupai Elementary School, yet have failed to act meaningfully to correct them.

223.   The BIE's longstanding failure to provide Native students with adequate educational opportunities has been repeatedly recognized by federal officials in the White House, BIE, and Department of Education. The federal government has likewise repeatedly recognized the harmful impacts of complex trauma on Native youth and the critical need to provide wellness and mental health services to address trauma in BIE schools.

224.   Defendant BIE acknowledged only last year, "[t]he DOI has a longstanding and troubling history of failing to provide a high quality education to American Indian students in BIE-funded schools," citing the very deprivations at issue in this complaint, including "failing schools," "failure to include tribal nations in the decision-making process," and "teachers and principal shortages."[13]

225.   The Government Accountability Office ("GAO") concluded in 2015 that BIE schools were not complying with binding special education regulations.[14] Federal reports have repeatedly acknowledged that "American Indians and Alaska Natives continue to have worse educational outcomes than the general population by nearly all measures,"[15] and that Native students attending BIE schools perform even more poorly than their peers in public schools.[16]

---

[13]   BIE Study Group: *Blueprint for Reform, BIE Progress Report 2015* at 3, https://www.bie.edu/cs/groups/xbie/documents/document/idc1-030931.pdf (2015); BIE, *Synopsis of the Reprogramming*, https://www.bie.edu/BFRI/index.htm (2017); *see also* GAO, *Further Actions on GAO Recommendations Needed to Address System Management Challenges in Indian Education*, GAO-15-539T at 14 (Apr. 2015), http://www.gao.gov/assets/670/669784.pdf (hereinafter, "2015 GAO Report") (finding that 40 percent of BIE regional facility jobs remained vacant in 2015).

14 2015 GAO Report at 14-16.

15 Executive Office of the President, 2014 Native Youth Report at 14; see also id. at 15-16; GAO, BIA and DOD Schools: Student Achievement and Other Characteristics Often Differ from Public Schools' 10, 12, 14 GAO-01-934 (2001), http://www.gao.gov/new.items/d01934.pdf.

16 GAO Report, Indian Affairs: *Better Management and Accountability Needed to Improve Indian Education* 6, GAO-13-774 at 1 (Sept. 2013), http://www.gao.gov/assets/660/658071.pdf.

226.    Moreover, Defendants have long been specifically aware of the inadequacy of the education delivered to students at the School. A 2011 application for School Improvement Grant funding drafted by the former principal of Havasupai Elementary School and sent to Defendant BIE acknowledged nearly all of these issues,[17] including:

- "lack of a well defined [sic] and comprehensive instructional program";

- the need to improve "quality of instruction," and "little or no knowledge of effective instructional practices in areas of reading and math by instructional staff and site leaders; no instructional framework";

- "changes in leadership (15 principals in 10 years; principals leaving in the middle of the year)" and "constant staff turnover," including "teachers [leaving] in the middle and end of year";

- "no substantive parent involvement activities";

- "[h]igh levels of poverty, unemployment, low levels of literacy and substance abuse and family violence [that] plague th[e] community" and a "high level of discipline and disruptive incidents."

The report concluded that "[t]he continued low academic achievement of HES students cannot be overstated."

227.    Members of the Havasupai Tribal Council have traveled to Washington, D.C. to meet with top BIE and DOI officials on multiple occasions including for a face-to-face meeting in April 2016 with the then-Acting Director of the BIE, Ann Marie Bledsoe Downes. The former Director of the BIE has also visited Havasupai within the last several years, as have many other BIE and DOI officials from Washington and regional offices. Most recently, the Director of the BIE, Defendant Dearman, met with the Havasupai Tribal Council in April 2018. During all of these meetings, members of the Havasupai Tribal Council have explained the problems facing the School and the need for the BIE to act.

228.    In addition, the BIE's Division of Performance and Accountability recently engaged in a "discussion on schools with intensive needs such as Havasupai."[18] Over the

---

[17] Havasupai Elementary School, School Improvement Grant Application Packet, at 3-5, attached hereto as Exhibit A.

[18] BIE Special Education Advisory Board, *Regular Meeting Minutes* at 2, (Sept. 17-18, 2015), http://www.bie.edu/cs/groups/xbie/documents/text/idc1-032733.pdf.

years, Havasupai parents and families, as well as members of the School Advisory Board and Tribal Council, have also complained to the BIE about the inadequacy of their children's education and the mismanagement of the School by BIE staff.

