JOSEPH H. HUNT
Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director
LISA A. OLSON, D.C.  No. 384266
Senior Trial Counsel
CAROL FEDERIGHI, TX Bar No. 06872950
Senior Trial Counsel
CESAR A. LOPEZ-MORALES, MA Bar No. 690545
CRISTEN C. HANDLEY, MO Bar No. 69114
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone: (202) 305-8550
Facsimile: (202) 616-8470
cesar.a.lopez-morales@usdoj.gov

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Stephen C., a minor, by Frank C., guardian ad litem, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Bureau of Indian Education, *et al.*,<br><br>Defendants. | No. 3:17-cv-08004-SPL<br><br>**DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

# **TABLE OF CONTENTS**

MOTION FOR PARTIAL SUMMARY JUDGMENT ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

FACTUAL BACKGROUND ........................................................................................................ 2

LEGAL STANDARD ..................................................................................................................... 3

ARGUMENT .................................................................................................................................... 3

    I.      COUNTS I AND II ARE NOT ACTIONABLE UNDER THE APA ......................... 3

          A.     Plaintiffs Do Not Challenge a Cognizable "Agency Action." ................................. 4

          B.     The APA Does Not Authorize Plaintiffs' Requested Relief. .................................. 7

    II.     COUNT IV FAILS BECAUSE PLAINTIFFS HAVE NOT IDENTIFIED
          A REASONABLE ACCOMMODATION BIE HAS FAILED TO PROVIDE ........ 10

    III.    PLAINTIFFS CANNOT PREVAIL ON COUNTS V AND VI BECAUSE 34
          C.F.R. §§ 104.32 AND 104.36 DO NOT APPLY TO INTERIOR. .............................. 13

    IV.    THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE
          CLAIMS OF DURELL P. AND STEPHEN C. ............................................................ 15

CONCLUSION ............................................................................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

*Alexander v. Choate,*
   469 U.S. 287 (1985) ........................................................................................... 14

*Am. Civil Liberties Union of Nev. v. Lomax,*
   471 F.3d 1010 (9th Cir. 2006) .......................................................................... 15

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,*
   458 U.S. 176 (1982) ............................................................................................. 7

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) ............................................................................................. 8

*City of New York v. U.S. Dep't of Def.,*
   913 F.3d 423 (4th Cir. 2019) ..................................................................... *passim*

*Cmty. Coll. v. Davis,*
   442 U.S. 397 (1979) ........................................................................................... 15

*Cobell v. Norton,*
   392 F. 3d 461 (D.C. Cir. 2004) ........................................................................ 10

*Coleman v. Darden,*
   595 F.2d 533 (10th Cir. 1979) .......................................................................... 14

*Crowder v. Kitagawa,*
   81 F.3d 1480 (9th Cir. 1996) ............................................................... 11, 12, 13

*Ctr. for Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.,*
   241 F.R.D. 495 (D. Ariz. 2006) .......................................................................... 9

*Defs. of Wildlife v. Flowers,*
   No. 02-CV-195, 2003 WL 22143270 (D. Ariz. Aug. 18, 2003), *aff'd,* 414 F.3d 1066 (9th Cir. 2005) .................................................................................................................... 6

*Def. Supplies Corp. v. U.S. Lines Co.,*
   148 F.2d 311 (2d Cir. 1945) .............................................................................. 15

*Del Monte Fresh Prod. N.A., Inc. v. United States,*
   706 F. Supp. 2d 116 (D.D.C. 2010) ................................................................... 7

*Doe v. Attorney Gen. of the U.S.,*
   941 F.2d 780 (9th Cir. 1991), *overruled on other grounds by Lane v. Pena,* 518 U.S. 187 (1996) ... 12

ii

*Forest Guardians v. Babbitt,*
  174 F.3d 1178 (10th Cir. 1999) ........................................................... 7, 8

*Friends of the Earth v. U.S. Dep't of Interior,*
  478 F. Supp. 2d 11 (D.D.C. 2007) ........................................................... 6

*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.,*
  528 U.S. 167 (2000) ........................................................................... 15

*Garcia v. Capistrano Unified Sch. Dist.,*
  No. SA CV 16-2111-DOC (JCGx), 2018 WL 6017009 (C.D. Cal. Mar. 30, 2018) ............... 15

*Hells Canyon Pres. Council v. U.S. Forest Serv.,*
  593 F.3d 923 (9th Cir. 2010) ................................................................. 8

*Hinck v. United States,*
  550 U.S. 501 (2007) ........................................................................... 7

*Jacobson v. Delta Airlines, Inc.,*
  742 F.2d 1202 (9th Cir. 1984) ............................................................... 14

*John v. United States,*
  720 F.3d 1214 (9th Cir. 2013) ................................................................ 4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .......................................................................... 15

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) ...................................................................... 5, 6, 7

*Mark H. v. Hamamoto,*
  620 F.3d 1090 (9th Cir. 2010) ........................................................... 11, 12

*Mark H. v. Lemahieu,*
  513 F.3d 922 (9th Cir. 2008) ........................................................ 11, 14, 15

*Myers v. United States,*
  272 U.S. 52 (1926) ........................................................................... 15

*Nev. Ass'n of Ctys. v. Dep't of Interior,*
  No. 3:13-cv-712-MMD, 2015 WL 1130982 (D. Nev. Mar. 12, 2015), *aff'd*, 686 Fed.
  App'x 407 (9th Cir. 2017) .............................................................. 5, 6, 9

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004) ..................................................................... *passim*

*NRDC v. EPA,*
    966 F.2d 1292 (9th Cir. 1992) ................................................................. 9

*Occidental Eng'g Co. v. INS,*
    753 F.2d 766 (9th Cir. 1985) ................................................................... 3

*P.P. v. Compton Unified Sch. Dist.,*
    135 F. Supp. 3d 1126 (C.D. Cal. 2015) ............................................ 12, 15

*Prewitt v. U.S. Postal Serv.,*
    662 F.2d 292 (5th Cir. 1981) ................................................................. 13