229.   Laila R., the mother of Plaintiffs Leo R. and Levi R., has helped draft and circulate written grievances concerning the School—including demands that vacant positions be filled when the School was severely understaffed and requests that the BIE provide standardized testing to students attending the School—to BIE officials, including former BIE director Monty Roessel, Arizona BIE education program administrator Jim Hastings, and former school principal Coleen Maldonaldo.

230.   As a result, Defendants are specifically aware of each of the educational deprivations identified in this complaint. Yet they have taken no discernable steps to address significant disparities in the quality of the educational opportunities afforded to Havasupai students. Defendants' actions and inactions resulting in the creation and exacerbation of these educational deficiencies are deliberate and conscious, in that they are aware of the causes of these deficiencies, yet have failed to establish any system to monitor, identify, and remedy identified inadequacies.

## FIRST CAUSE OF ACTION
### (FAILURE TO TAKE ACTION REQUIRED TO PROVIDE BASIC EDUCATION (5 U.S.C. § 706(1)))

**(All Plaintiffs against All Defendants)**

231.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 231 as if set forth fully here.

232.   Under the Administrative Procedure Act, 5 U.S.C. § 706(1), a party aggrieved by agency action may bring an action requiring a court to "compel agency action unlawfully withheld or unreasonably delayed."

233.   Havasupai Elementary School is operated by Defendants.

234.   Defendants are obligated to provide an education to Havasupai children that meets basic educational standards and enables students to access post-secondary educational opportunities in accordance with the standards set forth in federal statutes and

regulations, including, but not limited to, 25 U.S.C. §§ 2000-2001 & 2003; 20 U.S.C. § 7401; and 25 C.F.R. Chapter I, Subchapter E. Specifically:

235. Defendants must comply with 25 C.F.R. § 36.20, which requires providing an educational program including multi-culture and multi-ethnic dimensions designed to enable students to function effectively in a pluralistic society.

236. Defendants must comply with 25 C.F.R. §§ 36.21-36.23, which outline the minimum requirements for kindergarten, grades one through six, and grades seven and eight.

237. Defendants must comply with regulations governing staffing and administrative requirements, grading requirements, student promotion requirements, additional programming requirements (*e.g.*, "each school shall provide a library/media program"), textbooks, behavioral health services, extracurricular activities, evaluation and monitoring requirements, and student rights and due process protections. 25 C.F.R. §§ 36.11, 36.30-31, 36.40-43, 36.50-51.

238. Defendants have failed to take required discrete actions to comply with these regulations and to satisfy their obligations to provide an adequate education to Havasupai children.

239. These unlawful failures to act include, but are not limited to, the following:

a. Defendants have not provided instruction in social studies;

b. Defendants have not provided instruction in fine arts;

c. Defendants have not provided instruction in science;

d. Defendants have not provided instruction in computer literacy;

e. Defendants have not provided instruction in career exploration and orientation;

f. Defendants have not provided a functioning library/media program;

g. Defendants have not provided adequate textbooks and instructional materials;

h. Defendants have not provided behavioral health services;

i.      Defendants have not provided extracurricular activities;

j.      Defendants have not adequately staffed Havasupai Elementary School;

k.      Defendants have not assessed the English and native language abilities of students at Havasupai Elementary School;

l.      Defendants have not provided instruction in the Havasupai language;

m.      Defendants have not included aspects of the Havasupai culture in all aspects of the curriculum;

n.      Defendants have not evaluated the learning styles of students at Havasupai Elementary School;

o.      Defendants have not provided one field trip, per student, per year at Havasupai Elementary School;

p.      Defendants have not developed a student handbook including policies and disciplinary procedures or communicated those policies and procedures to students and their families;

q.      Defendants have not established dispute resolution procedures to be used in lieu of formal student discipline; and

r.      Defendants have not established a procedure for formal disciplinary hearings that provides notice and a hearing.

240.    Plaintiffs, including NADLC, have been aggrieved by these failures to act because Havasupai children have been deprived of the educational opportunities to which they are entitled, and they have not been adequately prepared for the transition to high school.

241.    Plaintiffs have suffered an irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

242.    Plaintiffs were not required to exhaust administrative remedies in order to bring this claim.

243.   Plaintiffs are entitled to appropriate relief.

## SECOND CAUSE OF ACTION
## (FAILURE TO PROVIDE BASIC EDUCATION (5 U.S.C. § 706(2)))

**(All Plaintiffs against All Defendants)**

244.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 244 as if set forth fully here.