*Pub. Lands for the People, Inc. v. USDA,*
    733 F. Supp. 2d 1172 (E.D. Cal. 2010) .................................................. 9

*RCM Technologies, Inc. v. DHS,*
    614 F. Supp. 2d 39 (D.D.C. 2009) .......................................................... 9

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
    411 U.S. 1 (1973) ..................................................................................... 7

*Sheldon v. Vilsack,*
    538 F. App'x 644 (6th Cir. 2013) ........................................................... 4

*Sierra Club v. Peterson,*
    228 F.3d 559 (5th Cir. 2000) .............................................................. 5, 6

*Sierra Nev. Forest Prot. Campaign v. Rey,*
    573 F. Supp. 2d 1316 (E.D. Cal. 2008), *aff'd in part, rev'd sub nom. Sierra Forest Legacy v.*
    *Sherman,* 646 F.3d 1161 (9th Cir. 2011) ............................................... 7

*Slayman v. FedEx Ground Package Sys., Inc.,*
    765 F.3d 1033 (9th Cir. 2014) .............................................................. 16

*Stephen C. v. BIE,*
    2018 WL 1871457 (Mar. 29, 2018) ...................................................... 16

*U.S. Dep't of Transp. v. Paralyzed Veterans of Am.,*
    477 U.S. 597 (1986) ............................................................................... 14

*United States v. Strong,*
    489 F.3d 1055 (9th Cir. 2007) .............................................................. 16

*Veterans for Common Sense v. Shinseki,*
    678 F.3d 1013 (9th Cir. 2012) ............................................................ 5, 6

*Walsh v. Nev. Dep't of Human Res.*,
    471 F.3d 1033 (9th Cir. 2006) ................................................................ 16

*Zukle v. Regents of Univ. of California*,
    166 F.3d 1041 (9th Cir. 1999) .......................................................... 11, 12

**Statutes**

5 U.S.C. § 551(13) ................................................................................... 4

5 U.S.C. § 706 ................................................................................ *passim*

20 U.S.C. § 1681 ..................................................................................... 14

25 U.S.C. § 3207 ...................................................................................... 3

29 U.S.C. § 794(a) ................................................................................. 13

34 U.S.C. § 20351 ................................................................................... 3

42 U.S.C. § 2000d .................................................................................. 14

110 Cong. Rec. 13380 (1964)……………………………………………...14

Act to Replace the Vocational Rehabilitation Act,
    Pub. L. No. 93-112, 87 Stat. 355 (1973) ............................................. 13

Act to Amend the Rehabilitation Act of 1973,
    Pub. L. No. 95-602, 92 Stat. 2955 (1978) ........................................... 13

**Constitutional Law**

U.S. Const. art. II, § 1, cl. 1 & 3…………………………………………...15

**Rule**

Fed. R. Civ. P. 56(a) ............................................................................ 1, 3

**Regulations**

25 C.F.R. Part 63 ...................................................................................... 3

28 C.F.R. § 35.130(b)(7)(i) .................................................................... 11

34 C.F.R. Part 104 .................................................................................. 14

34 C.F.R. § 104.2 .................................................................................... 14

34 C.F.R. § 104.32.................................................................................................13

34 C.F.R. § 104.36.................................................................................................13

43 C.F.R. § 17.201..................................................................................................15

43 C.F.R. § 17.220..................................................................................................15

43 C.F.R. §§ 17.501-17.570....................................................................................14

43 C.F.R. §§ 17.502................................................................................................15

## MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Defendants move for summary judgment as to Counts I, II, IV, V, and VI of the Third Amended Complaint ("TAC"), ECF No. 128.  This motion is supported by a Memorandum of Law, Statement of Undisputed Material Facts, and exhibits, all filed herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants, the Department of the Interior ("DOI") and the Bureau of Indian Education (collectively referred to as "BIE"), operate Havasupai Elementary School ("HES"), a school of approximately 70 K-8 students located in the bottom of the Grand Canyon. Operating HES is extraordinarily challenging.  BIE has taken numerous measures to ensure that Havasupai students are provided with an educationally sound and safe environment.  BIE is committed to developing solutions to the issues HES confronts and working with the Havasupai Tribe to provide students with an adequate education.

Plaintiffs, a group of seven current and former students and an advocacy organization, bring this lawsuit under the Administrative Procedure Act ("APA") and Section 504 of the Rehabilitation Act ("Section 504") to challenge what they describe as longstanding and systemic failures in BIE's administration of HES.  Regarding the counts addressed in this motion, Plaintiffs' claims fail as a matter of law.  With respect to the APA claims in Counts I and II, the nature of those claims and their expansive corresponding discovery demonstrate that Plaintiffs seek wholesale programmatic improvement of HES by court decree rather than judicial review of discrete agency action.  The APA forecloses such claims.  With respect to Count IV, Plaintiffs' requested accommodation to address the trauma-related disorders of certain students is neither appropriate nor legally required under Section 504.  As to Counts V and VI, Plaintiffs cannot enforce regulations of the Department of Education ("DOE") that do not apply to BIE.  Finally, the Court lacks jurisdiction over the claims of Stephen C. and Durell P. because they completed the eighth grade at HES and thus cannot benefit from the relief requested.  Defendants' motion should be granted.

**FACTUAL BACKGROUND**

The Indian Education Act, 25 U.S.C. §§ 2000, *et seq.* (incorporating regulations at 25 C.F.R. Part 32) governs BIE's operation of programs like HES and sets forth formulas used to allocate appropriated funds for schools.  HES is located at the bottom of the Grand Canyon, accessible only via an eight-mile hike or mule ride, or helicopter.  Ex. 1, Dearman Dep. 216:18-28.[1]  The extremely remote location poses a number of obstacles to BIE's attempts to recruit, hire, and retain staff necessary for providing adequate educational services.  Ex. 2, Shamblin Dep. 93:17-94:16.  Teachers must use costly helicopter transportation to visit family or purchase supplies.  Ex. 3, Roanhorse-Dineyahze Expert Dep. 103:6-10; Ex. 4, Ticeahkie Dep. 90:4-7.  In addition, many teachers have experienced threats of, or actual, physical violence in the community.  Ex. 5, Paddock Dep. 221:18-222:9; Ex. 6, Williamson Dep. 332:2-3.  These circumstances often result in applicants declining a position or employees leaving after a year.  Ex. 7, Roanhorse-Dineyahze Dep. 131:3-10; Ex. 2, Shamblin Dep. 55:18-56:4, 65:8-17.