245.   Under the Administrative Procedure Act, 5 U.S.C. § 706(2), a party aggrieved by agency action may bring an action requiring a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

246.   Havasupai Elementary School is operated by Defendants.

247.   Defendants are obligated to provide an education to Havasupai children that meets basic educational standards and enables students to access post-secondary educational opportunities in accordance with the standards set forth in federal statutes and regulations, including, but not limited to, 25 U.S.C. §§ 2000-2001 & 2003; 20 U.S.C. § 7401; and 25 C.F.R. Chapter I, Subchapter E. Specifically:

248.   Defendants must comply with 25 C.F.R. § 36.20, which requires providing an educational program including multi-culture and multi-ethnic dimensions designed to enable students to function effectively in a pluralistic society.

249.   Defendants must comply with 25 C.F.R. §§ 36.21-36.23, which outline the minimum requirements for kindergarten, grades one through six, and grades seven and eight.

250.   Defendants must comply with regulations governing staffing and administrative requirements, grading requirements, student promotion requirements, additional programming requirements (*e.g.*, "each school shall provide a library/media program"), textbooks, behavioral health services, extracurricular activities, evaluation and monitoring requirements, and student rights and due process protections. 25 C.F.R. §§ 36.11, 36.30-31, 36.40-43, 36.50-51.

251.   Defendants have acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law in their administration of Havasupai Elementary School.

252.   The actions of Defendants that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law include, but are not limited to, the failures listed in paragraph 240, *supra*.

253.   Plaintiffs, including NADLC, have been aggrieved by these actions because Havasupai children have been deprived of the educational opportunities to which they are entitled, and they have not been adequately prepared for the transition to high school.

254.   Plaintiffs have suffered an irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

255.   Plaintiffs were not required to exhaust administrative remedies in order to bring this claim.

256.   Plaintiffs are entitled to appropriate relief.

**THIRD CAUSE OF ACTION**
**(FAILURE TO PROVIDE A SYSTEM ENABLING STUDENTS WITH DISABILITIES TO ACCESS PUBLIC EDUCATION (29 U.S.C. § 794))**

**(Plaintiffs Stephen C., Durell P., Taylor P.,**
**Leo R., Levi R., Jenny A., Jordan A., Moana L. and NADLC**
**against Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze)**

257.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 257 as if set forth fully here.

258.   Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under . . . any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

259.   Havasupai Elementary School is a "program or activity," which term is defined to include school systems. 29 U.S.C. § 794(b)(2)(B).

260.    The definition of "disability" is a "physical or mental impairment that substantially limits one or more life activities," such as (but not limited to), "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, *learning, reading, concentrating, thinking, communicating*, and working." 42 U.S.C. §§ 12102(1)(A), (2)(A) (emphasis added).

261.    Thus, Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze are required to provide special education instruction, related services, and appropriate resources to Havasupai students with physical or mental impairments that substantially limit them with respect to learning, reading, concentrating, thinking, and/or communicating; and they must put into place a system—including procedures, teachers, and appropriate providers—for delivery of specialized instruction and services in order to ensure that those students have access to the benefits of a public education.

262.    Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze have failed to establish a system to ensure that students with disabilities receive the special education, related services, and other resources necessary to access to the benefits of a public education. Specifically:

263.    At Havasupai Elementary School, there is not a sufficient number of qualified special education teachers; there are no special education classrooms, no occupational therapists, physical therapists, or speech therapists; and there are either no or insufficient mental health staff and support staff.

264.    Students with disabilities are either not given a full day of instruction or are channeled into residential schools, forcing students and their families to choose between leaving home to obtain adequate schooling and services, or living at home in their own community without access to basic education.

265.    Defendants have compounded their failure to provide education to students with disabilities by relying on police and the criminal justice system, or repeated suspension and punitive discipline, instead of counseling and support. Students miss such a significant amount of school—including while on suspension or awaiting court hearings—

that they fall far behind their peers from an educational perspective.

266.    Plaintiffs, including NADLC, have been damaged by the failure to provide a system for serving Havasupai students with disabilities, which has deprived those students of access to public education.

267.    Plaintiffs have suffered irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

268.    Plaintiffs do not need to administratively exhaust their claim. There is no administrative procedure for challenging Defendants' school-wide failure to provide a system for serving students with disabilities. Indeed, the BIE has not even promulgated regulations for challenging individual denials of access to education for students with disabilities. Even if a family could somehow obtain an individual remedy through a due process proceeding or some other form of administrative process, Defendants could not implement that remedy at Havasupai Elementary School because they have no system in place for doing so.