There also is a shortage of housing for HES staff.   Although HES's organizational chart has 17 positions, only 12 beds are available to house staff, double occupancy apartments must be shared, and there is no space for staff members to house their families.  Ex. 2, Shamblin Dep. 95:23-96:2; Ex. 1, Dearman Dep. 62:16-21.  Additional housing cannot be constructed without permission from the Tribe and authorization from the Bureau of Indian Affairs.  Ex. 7, Roanhorse-Dineyahze Dep. 122:11-16.

BIE offers a variety of monetary and nonmonetary incentives to recruit and retain staff at HES, including higher salaries than state schools in the area, a 25% differential pay increase for teachers, recruitment bonuses, additional pay for certification training and maintenance, loan forgiveness, transportation of personal belongings, rent reductions, and training and mentoring.  Ex. 8, Boyd Dep. 110:16-117:3; Ex. 1, Dearman Dep. 138:24-139:3; Ex. 9, Maldonado Dep. 250:3-15; Ex. 10, Shamblin 30(b)(6) Dep. 46:1-48:9, 56:10-19; Ex. 11, Defs. Interrog. Response #9(d).  Yet, vacancies are hard to fill because the federally mandated hiring process for BIE

---

[1] Exhibits to this Motion and Memorandum are listed and described in the attached Index of Exhibits.

teachers, *see* 34 U.S.C. § 20351, especially for teachers of Native American children, *see* 25 U.S.C. § 3207; 25 C.F.R. Part 63, is lengthy.  Ex. 10, Shamblin 30(b)(6) Dep. 96:17-97:2, 110:7-20, 110:23-111:3; Ex. 2, Shamblin Dep. 110:18-111:11, Ex. 1, Dearman Dep. 60:4-6.  And positions remain unfilled because selectees are unable to pass the requisite background check or are not certified.  Ex. 2, Shamblin Dep. 106:12-22, 154:21-155:14.

Despite these challenges, BIE generally provides adequate instructional resources, Ex. 8, Boyd Dep. 129:21-130:1; Ex. 12, Hastings Dep. 98:16-20; Ex. 13, Muhammad Dep. 122:18-21, 127:9-11; Ex. 11, Defs. Interrog. Response #1 & Att. #1; a curriculum that aligns with state standards, Ex. 5, Paddock Dep. 102:3-9, 112:22-113:8; Ex. 11, Defs. Interrog. Response #2; cultural instruction, Ex. 7, Roanhorse-Dineyahze Dep. 206:6-207:24; Ex. 14, Vigil Dep. 13:9-22; Ex. 11, Defs. Interrog. Response #5-6; some extra-curricular activities, Ex. 8, Boyd Dep. 148:13-16; Ex. 11, Defs. Interrog. Response #3 & Att. #3; field trips, Ex. 11, Defs. Interrog. Response #3 & Att. #3; Ex. 12, Hastings Dep. 80:21-81:5; Ex. 5, Paddock Dep. 127:9-128:11; behavioral health services, Ex. 8, Boyd Dep. 251:17-252:23; Ex. 4, Ticeahkie Dep. 173:17-174:1; and a handbook of student rights and responsibilities, Ex. 15, Dearman 30(b)(6) Dep. 99:7-100:5, 113:13-114:18; Ex. 13, Muhammad Dep. 104:3-106:25, 139:8-140:9, 183:24-185:1.  And BIE is taking steps relating to its compliance with Section 504 and addressing the needs of the student plaintiffs.  Ex. 1, Dearman Dep. 98:12-99:3, 168:25-169:5.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Where claims call for judicial review under the APA, "summary judgment is an appropriate mechanism for deciding the legal question" presented.  *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985).

## ARGUMENT

## I.     COUNTS I AND II ARE NOT ACTIONABLE UNDER THE APA.

The APA enables a "reviewing court" either to "compel agency action unlawfully withheld or unreasonably delayed[,]" 5 U.S.C. § 706(1) (Count I), or to "hold unlawful and set

3

aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" 5 U.S.C. § 706(2) (Count II).  The APA confines judicial review to a cognizable final "agency action" that causes actual harm and circumscribes the type of relief that the reviewing court can enter: it can "compel" or "set aside" discrete acts—nothing more. Plaintiffs disregard each limitation.

## A.  Plaintiffs Do Not Challenge a Cognizable "Agency Action."

Plaintiffs broadly attack years of alleged failures to properly administer HES, what they loosely describe as BIE's "failure to take action required to provide basic education" (Count I) and "failure to provide basic education" (Count II).  Counts I and II thus challenge purported systemic failures in the school's administration.  *See* TAC ¶¶ 47-192, 207-256.  The TAC does not seek judicial review of BIE's failure to issue a particular "rule, order, license, sanction, relief, or the equivalent" type of discrete governmental act.  5 U.S.C. § 551(13).  Nor can the TAC fairly be read to challenge the lawfulness of affirmative, discrete acts.  Plaintiffs recite a list of grievances and refer to BIE regulations, but in fact challenge countless logistical decisions (or omissions) across a broad swath of categories that have taken place over an unspecified period of time concerning the "administration of [HES]."  TAC ¶ 251.