269.    Moreover, declaratory relief, which is essential to this claim, is not available under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Thus, the IDEA exhaustion requirement cannot be applied to this claim.

270.    Plaintiffs are entitled to appropriate relief.

## FOURTH CAUSE OF ACTION
### (FAILURE TO PROVIDE A SYSTEM ENABLING STUDENT PLAINTIFFS IMPACTED BY CHILDHOOD ADVERSITY TO ACCESS PUBLIC EDUCATION (29 U.S.C. § 794))
**(Plaintiffs Stephen C., Durell P., Taylor P.,
Leo R., Levi R., Jenny A., Jordan A., Moana L. and NADLC
against Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze)**

271.    Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 271 as if set forth fully here.

272.    Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified

individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under . . . any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

273.   Havasupai Elementary School is a "program or activity." 29 U.S.C. § 794(b)(2)(B).

274.   The definition of "disability" is a "physical or mental impairment that substantially limits one or more life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, *learning, reading, concentrating, thinking, communicating*, and working." 42 U.S.C. §§ 12102(1)(A), (2)(A) (emphasis added).

275.   The effects of complex trauma cause impairment that limits a student's ability to learn, read, concentrate, think, and/or communicate, and to generally receive an education and have the opportunity to succeed in school.

276.   Student Plaintiffs Impacted by Childhood Adversity have been exposed to childhood adversity and historical trauma within their community and experience or have experienced complex trauma and its effects, substantially limiting them with respect to learning, reading, concentrating, thinking, and/or communicating.

277.   Solely by reason of their unaddressed exposure to complex trauma and its effects, Student Plaintiffs Impacted by Childhood Adversity have been denied meaningful access to public education by Defendants.

278.   There are effective and reasonable accommodations that Defendants could implement that would allow Student Plaintiffs Impacted by Childhood Adversity to learn, read, concentrate, think, communicate, and enjoy the benefit of a public education. The effects of complex trauma can be addressed with behavioral and mental health resources, as well as culturally relevant interventions, in order for students to have meaningful access to education. In order to meaningfully access public education, Student Plaintiffs Impacted by Childhood Adversity require a system that is responsive to and capable of addressing the impact of complex trauma.

279.    Defendants have failed to establish a system to ensure that Student Plaintiffs Impacted by Childhood Adversity receive the specialized instruction, related services, and other resources necessary to access to the benefits of a public education.

280.    Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze are required to provide specialized instruction, related services, and other resources to Student Plaintiffs Impacted by Childhood Adversity, and they must put into place a system— including procedures, teachers, and appropriate providers—for delivery of specialized instruction and services in order to ensure that those students have access to the benefits of a public education.

281.    Student Plaintiffs Impacted by Childhood Adversity and NADLC have been damaged by the failure to provide a system for serving Havasupai students who have suffered adversity and complex trauma, which has deprived those students of access to public education.

282.    Student Plaintiffs Impacted by Childhood Adversity have suffered an irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

283.    Student Plaintiffs Impacted by Childhood Adversity do not need to administratively exhaust their claim. There is no administrative procedure for challenging Defendants' school-wide failure to provide a system to address the needs of students who have been exposed to adversity and complex trauma. Indeed, the BIE has not even promulgated regulations for challenging individual denials of access to education for such students. Even if a family could somehow obtain an individual remedy through a due process proceeding or some other form of administrative process, Defendants could not implement that remedy at Havasupai Elementary School because they have no system in place for doing so.

284.    Moreover, declaratory relief, which is essential to this claim, is not available under IDEA. Thus, the IDEA exhaustion requirement cannot be applied to this claim.

285.   Student Plaintiffs Impacted by Childhood Adversity are entitled to appropriate relief.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF DEPARTMENT OF EDUCATION REGULATIONS**
**REGARDING "LOCATION AND NOTIFICATION," 34 C.F.R. § 104.32)**
**(Plaintiffs Stephen C., Durell P., Taylor P.,**
**Leo R., Levi R., Jenny A., Jordan A., Moana L. and NADLC**
**against Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze)**

286.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 286 as if set forth fully here.

287.   Department of Education ("DOE") regulations require a recipient of DOE funding to identify and locate students who are not properly receiving an adequate public education as a result of their disabilities, including but not limited to identification and location of students whose disabilities are related to complex trauma and its effects.

288.   Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze receive DOE funding to provide special education services at Havasupai Elementary School.