Preliminarily, Count II does not properly state a claim.  Under § 706(2), Plaintiffs must identify some "discrete agency action[]" that the agency has in fact taken and that they seek to set aside by showing that the action was arbitrary or capricious or otherwise unlawful.  *Norton v. S. Utah Wilderness All.* ("*SUWA*"), 542 U.S. 55, 61-62 (2004).  Because the gravamen of Plaintiffs' claim, *see* TAC ¶ 252 (incorporating ¶ 239 by reference), is the alleged pervasive failure to act, rather than "specific, affirmative agency action" that must be set aside, the claim *only* could arise under § 706(1).  *Sheldon v. Vilsack*, 538 F. App'x 644, 649 n.3 (6th Cir. 2013); *cf. John v. United States*, 720 F.3d 1214, 1228 n.86 (9th Cir. 2013).

In any event, because Plaintiffs seek wholesale improvement of the school under the APA, both Counts I and II fail because they do not challenge a cognizable agency action.  The APA defines "agency action" as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]"  5 U.S.C. § 551(13); *see also id.* § 706.

4

1    Because these statutorily enumerated categories share the "same characteristic of discreteness[,]"

2    the Supreme Court has made clear that APA review is limited to "circumscribed, discrete agency

3    actions[.]"  *SUWA*, 542 U.S. at 62-63.  Put another way, a plaintiff cannot use the APA either

4    to bring a generalized challenge to an agency's operations or to seek broad, programmatic relief.

5    *See id.* at 64-65; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990).

6         A plaintiff cannot bring APA claims that "challenge an entire program"—in this case, a

7    school's entire operation—"by simply identifying specific allegedly-improper final agency

8    actions within that program[.]"  *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000) (en banc).

9    The Supreme Court made this point in *Lujan*.  There, a group attempted to challenge a number

10   of failures by the agency in administering a government program—including the failure to revise

11   land use plans, submit recommendations to Congress, and provide adequate environmental

12   impact statements.  *See Lujan*, 497 U.S. at 891.  The Court held the claim was unreviewable under

13   the APA, no matter how often the agency had repeated the alleged failures.  *Id.*  The Court in

14   *SUWA* reiterated its rejection of programmatic challenges, holding that challenges to across-

15   the-board deficiencies in legal compliance lack the requisite specificity.  542 U.S. at 64-66.

16        In light of *Lujan* and *SUWA*, lower courts have consistently rejected APA suits

17   predicated on aggregated claims that merely highlight an agency's general deficiencies to comply

18   with statutory or regulatory obligations.  *See, e.g., City of New York v. U.S. Dep't of Def.*, 913 F.3d

19   423, 433 (4th Cir. 2019) (rejecting APA suit consisting of "an aggregation of many small claims"

20   relating to agency's conceded failure to comply with reporting obligations); *Veterans for Common*

21   *Sense v. Shinseki*, 678 F.3d 1013, 1027-30 (9th Cir. 2012) (en banc) (rejecting APA suit

22   complaining of agency delay in the processing of claims for benefits and noting that, while

23   review of a delay claim in an individual case might be available, such review could not be

24   extended to systemic delay because such an "approach would have the federal courts as virtually

25   continuing monitors of the wisdom and soundness of Executive action" (citation omitted)); *Nev.*

26   *Ass'n of Ctys. v. Dep't of Interior*, No. 3:13-cv-712-MMD, 2015 WL 1130982, at *2-*4 (D. Nev.

27   Mar. 12, 2015) (rejecting challenge to failure to properly manage wild horses and burros under

28   the Wild Horses Act because the "many individual actions" identified in the complaint merely

exemplified the alleged flaws in the program that plaintiffs wanted to correct), *aff'd*, 686 Fed. App'x 407 (9th Cir. 2017).

Under this well-established precedent, Plaintiffs' litany of the alleged "flaws" concerning the administration of HES—"consisting principally of the many individual actions referenced in the complaint, and . . . actions yet to be taken as well—cannot be laid before th[is] court[ ] for wholesale correction under the APA[.]" *Sierra Club*, 228 F.3d at 567-68 (citing *Lujan*, 497 U.S. at 892-93); *accord Defs. of Wildlife v. Flowers*, No. 02-CV-195, 2003 WL 22143270, at *1-*2 (D. Ariz. Aug. 18, 2003), *aff'd*, 414 F.3d 1066 (9th Cir. 2005). Based on the TAC, there can be no doubt that Plaintiffs challenge how BIE administers the school across almost all operational programs. Their request for the Court to enter broad relief measured in qualitative terms such as "sufficient" or "appropriate," *infra* n. 1, underscores the true nature of their claims as Plaintiffs seek not to compel or set aside discrete agency actions but rather wholesale correction of the school, *see City of New York*, 913 F.3d at 434. Plaintiffs' Response to Defendants' First Set of Interrogatories further reiterates the programmatic nature of their APA claims. *See Ex. 16.* Plaintiffs state that "[t]he Complaint challenges *longstanding* and *systemic* failures to provide basic general education" and the "incidents, actions, or omissions [alleged in the TAC] are provided as *examples only.*" Ex. 16 at 2-3 (emphases added); *see also id.*, Ex. A at 1 ("All student Plaintiffs and NADLC seek systemic relief as set forth more fully in the Complaint.").

A challenge to the longstanding and systemic failure to provide education in compliance with regulations is neither "circumscribed" nor "discrete." *SUWA*, 542 U.S. at 62-63; *Veterans for Common Sense*, 678 F.3d at 1027-30. Claims such as those presented in Counts I and II are not cognizable under the APA because, although "[c]ourts are well-suited to reviewing specific agency decisions, such as rulemakings, orders, or denials[,]" they are "woefully ill-suited . . . to adjudicate generalized grievances asking [courts] to improve an agency's performance or operations." *City of New York*, 913 F.3d at 431; *see also Friends of the Earth v. U.S. Dep't of Interior*, 478 F. Supp. 2d 11, 25 (D.D.C. 2007) (noting that in the absence of any discrete action to review, courts risk "embarking on the kind of wholesale, programmatic review of general agency conduct for which courts are ill-suited, and for which they lack authority").