289.   Defendants have not established and implemented policies or procedures to identify and locate Havasupai students who are not properly receiving an adequate public education on account of their disabilities, including but not limited to disabilities related to complex trauma and its effects.

290.   Defendants have failed to locate and identify Havasupai students who are not properly receiving an adequate public education on account of their disabilities, including but not limited to disabilities related to complex trauma and its effects.

291.   Defendants have not established and implemented policies or procedures to notify the parents or guardians of Havasupai students who are not receiving an adequate public education as a result of their disabilities, including but not limited to disabilities related to complex trauma and its effects, of Defendants' duty to identify students who might require a reasonable accommodation.

292.   Defendants have failed to notify the parents or guardians of Havasupai

students who are not receiving an adequate public education as a result of their disabilities, including but not limited to disabilities related to complex trauma and its effects, of Defendants' duty to identify students who might require a reasonable accommodation.

293.   Plaintiffs, including NADLC, have been damaged by the failure to provide a system to locate and notify Havasupai students who are not receiving an adequate public education as a result of their disabilities, which has deprived those students of access to public education.

294.   This is an irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

295.   Plaintiffs do not need to administratively exhaust their claim. There is no administrative procedure for challenging Defendants' school-wide failure to provide a system for serving students with disabilities. Indeed, the BIE has not even promulgated regulations for challenging individual denials of access to education for students with disabilities. Even if a family could somehow obtain an individual remedy through a due process proceeding or some other form of administrative process, Defendants could not implement that remedy at Havasupai Elementary School because they have no system in place for doing so.

296.   Moreover, declaratory relief, which is essential to this claim, is not available under IDEA. Thus, the IDEA exhaustion requirement cannot be applied to this claim.

297.   Plaintiffs are entitled to appropriate relief.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF DEPARTMENT OF EDUCATION REGULATIONS REGARDING "PROCEDURAL SAFEGUARDS," 34 C.F.R. § 104.36)

**(Plaintiffs Stephen C., Durell P., Taylor P., Leo R., Levi R., Jenny A., Jordan A., Moana L. and NADLC against Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze)**

298.   Plaintiffs incorporate and reallege the allegations set forth in paragraphs 1 through 298 as if set forth fully here.

299.   DOE regulations provide that a recipient of DOE funding that "operates a public elementary or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure." 34 C.F.R. § 104.36.

300.   Defendants Zinke, Sweeney, Dearman, and Roanhorse-Dineyahze receive DOE funding to provide special education services at Havasupai Elementary School.

301.   Defendants have not established and implemented a system of procedural safeguards with respect to actions regarding identification, evaluation, and educational placement of students who are not receiving an adequate public education as a result of their disabilities, including but not limited to the fact that they have suffered complex trauma.

302.   Defendants have failed to establish a system of procedural safeguards for Havasupai students that includes notice, an opportunity for parents or guardians to examine relevant records, an impartial hearing, and a review procedure. Defendants' failure to establish such a system has resulted in negative consequences for students who were entitled to the protection of procedural safeguards, including suspension, involuntary transfer, expulsion, and law enforcement referrals.

303.   Plaintiffs, including NADLC, have been damaged by the failure to provide such procedural safeguards to Havasupai students who are not receiving an adequate public education as a result of their disabilities, which has deprived those students of access to public education.

304.   This is an irreparable injury that could not be adequately compensated by a remedy at law, the balance of the hardships between the parties warrants an equitable remedy, and the public interest would not be disserved by an equitable remedy.

305.    Plaintiffs do not need to administratively exhaust their claim. There is no administrative procedure for challenging Defendants' school-wide failure to provide a system for serving students with disabilities. Indeed, the BIE has not even promulgated regulations for challenging individual denials of access to education for students with disabilities. Even if a family could somehow obtain an individual remedy through a due process proceeding or some other form of administrative process, Defendants could not implement that remedy at Havasupai Elementary School because they have no system in place for doing so.

306.    Moreover, declaratory relief, which is essential to this claim, is not available under IDEA. Thus, the IDEA exhaustion requirement cannot be applied to this claim.

307.    Plaintiffs are entitled to appropriate relief.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

1.    The issuance of a Declaratory Judgment that the actions and omissions of the Defendants, as described above, constitute violations of the Indian Education Act, the Rehabilitation Act, as well as numerous other federal laws, and violate student Plaintiffs' civil rights;

2.    The issuance of a Declaratory Judgment setting forth the duties and obligations of Defendants with respect to the delivery of education to students at Havasupai Elementary School.