In such cases, "courts would be forced either to enter a disfavored 'obey the law' injunction, or to engage in day-to-day oversight of the executive's administrative practices"—"alternatives" which Plaintiffs pursue in this case and which "are foreclosed by the APA, and rightly so." *City of New York*, 913 F.3d at 431 (internal citation omitted); *accord Del Monte Fresh Prod. N.A., Inc. v. United States*, 706 F. Supp. 2d 116, 119 (D.D.C. 2010). Day-to-day oversight is especially foreclosed in the educational context where the Supreme Court has "cautioned that courts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 208 (1982) (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973)).

Across-the-board grievances concerning a government program, such as the administration of schools, do not belong in a courtroom; rather, they should be directed towards "the offices of the [relevant agencies] or the halls of Congress, where programmatic improvements are normally made." *Lujan*, 497 U.S. at 891. "By leaving programmatic decisions *and relief* to the two political branches of government . . . the appropriate deference to the separation of powers vital to our system of government is properly respected." *Sierra Nev. Forest Prot. Campaign v. Rey*, 573 F. Supp. 2d 1316, 1328 (E.D. Cal. 2008) (emphasis added), *aff'd in part, rev'd sub nom. Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011).

If Plaintiffs' APA claims were allowed to proceed, the Court necessarily would be involved in the day-to-day operation of HES and called upon to evaluate hiring and retention efforts, as well as the adequacy of handbooks, textbooks, field trips, curricula, disciplinary procedures, and instructional materials. Congress has foreclosed such involvement and, thus, BIE's motion on Counts I and II should be granted.

**B. The APA Does Not Authorize Plaintiffs' Requested Relief.**

In enacting the APA, Congress replaced the courts' traditional equitable powers with two statutory remedies. *See SUWA*, 542 U.S. at 63; *see also Hinck v. United States*, 550 U.S. 501, 506 (2007) (explaining that equitable relief may not be awarded when Congress has provided for a different remedy in a "precisely drawn, detailed statute" (citation omitted)); *Forest Guardians v.*

*Babbitt*, 174 F.3d 1178, 1188 n.14 (10th Cir. 1999) ("5 U.S.C. § 706 . . . strips courts of their traditional tools of equity").  The APA authorizes a Court to "compel" action—*i.e.*, issue an order requiring an agency  to take a legally required discrete action, 5 U.S.C. § 706(1)—or to "set aside" action—*i.e.*, issue an order vacating an unlawful discrete act or remanding to the agency for further consideration, *id.* § 706(2).

In seeking to refashion the entire administration of HES, *see* TAC Request for Relief ("Relief") ¶¶ 3, 4,[2] Plaintiffs' requested relief does not conform to a discrete duty as necessary to support a § 706(1) claim.  Specifically, the requested relief does not seek to compel a "precise, definite act" that contains an "unequivocal command" about which the agency has "no discretion what[so]ever," *SUWA*, 542 U.S. at 63 (citations omitted), and that "could traditionally have been enforced through a writ of mandamus." *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010).[3]  Plaintiffs not only fail to seek to compel or set aside *specific* actions, but also concede that "the nature of the relief requested" is *not* "limited to addressing particular incidents, action, or omissions by Defendants[,]" Ex. 16, Pls. Interrog. Response at 5. The relief instead is designed to redress alleged "systemic failures [by Defendants] . . . to fulfill their statutory and regulatory obligations." *Id.* at 3.

Even if BIE has failed to operate the school in compliance with its regulations, acceding to Plaintiffs' request that the Court "compel compliance with [its regulations] and refashion

---

[2] Plaintiffs seek a declaration "setting forth the duties and obligations of [BIE] with respect to *the delivery of education* to students at [HES]," and an injunction requiring the agency (and even "successors in office and assigns/assignees") to provide, among other things, "access to": (1) "an *adequate* public education"; (2) "education provided by *sufficient* numbers of *qualified* teachers and related services providers"; (3) "education that is *culturally relevant* based on the unique culture and tradition of the Havasupai tribe"; (4) "instruction *appropriate* to students' native language"; (5) "education that is *properly governed* by a school board appointed by the Tribal Council"; and (6) "*appropriate* assessment of student achievement[.]"  TAC Relief ¶¶ 2-3 (emphasis added). Plaintiffs also want a declaration that BIE has violated its own regulations, the "appointment of an independent third party to receive and respond to complaints from parents or tribal officials[,]" a "permanent injunction" prohibiting future unlawful conduct—including "policies and practices." *Id.* ¶¶ 1-2, 3, 4.

[3] In addition, Congress has not set forth any meaningful standards in the Indian Education Act, 25 U.S.C. §§ 2000, *et seq.*, to determine what is "adequate," "sufficient," or "appropriate." Therefore, under *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) and its progeny, Plaintiffs' claims arguably are not reviewable under the APA. *See id.* at 410 (APA bars judicial review of agency decision where, among other circumstances, "statutes are drawn in such broad terms that in a given case there is no law to apply" (citation omitted)).

8

Federal Defendants' management" of HES would be contrary to the APA. *Nev. Ass'n*, 2015 WL 1130982, at \*2-\*4; *cf. Ctr. for Biological Diversity v. U.S. Dep't of Hous. & Urban Dev.*, 241 F.R.D. 495, 500, 501 (D. Ariz. 2006) (denying request for declaration that defendants were violating federal law and for injunction compelling defendants to change their practices). The APA forecloses such follow-the-law injunctions. *See City of New York*, 913 F.3d at 431; *Forest Guardians*, 174 F.3d at 1188 n.14.

Further, by miring the Court in the myriad of decisions stemming from the day-to-day operation of HES, Plaintiffs' requested relief would subvert the framework Congress created in the APA to review *discrete* acts. *See Cobell v. Norton*, 392 F. 3d 461, 475 (D.C. Cir. 2004). The Court therefore should decline Plaintiffs' improper invitation "to take on potentially extensive supervision of [HES]." *NRDC v. EPA*, 966 F.2d 1292, 1300 (9th Cir. 1992).