3.    Appropriate injunctive relief requiring Defendants, their officers, agents, employees, successors in office and assigns/assignees to provide student Plaintiffs:

   a.   access to an adequate public education including access to all required subjects, content, and curriculum;

   b.   access to education provided by sufficient numbers of qualified teachers and related services providers based on the needs of the school-age population in Havasupai;

   c.   access to education that is culturally relevant based on the unique culture and

tradition of the Havasupai tribe;

d.  access to instruction appropriate to students' native language;

e.  access to education that is properly governed by a school board appointed by the Tribal Council;

f.  access to education that includes appropriate assessment of student achievement, with assessment results provided and explained to parents and students;

g.  public disclosure of disaggregated achievement data as required by law;

h.  access to timely special education and related services as needed and of sufficient duration and intensity based on individual needs of students, with such services to be provided to students in the least restrictive environment in their home community to the maximum degree possible;

i.  trained staff and services necessary to respond to complex trauma and students' social-emotional needs, including, but not limited to: (1) comprehensive and ongoing training, coaching, and consultation for all adult staff regarding trauma-informed and culturally sensitive strategies for educating students and fostering a healthy, supporting environment; (2) implementation of restorative practices to prevent, address, and heal after conflict; (3) employment of appropriately trained counselors who can assist with identification of students who have mental-health difficulties; (4) adoption of practices and interventions to enhance student wellness that are responsive to Havasupai beliefs and traditions and are created in partnership with community members.

j.  procedures to ensure that parents of students at Havasupai Elementary School are able to participate fully in their education, including procedures protecting parent and student rights related to: (1) parental notification of individual student progress; (2) identification, evaluation, placement, and educational programs of students with disabilities; (3) parental notification of injuries of students on school campus; (4) student and parental notice of discipline actions against students; (5) parental notification of law enforcement interactions with students

and law enforcement presence on school campus;

k. Compensatory and remedial education to provide access to all required general-education subjects, along with any needed special-education and related services, to all student Plaintiffs—including to those who previously attended but no longer attend Havasupai Elementary School;

l. Appointment of an independent third party to receive and respond to complaints from parents or tribal officials;

4. A permanent injunction enjoining Defendants, their officers, agents, employees, successors in office and assigns/assignees from engaging in the actions, omissions, policies, and practices that have resulted in their failure and refusal to enforce the requirements of the Indian Education Act and its implementing regulations and Section 504 of the Rehabilitation Act of 1973 and its implementing regulations at Havasupai Elementary School;

5. An award of costs and attorneys' fees on behalf of Plaintiffs pursuant to 29 U.S.C. § 794(a) and any applicable provisions of law;

6. A grant of such other or additional relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED this 10th day of August, 2018.

By: *s/Alexis DeLaCruz w/permission*
Alexis DeLaCruz (SBN 031273)
NATIVE AMERICAN DISABILITY
LAW CENTER
3535 E. 30th Street, Suite 201
Farmington, NM 87402
Telephone: 505.566.5880

Mark Rosenbaum (*pro hac vice*)
mrosenbaum@publiccounsel.org
Kathryn Eidmann (*pro hac vice*)
keidmann@publiccounsel.org
Anne Hudson-Price (*pro hac vice*)
aprice@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: 213.385.2977

By: *s/Judith M. Dworkin*
Judith M. Dworkin (SBN 010849)
David C. Tierney (SBN 002385)
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Bradley S. Phillips (*pro hac vice*)
Brad.Phillips@mto.com
Bryan H. Heckenlively (*pro hac vice*)
bryan.heckenlively@mto.com
Emily Curran-Huberty (*pro hac vice*)
Emily.Curran-Huberty@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: 213.683.9100

Tara C. Ford (*pro hac vice*)

Maria Martinez-Sánchez (*pro hac vice*)
mmartinez@aclu-nm.org
AMERICAN CIVIL LIBERTIES
UNION of NEW MEXICO
1410 Coal Avenue SW
Albuquerque, NM 87104
Telephone: 505.266.5915

taraford@law.stanford.edu
Stanford Law School
MILLS LEGAL CLINIC
Youth and Education Law Project
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: 650.725.8581s

*Attorneys for Plaintiffs*

1

CERTIFICATE OF SERVICE

2

        I hereby certify that on August 10, 2018, I electronically transmitted the attached

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the CM/ECF registrants for this matter.

5

6

*s/ Frances Fulwiler*

7

2173276.v3

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28