In sum, in seeking wholesale relief to enforce compliance with BIE regulations at HES— the crux of Counts I and II— Plaintiffs seek to contravene Congress's clear intent that the APA should not employed as a vehicle for effectuating broad programmatic relief. *Pub. Lands for the People, Inc. v. USDA*, 733 F. Supp. 2d 1172, 1183 (E.D. Cal. 2010) ("[T]he APA does not permit courts to oversee agencies wholesale."). Although a "case-by-case approach" where a plaintiff must challenge single actions may be "frustrating" when "'across-the-board protection' is sought by a plaintiff . . . this is the traditional, and remains the normal, mode of operation of the courts." *RCM Technologies, Inc. v. DHS*, 614 F. Supp. 2d 39, 45 (D.D.C. 2009) (citation omitted).

Counts I and II identify "the sort of public policy problem that often requires reallocating resources, developing new administrative systems, and working closely with partners across[, and outside of the] government. Solving it will likely require expertise" across different areas and the development of new partnerships. *City of New York*, 913 F.3d at 433. BIE shares Plaintiffs' goal of better opportunities and services for *all* Havasupai children and is committed to undertaking the time-consuming process necessary to solve the deep-rooted problems at HES with the active involvement of the Tribe, which is not a party to this litigation. Nevertheless, the TAC fails to set forth a cognizable claim as "the sort of 'broad programmatic' undertaking"

Plaintiffs seek is that "for which the APA has foreclosed judicial review." *Id.* (quoting *SUWA*, 542 U.S. at 64).

## II.   COUNT IV FAILS BECAUSE PLAINTIFFS HAVE NOT IDENTIFIED A REASONABLE ACCOMMODATION BIE HAS FAILED TO PROVIDE.

Count IV alleges that "Student Plaintiffs Impacted by Childhood Adversity" are "individual[s] with a disability" under Section 504 and that, "solely by reason of their unaddressed exposure" to complex trauma and adversity, they "have been denied meaningful access to public education." TAC ¶¶ 271-77.[4] Plaintiffs contend that the four allegedly disabled students who have been exposed to complex trauma and adversity—only two of whom are eligible for enrollment at HES during the next academic year (*i.e.*, Taylor P. and Moana L.), *see* Defs.' Stmt. of Material Facts ("Defs.' SOF") ¶¶ 10, 11—"require a *system* that is responsive to and capable of addressing the impact of complex trauma." TAC ¶ 278. The "system" that Plaintiffs contend is required "includ[es], but [is] not limited to: (1) comprehensive and ongoing training, coaching, and consultation for all adult staff regarding trauma-informed and culturally sensitive strategies" for education; "(2) implementation of restorative practices to prevent, address, and heal after conflict"; and (3) "adoption of [culturally sensitive] practices and interventions to enhance student wellness[,]" TAC Relief ¶ 3i.

For purposes of this motion, BIE does not dispute that the four student plaintiffs have been diagnosed with trauma-related disorders that substantially limit one or more major life activities. The question is whether Section 504 "require[s]" HES to establish a school-wide "system" comprised of transformative and emerging practices in the field of education to address trauma-related disorders of specific students and, relatedly, whether BIE's failure to establish such a "system" violates Section 504. TAC ¶ 278. Because the requested accommodation is a developing "system" that would require a fundamental and substantial

---

[4] The TAC refers to a group identified as "Student Plaintiffs Impacted by Childhood Adversity." Although not entirely clear, presumably the members of that group are the student plaintiffs in Count IV. To that effect, the remaining Count IV Plaintiffs are Stephen C., Durell P., Taylor P., Moana L., and the Native American Disability Law Center. As discussed below, the Court lacks subject-matter jurisdiction over *all* claims raised by Stephen C. and Durell P. because they have completed their eighth grade and are not eligible to receive educational services at HES in the next academic year. *See infra* at 16.

modification of HES and impose an undue burden on BIE, Plaintiffs have failed to meet their burden under Section 504.

"[T]he focus of the prohibition in § 504 [of the Rehabilitation Act] is 'whether disabled persons were denied meaningful access to state-provided services.'" *Mark H. v. Lemahieu*, 513 F.3d 922, 937 (9th Cir. 2008) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996)). To ensure such access, schools must "make *reasonable* modifications in policies, practices, or procedures when the modifications are *necessary* to avoid discrimination on the basis of disability, *unless* the [school] can demonstrate that making the modifications would fundamentally alter the nature of the service[s], program, or activity." 28 C.F.R. § 35.130(b)(7)(i) (emphases added) (implementing Title II of the Americans with Disabilities Act ("ADA")); *accord Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999).[5] "[Section] 504 does not require 'substantial adjustments in existing programs beyond those necessary to eliminate discrimination against otherwise qualified individuals[.]'" *Mark H.*, 513 F.3d at 937 (citation omitted). It "require[s] *reasonable* modifications *necessary* to correct for instances in which qualified disabled people are prevented from enjoying 'meaningful access to a benefit because of their disability.'" *Id.* (emphases added) (citation omitted). The denial of such "reasonable accommodation" violates Section 504. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1096 (9th Cir. 2010).

Plaintiffs must show "the existence of a reasonable accommodation that would enable [the disabled students with trauma-related disorders] to meet the educational institution's essential eligibility requirements." *Zukle*, 166 F.3d at 1047. A requested accommodation that would require a fundamental or substantial modification of the school's services fails to satisfy Plaintiffs' burden to show that BIE denied a *reasonable* accommodation otherwise required by Section 504. *See id.* Such is the case here as the requested accommodation would substantially modify the school's services. *See* Defs.' SOF ¶¶ 4-9.

Requiring HES to implement "trauma-informed and culturally sensitive strategies" or "restorative practices to prevent, address, and heal after conflict[,]" TAC Relief ¶ 3i, does not

---

[5] The "same analysis" is applied "to claims brought under both" the ADA and Section 504. *Zukle*, 166 F.3d at 1045 n. 11.

represent a "reasonable accommodation" in the present circumstances. Plaintiffs' ideas stem from aspirational, developing practices, as there is yet no established consensus as to the nature and scope of such practices or the extent to which they are necessary or can feasibly be adopted into existing school programs. Defs.' SOF ¶¶ 1-3. The models for trauma-informed schools, which are being implemented in a handful of schools across the country, currently are "research-based and emerging." *Id.* ¶ 2, 3. In other words, no uniformly agreed-upon standards govern how a school should provide a trauma-informed educational setting. *Id.* ¶ 1-3. Plaintiffs' experts concede that an evidence-based trauma informed school does not yet exist. *Id.* ¶ 3.

If Count IV were allowed to proceed, the Court in effect would find that Section 504 requires schools to adopt trauma-informed and culturally sensitive strategies to address the unfortunate reality that thousands, if not millions, of children across the country are invariably exposed to complex trauma and adversity. No court has found that Section 504 requires a school to provide an accommodation such as Plaintiffs seek here. *See, e.g., Zukle*, 166 F.3d at 1048. To the contrary, a court presented with the same issue explicitly refused to hold as much. *See P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1143 (C.D. Cal. 2015) ("Without opining as to whether Plaintiffs' proposed program" of establishing "districtwide and school-wide policies and practices that address trauma and its effects" "might be beneficial or desirable as a policy matter, the Court concludes that it is not appropriate to order the relief sought at this time." (citation omitted)).[6]

Plaintiffs have identified only two students with specific trauma-related disorders who are eligible to receive educational services at HES in the next academic year and who need an accommodation to address those disorders: Taylor P. and Moana L. Plaintiffs were required to conduct a "fact-specific, individualized analysis of the disabled individual[s'] circumstances[,]" *Hamamoto*, 620 F.3d at 1098, *and* identify "'reasonable modifications' which should be implemented" to address the needs arising from the specific trauma-related disorders of the

---

[6] Unlike here, where Plaintiffs seek system-wide relief on behalf of only a few students, in *P.P.*, a putative class sought virtually identical system-wide relief to assert Section 504 claims on behalf of *all* students in a school district allegedly exposed to trauma and adversity. 135 F. Supp. at 1129-30. Unsurprisingly, system-wide relief is often sought in the context of class actions. *See id.*; *see also Crowder*, 81 F.3d at 1485. No such class exists here.

disabled students, *Crowder*, 81 F.3d at 1485.  Yet, rather than seeking specific accommodations designed to meet these particular students' educational needs in the context of individualized education programs, Count IV seeks to have this Court hold that BIE violated federal law by failing to implement a cutting-edge and yet untested system of emerging practices that would require substantial and unduly burdensome adjustments to the school.  *See* Defs.' SOF ¶¶ 4-9. And to the extent Plaintiffs rely on the Report of Dr. Noshene Ranjbar, "Mental Health Needs Assessments for Four Students and Recommendations," to identify specific modifications that BIE must provide for Taylor P. and Moana L., such modifications are not "reasonable" under Section 504, as they would impose "undue financial and administrative burdens" on HES and BIE.  *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 412 (1979); *see* Defs.' SOF ¶¶ 7-9.  Because Plaintiffs' requested accommodation is not reasonable, BIE's motion should be granted as to Count IV.

## III.   PLAINTIFFS CANNOT PREVAIL ON COUNTS V AND VI BECAUSE 34 C.F.R. §§ 104.32 AND 104.36 DO NOT APPLY TO INTERIOR.

Counts V and VI allege that Defendants have violated two Department of Education ("DOE") regulations implementing Section 504: 34 C.F.R. § 104.32 on "[l]ocation and notification," and 34 C.F.R. § 104.36 on "procedural safeguards."  These regulations do not apply to federal agencies like BIE.

As originally enacted in 1973, Section 504 provided in relevant part that no "qualified handicapped individual . . . shall . . . be subjected to discrimination under any program or activity receiving Federal financial assistance."  Act to Replace the Vocational Rehabilitation Act, Pub. L. No. 93-112, § 504, 87 Stat. 355, 394.  Recognizing that the statute did not apply to federal agencies, Congress amended the law in 1978 to prohibit such discrimination under any program or activity receiving Federal financial assistance "*or under any program or activity conducted by any Executive agency.*"  Act to Amend the Rehabilitation Act of 1973, Pub. L. No. 95-602, § 119, 92 Stat. 2955, 2982, *codified in* 29 U.S.C. § 794(a) (emphasis added).  Accordingly, the "1978 amendment . . . subject[ed] federal agencies to section 504's nondiscrimination requirement." *Doe v. Attorney Gen. of the U.S.*, 941 F.2d 780, 785 (9th Cir. 1991), *overruled on other grounds by Lane v. Pena*, 518 U.S. 187 (1996); *accord Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 302 (5th Cir. 1981).

The DOE regulations relied upon in Counts V and VI are contained in 34 C.F.R. Part 104, which by its own terms applies only "to each recipient of Federal financial assistance from the Department of Education and to the program or activity that receives such assistance." 34 C.F.R. § 104.2.  The regulations thus govern, for example, Section 504 implementation by local educational agencies receiving financial assistance from DOE, but do not apply to programs operated or conducted by other federal agencies.  *See U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 612 (1986)( "program[s]" or "[a]ctivities wholly carried out by the United States with Federal funds . . . cannot fairly be described as receiving Federal 'assistance'" for purposes of Section 504 and other statutes like Title VI (42 U.S.C. § 2000d) and Title IX (20 U.S.C. § 1681)) (quoting 110 Cong. Rec. 13380 (1964)); *accord Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1213 (9th Cir. 1984); *Coleman v. Darden*, 595 F.2d 533, 538-39 (10th Cir. 1979) (same).

Further, Congress did not authorize DOE to unilaterally promulgate regulations that bind other executive agencies.  In fact, Congress authorized each agency to "promulgate regulations that implement the requirements concerning treatment of disabled individuals contained in § 504," *Mark H.*, 513 F.3d at 929, thereby granting each agency "substantial leeway to explore areas in which discrimination against the handicapped pose[s] particularly significant problems and to devise regulations to prohibit such discrimination[,]" *Alexander v. Choate*, 469 U.S. 287, 304 n. 24 (1985).

DOI's regulations implementing Section 504 are located in 43 C.F.R. Part 17.  In those regulations, the agency maintains the dichotomy between regulations governing "Nondiscrimination on the Basis of Handicap in Programs or Activities *Conducted by the Department of the Interior*," *see* 43 C.F.R. §§ 17.501-17.570 ("Subpart E"), and those governing "Nondiscrimination on the Basis of Handicap" in *other* programs or activities that are not conducted by DOI but receive Federal financial assistance, *see id.* §§ 17.200-17.280 ("Subpart B").  While Subpart E applies to BIE-operated schools, Subpart B applies to non-BIE-operated schools that receive federal funds.  HES is an example of a program or activity "conducted and/or administered and/or maintained by" BIE, *id.* § 17.502, under Subpart E.  A tribal-operated school is an example of a program or activity receiving federal funds under Subpart B.

Although Subpart E does not refer to DOE regulations, Subpart B does in fact require compliance "with the Section 504 requirements promulgated by the Department of Education at 34 CFR part 104, subpart D." 43 C.F.R. § 17.220; *see id.* § 17.201 (applying Subpart B to a "recipient of Federal financial assistance from the Department of the Interior and to each program or activity that receives such assistance[,]" such as tribally operated schools). Thus, whereas a tribally operated school is subject to DOE's regulations pursuant to Subpart B, a BIE-operated school like HES is not. *Compare* 43 C.F.R. § 17.201 *with id.* § 17.502.

Plaintiffs' APA claims in Counts V and VI at best amount to a "facially impracticable suggestion . . . that one agency of the Government can acquire the power to direct other agencies by simply claiming that power in its own regulations[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992). Because these regulations could only be enforced through Section 504's implied right of action, *Mark H.*, 513 F.3d at 939, for Plaintiffs to prevail this Court would need to construe the statute as authorizing them to do what DOE cannot: unilaterally bind and sue BIE to enforce its own regulations. *Def. Supplies Corp. v. U.S. Lines Co.*, 148 F.2d 311, 312-13 (2d Cir. 1945) (noting the United States cannot sue itself).[7] Tellingly, there is no precedent for Plaintiffs' claim. BIE is not aware of any case in which someone has sued, let alone successfully, a federal agency to enforce the DOE regulations.[8] BIE is thus entitled to summary judgment.

## IV. THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE CLAIMS OF DURELL P. AND STEPHEN C.

Each plaintiff must establish that he or she has standing to sue "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs., Inc.,* 528 U.S. 167, 185 (2000). And "[w]hen evaluating whether [the standing] elements are present, we must look at the facts 'as they exist at the time the complaint was filed.'" *Am. Civil Liberties Union of Nev. v. Lomax*, 471

---

[7] Private enforcement of an agency rule against another agency under these circumstances could undermine the President's authority under the Vesting and Take Care Clauses of Article II. *See* U.S. Const. art. II, § 1, cl. 1; *id.* cl. 3; *see also Myers v. United States*, 272 U.S. 52, 135 (1926).

[8] Cases involving these regulations concern suits against local educational agencies. *See, e.g., Mark H.*, 513 F.3d at 938-39; *Garcia v. Capistrano Unified Sch. Dist.*, No. SA CV 16-2111-DOC (JCGx), 2018 WL 6017009, at *8 (C.D. Cal. Mar. 30, 2018); *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. at 1116-17.

F.3d 1010, 1015 (9th Cir. 2006). Similarly, Article III of the Constitution requires "a live case or controversy . . . at all stages of review. Otherwise, the case is moot and must be dismissed." *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007) (citations omitted). The Court lacks subject-matter jurisdiction over the claims of Durell P. and Stephen C. because they do not present a case or controversy for purposes of Article III. Specifically, Durell P. lacks standing to bring his claims and Stephen C.'s claims are moot.

The operative complaint in this case was filed on August 10, 2018. The TAC makes clear that, as of that date, Durell P. had already completed the eighth grade and thus was no longer eligible to receive educational services at HES. Defs.' SOF ¶ 10. Indeed, Durell P. is now pursuing options outside of the Havasupai reservation. *Id.* In light of the Court's earlier dismissal of former students for lack of standing, *see Stephen C. v. BIE*, 2018 WL 1871457, at \*2-\*3 (Mar. 29, 2018), the Court should find that Durell P. also lacks standing "to seek injunctive or declaratory relief because [he] 'would not stand to benefit from' such relief." S*layman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047-48 (9th Cir. 2014) (citation omitted). Alternatively, because he is no longer at HES and no longer eligible to enroll at HES, "his claims for prospective relief became moot because he could no longer benefit from such relief." *Id.* (citing *Walsh v. Nev. Dep't of Human Res.,* 471 F.3d 1033, 1037 (9th Cir. 2006)).

That is also the case for Stephen C. Although Stephen C. was enrolled at HES at the time of the TAC's filing, *see* TAC ¶ 8, he recently completed eighth grade as of May 23, 2019. Defs.' SOF ¶ 11. Accordingly, Stephen C.'s claims are also moot. *See Slayman*, 765 F.3d at 1048. In both instances, there is no Article III case or controversy and the Court would be issuing an impermissible advisory opinion. Therefore, BIE is entitled to summary judgment on the claims of both Stephen C. and Durell P.

## CONCLUSION

For the foregoing reasons, this Court should grant BIE's motion.

Dated: May 31, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

/s/  *Cesar A. Lopez-Morales*
LISA A. OLSON, D.C. Bar No. 384266
CAROL FEDERIGHI, TX Bar No. 06872950
CESAR A. LOPEZ-MORALES,
    MA Bar No. 690545
CRISTEN C. HANDLEY, MO Bar No. 69114
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone: (202) 305-8550
Facsimile: (202) 616-8460
Email: cesar.a.lopez-morales@usdoj.gov