Alexis DeLaCruz (SBN 031273)
adelacruz@nativedisabilitylaw.org
NATIVE AMERICAN DISABILITY
LAW CENTER
905 W. Apache St.
Farmington, NM 87401
Telephone: 505.566.5880

Mark Rosenbaum (*pro hac vice*)
mrosenbaum@publiccounsel.org
Kathryn Eidmann (*pro hac vice*)
keidmann@publiccounsel.org
Jesselyn Friley (*pro hac vice*)
jfriley@publiccounsel.org
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: 213.385.2977

Maria Martinez-Sánchez (*pro hac vice*)
mmartinez@aclu-nm.org
AMERICAN CIVIL LIBERTIES UNION
of NEW MEXICO
1410 Coal Avenue SW
Albuquerque, NM 87104
Telephone: 505.266.5915

Bradley S. Phillips (*pro hac vice*)
Brad.Phillips@mto.com
Bryan H. Heckenlively (*pro hac vice*)
Bryan.Heckenlively@mto.com
Emily Curran-Huberty (*pro hac vice*)
Emily.Curran-Huberty@mto.com
Allison Day (*pro hac vice*)
Allison.Day@mto.com
Alison Karol (*pro hac vice*)
Alison.Karol@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071
Telephone: 213.683.9100

Judith M. Dworkin (SBN 010849)
Judith.Dworkin@SacksTierney.com
David C. Tierney (SBN 002385)
David.Tierney@SacksTierney.com
SACKS TIERNEY P.A.
4250 N. Drinkwater Blvd., 4th Floor
Scottsdale, AZ 85251-3693
Telephone: 480.425.2600

Tara C. Ford (*pro hac vice*)
taraford@law.stanford.edu
William S. Koski (*pro hac vice*)
bkoski@law.stanford.edu
Stanford Law School
MILLS LEGAL CLINIC
YOUTH AND EDUCATION LAW
PROJECT
559 Nathan Abbott Way
Stanford, CA 94305-8610
Telephone: 650.725.8581

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen C., a minor, by Frank C., guardian ad litem, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>Bureau of Indian Education, et al.,<br><br>*Defendants*. | No. 3:17-cv-08004-SPL<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**[REDACTED]** |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

LEGAL STANDARD ......................................................................................... 3

ARGUMENT ...................................................................................................... 3

I.   DEFENDANTS HAVE INDISPUTABLY FAILED TO ACT TO IMPLEMENT BASIC EDUCATIONAL STANDARDS AT HES IN VIOLATION OF 5 U.S.C. § 706(1) ................................................................. 3

    A.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.20 ................. 4

    B.   Defendants Have Failed to Act to Implement 25 C.F.R. §§ 36.22-.23 .......... 6

    C.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.40 ................. 7

    D.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.41 .................. 8

    E.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.42 .................. 9

    F.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.43 .................. 9

II.   DOI, THROUGH BIE, HAS INDISPUTABLY DISCRIMINATED AGAINST STUDENTS WITH DISABILITIES IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 ................................... 9

    A.   Several Student Plaintiffs Are Individuals with Disabilities ........................ 11

    B.   HES Denies Students with Disabilities Meaningful Access to Education ........................................................................................... 12

        1.   HES Lacks Adequate Personnel, Space, and Support to Provide Meaningful Access to Education .......................................... 13

        2.   HES Unlawfully Excludes Students with Disabilities from School ................................................................................... 15

        3.   BIE Fails to Provide Reasonable Accommodations to Students at HES with Disabilities Resulting from Trauma ............................ 16

III.   DOI, THROUGH BIE, INDISPUTABLY FAILS TO COMPLY WITH THE DOE REGULATIONS THAT IMPLEMENT SECTION 504 .................... 17

    A.   DOI, Through BIE, Violates 34 C.F.R. § 104.32, Mandating "Location and Notification" of Students with Disabilities at HES .............. 18

    B.   DOI, Through BIE, Violates 34 C.F.R. § 104.36 Mandate of Procedural Safeguards for HES Students with Disabilities .......................... 19

1

## **TABLE OF CONTENTS**
### **(Continued)**

Page

CONCLUSION................................................................................................................ 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69,*
    815 F.3d 1195 (9th Cir. 2016).................................................................. 13, 17

*Alexander v. Choate,*
    469 U.S. 287 (1985) ...................................................................... 10, 13

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ............................................................................. 3

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ............................................................................. 3

*Christopher S. ex rel. Rita S. v. Stanislaus Cty. Office of Educ.,*
    384 F.3d 1205 (9th Cir. 2004)......................................................... 15, 16

*Crowder v. Kitagawa,*
    81 F.3d 1480 (9th Cir. 1996).............................................................. 10

*J.S., III ex rel. J.S. Jr. v. Houston Cty. Bd. of Educ.,*
    877 F.3d 979 (11th Cir. 2017).............................................................. 15

*KRL v. Moore,*
    384 F.3d 1105 (9th Cir. 2004)............................................................... 3

*Mark H. v. Lemahieu,*
    513 F.3d 922 (9th Cir. 2008).................................................... 10, 13, 15

*Norton v. S. Utah Wilderness Alliance (SUWA),*
    542 U.S. 55 (2004) ............................................................................. 4

*Olmstead v. L.C. ex rel. Zimring,*
    527 U.S. 581 (1999) ........................................................................... 15

*Peter P. v. Compton Unified Sch. Dist., et al.,*
    135 F. Supp. 3d 1098 (C.D. Cal. 2015) ................................................ 11

*Sacks v. Office of Foreign Assets Control,*
    466 F.3d 764 (9th Cir. 2006).......................................................... *passim*

*Sch. Bd. of Nassau Cty., Fla. v. Arline,*
    480 U.S. 273 (1987) ...................................................................... 9, 10

1
2

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

3

*Taylor v. List,*
   880 F. 2d 1040 (9th Cir. 1989)...................................................................... 3

4

5

*Vietnam Veterans of Am. v. Cent. Intelligence Agency,*
   811 F.3d 1068 (9th Cir. 2016)...................................................................... 4

6

*Weinreich v. L.A. Metro. Transp. Auth.,*
   114 F.3d 976 (9th Cir. 1997)...................................................................... 10

7

8

**FEDERAL STATUTES**

9

20 U.S.C. § 1401 ...................................................................................... 11

10

29 U.S.C. 794 .......................................................................................... 9

11

42 U.S.C. § 12102 .................................................................................... 11

12

**FEDERAL RULES**

13

Fed. R. Civ. P. 56 ...................................................................................... 3

14

**FEDERAL REGULATIONS**

15

16

25 C.F.R. § 36.20 ............................................................................ 4, 5, 7

17

25 C.F.R. § 36.22 ............................................................................... 4, 6

18

25 C.F.R. § 36.23 ...................................................................................... 6

19

25 C.F.R. § 36.40 ............................................................................... 7, 8

20

25 C.F.R. § 36.41 ............................................................................... 4, 8

21

25 C.F.R. § 36.42 ............................................................................... 8, 9

22

23

25 C.F.R. § 36.43 ...................................................................................... 9

24

25 C.F.R. § 39.2 ...................................................................................... 10

25

34 C.F.R. § 104.4 .................................................................................... 10

26

34 C.F.R. § 104.32 ............................................................................. 17, 18

27

34 C.F.R. § 104.33 .................................................................................... 13

28

1

## TABLE OF AUTHORITIES
### (Continued)

2

**Page(s)**

3   34 C.F.R. § 104.34 ................................................................................................................ 15

4   34 C.F.R. § 104.36 ................................................................................................................ 19

5   43 C.F.R. § 17.220 ................................................................................................................ 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION**

Pursuant to Fed. R. Civ. P. 56, Plaintiffs Stephen C., Anna D., Olaf D., Moana L., Durell P., Taylor P., and Freddy P. move for partial summary judgment against Defendants on Counts I, III, IV, V, and VI of the Third Amended Complaint.  This motion is supported by the below memorandum of points and authorities, the attached statement of facts, all declarations and exhibits thereto, and other material that may be presented to the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Bureau of Indian Education (BIE) admits that it does not meet numerous statutory and regulatory requirements governing the provision of education at Havasupai Elementary School (HES).  HES does not provide instruction in numerous required subjects. Students are rarely provided even minimal instruction in their native language, and their culture is not incorporated into other subjects.  The library is not open, staffed, or stocked. There are no enrichment opportunities, such as extracurricular activities.  And students with disabilities, including students impacted by trauma, are denied meaningful access to even the bare-bones education that other students receive at HES.  All of those failures defy binding and unambiguous statutes and regulations.

The documents produced in this case, the depositions of more than twenty witnesses, and Plaintiffs' uncontroverted expert reports reveal that many of the allegations raised in Plaintiffs' Third Amended Complaint (TAC) are not only substantiated, but are not subject to genuine dispute.  Indeed, discovery has conclusively established that:  (1)  Defendants have failed to implement numerous basic education standards required by the Code of Federal Regulations in violation of Section 706(1) of the Administrative Procedures Act; (2) The Department of the Interior (DOI), through BIE, has denied students with disabilities, including disabilities resulting from trauma, meaningful access to public education in violation of Section 504 of the Rehabilitation Act of 1973, and (3) DOI has failed to implement the U.S. Department of Education (DOE), Office of Civil Rights's (OCR) regulations regarding Section 504 at HES.  Plaintiffs are entitled to partial summary

1  judgment establishing Defendants' liability for these violations.

2  **BACKGROUND**

3      Student Plaintiffs Stephen C., Anna D., Olaf D., Moana L., Durell P., Taylor P., and

4  Freddy P. are current and former students at HES, and members of the Havasupai tribe.

5  Organizational Plaintiff Native American Disability Law Center (NADLC) advocates for

6  individuals with disabilities in a variety of settings, including schools.   Defendant BIE

7  operates HES, which serves students from kindergarten through eighth grade and is the only

8  school on the Havasupai reservation.   Like many Native American communities, the

9  Havasupai tribe has experienced historical trauma as its members were displaced from their

10  traditional lands.  Pl.'s Separate Statement of Material Facts (SOF) ¶ 93.  The school is one

11  of the lowest-performing in the country, with almost no students proficient in math, reading,

12  or writing on any recent standardized test.  SOF ¶ 34.  BIE Administrator Jim Hastings, as

13  well as other BIE witnesses, admitted that HES does not comply with numerous general and

14  special education regulations that are mandatory under federal law.  SOF ¶¶ 3-34; 74-119.

15      Many HES students, including four Student Plaintiffs,[1] have conditions that qualify

16  as disabilities under Section 504.  SOF ¶¶ 37, 46, 52 & 57.  Some of these disabilities result

17  from adverse childhood experiences and complex trauma.  SOF ¶¶ 40-41, 47, 53-54 & 58.

18      HES fails to identify its students with disabilities, much less address or accommodate

19  those disabilities.  *See* SOF ¶¶ 74-119.  Defendants have produced no written policies related

20  to providing special education, accommodating students with disabilities, or implementing

21  Section 504.  SOF ¶¶ 85, 89, 102 & 117.  BIE Director Tony Dearman admits that neither

22  HES nor BIE has any policies about Section 504, or, indeed, many policies at all.  SOF ¶ 85.

23      Discovery has confirmed that BIE's failures to provide both general and special

24  education at HES are systematic and, in many instances, beyond dispute.   Plaintiffs seek

25  partial summary judgment against BIE and DOI, as well as David Bernhardt, Tara Sweeney,

26  Tony Dearman, and Lolita Paddock in their official capacities (collectively, Defendants).

27

28  [1] Discovery has revealed two more Student Plaintiffs with disabilities.  *See infra* Sec. II.A.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on all or part of a claim. *See* Fed. R. Civ. P. 56(a). A court will grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To defeat summary judgment, the responding party must present admissible evidence sufficient to disprove any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial. *See id.*; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). The responding party cannot rely on mere allegations or denials contained in the pleadings, nor is it enough for that party to produce a mere "scintilla" of evidence. *Anderson*, 477 U.S. at 252. Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial. *See KRL v. Moore*, 384 F.3d 1105, 1110 (9th Cir. 2004).

**ARGUMENT**

Plaintiffs are entitled to partial summary judgment establishing liability under Counts I and III-VI of the TAC. First, there is no dispute that Defendants have failed to implement basic educational standards at HES, in violation of the Administrative Procedures Act (Count I). 5 U.S.C. § 706(1). Second, Defendant DOI, through BIE, has indisputably discriminated against students with disabilities, including disabilities resulting from the effects of trauma, in violation of Section 504 of the Rehabilitation Act (Counts III & IV). Third, DOI has indisputably failed to comply with the regulations that implement Section 504, which require identification of children with disabilities and procedural safeguards (Counts V & VI). Plaintiffs are entitled to summary judgment as to liability on these claims.

**I.    DEFENDANTS HAVE INDISPUTABLY FAILED TO ACT TO IMPLEMENT BASIC EDUCATIONAL STANDARDS AT HES IN VIOLATION OF 5 U.S.C. § 706(1)**

The Administrative Procedures Act provides that a court "*shall* . . . compel agency

action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis added). A court must compel agency action under this section where there is "'a specific, unequivocal command' placed on the agency to take a 'discrete agency action'" that the agency has failed to take. *Viet. Veterans of Am. v. Cent. Intelligence Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004)).

Here, there can be no dispute that BIE has failed to take numerous discrete actions with respect to HES that the agency is specifically and unequivocally required to take. 25 C.F.R. Part 36 contains comprehensive, binding regulations that set forth the content and minimum standards for the provision of basic education at BIE schools, including HES. SOF ¶¶ 1-2. These regulations are mandatory and have not been waived. SOF ¶ 4. They also set forth discrete actions that BIE *must* take, such as to offer instruction in specific content areas, *see, e.g.*, 25 C.F.R. §§ 36.22-23, or to "establish a textbook review committee composed of teachers, parents, and students, and school board members," § 36.41(a).

Defendants have simply failed to implement numerous components of the regulations set forth in 25 C.F.R., despite the fact that those regulations are binding and discrete. As Defendants' own witnesses repeatedly admitted, BIE is not in compliance with numerous specific regulatory mandates contained in 25 C.F.R. §§ 36.20, 36.22, 36.23, and 36.40-.43. BIE's failure to act to implement these regulations is undisputed, and Plaintiffs are entitled to summary judgment under 5 U.S.C. § 706(1).

### A.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.20

25 C.F.R. § 36.20 provides standards for "Minimum academic programs" in BIE schools. Section 36.20(b) requires that a school's "educational program shall include multi-culture and multi-ethnic dimensions," and, among other things, specifically mandates that "[t]he school's language arts program shall assess the English and native language abilities of its students and provide instruction that teaches and/or maintains both the English and the primary native language of the school population," § 36.20(b)(1); that "[t]he school program shall include aspects of the native culture in all curriculum areas," § 36.20(b)(2); and that "[t]he school program shall assess the learning styles of its students and provide instruction

based upon that assessment," § 36.20(b)(3).  Subsections (b)(1) and (b)(2) both require "local tribal approval" for language and culture educational programs, and Subsection (b)(3) requires that the "method for assessing learning styles shall be determined at the local level."

Section 36.20 mandates that BIE take discrete action to implement native language and culture programs and to assess student learning styles at BIE-operated schools, including HES.  Section 36.20 requires schools to take specific, discrete actions, including to "assess the . . . native language abilities" and "learning styles" of students and to obtain tribal approval for its native language and culture curriculum.  Section 36.20 repeatedly uses mandatory language—stating what the curriculum "*shall* include," or what content "*shall* be integrated."  *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 778 (9th Cir. 2006) ("use of the word 'shall' indicates a mandatory duty that is not subject to discretion."). Moreover, the BIE administrator "responsible for ensuring" HES's compliance with these regulations, Jim Hastings, has acknowledged that these regulations are mandatory, both as to BIE-operated schools generally and as to HES specifically.  SOF ¶¶ 3-4.

BIE has indisputably failed to act to implement multiple aspects of Section 36.20(b) at HES.  BIE does not assess the native language abilities of HES students.  SOF ¶ 5.  BIE does not provide instruction that "teaches and/or maintains . . . the primary native language" of HES students.  While HES has employed a native culture instructor since November 2018, that individual has not consistently offered either language or culture instruction, because his culture classes are frequently canceled so that he can "cover" general education classrooms in the absence of a fulltime, credentialed teacher.  SOF ¶¶ 6-8.  There have also been many occasions in the past when BIE has *not* employed a culture instructor at HES. SOF ¶ 6.  BIE thus fails to consistently provide native language instruction of any sort at HES, let alone instruction sufficient to teach or maintain the Havasupai language.  And the language instruction that *is* provided at HES has not been approved by the Havasupai Tribe, as the regulation expressly requires.  SOF ¶ 9.

Neither does the curriculum at HES "include aspects of the native culture in all curriculum areas."  25 C.F.R. § 36.20(b)(2).  As the current principal, Lolita Paddock,

affirmed, culture instruction at HES, when it is provided at all, is provided exclusively by the school's native culture instructor and is not incorporated into other areas of the curriculum.  SOF ¶ 10.  As with the school's language program, the native culture curriculum at HES has not received the tribal approval required by regulation.  SOF ¶ 11.

Finally, BIE does not assess the learning styles of HES students.  HES administrators and teachers could say only that they were familiar with the concept of a "learning style," and Ms. Paddock acknowledged HES does not evaluate learning styles.  SOF ¶ 12.

### B.  Defendants Have Failed to Act to Implement 25 C.F.R. §§ 36.22-.23

25 C.F.R. § 36.22 sets forth the minimum standards for an "Elementary instructional program," specifying the subjects and content areas that must be included in the education program for HES students in grades one through six.  Among other things, Section 36.22(a) provides that "elementary instruction programs" "shall include" instruction in "Fine arts," § 36.22(a)(5), and "Physical education," § 36.22(a)(6).  Section 36.22(b) provides that "[e]ach school shall integrate" various content areas into its elementary curriculum, including "Career awareness," § 36.22(b)(1), and "Health education," § 36.22(b)(3).  Section 36.23 is similarly structured, and sets forth the subjects and content areas that must be included in a "Junior high/middle school instructional program" for HES students in grades seven and eight.  Among other things, Section 36.23(b) states that the middle school curriculum at a BIE school "shall include" "fine arts and practical arts," § 36.23(b)(5), as well as "Physical education," § 36.23(b)(7).  Section 36.23(c) provides that various additional content areas—including "Consumer economics," § 36.23(c)(4), and "Health education," § 36.23(c)(5)—"shall be integrated" into the middle school curriculum.

There can be no dispute that these regulations require BIE to take specific, discrete action to provide instruction in the subjects and content areas listed.  Sections 36.22 and 36.23 repeatedly use the mandatory "shall."  *See Sacks*, 466 F.3d at 778.  Mr. Hastings has acknowledged they are mandatory, both in general and specifically as to HES.  SOF ¶ 4.

What is equally clear is that BIE has failed to provide instruction in multiple, required subject areas to the students at HES.  As both Ms. Paddock and Mr. Hastings admitted, HES

does not provide physical education instruction.  SOF ¶ 14.  HES also does not provide instruction in fine arts.  SOF ¶ 13.  Neither does HES integrate career awareness into its elementary curriculum, or consumer economics into its middle school curriculum.  SOF ¶¶ 15, 17.  BIE also fails to integrate health education into its curriculum for any grade level.  SOF ¶ 16.  Although individuals from Indian Health Services (IHS) visit the school "sporadically," *id.*, this is not a regular part of the curriculum, in contravention of 25 C.F.R. § 36.20(c), which mandates that "intraschool programs . . . which are directly related to or affect student instruction" provide services consistently throughout the school year.

### C.    Defendants Have Failed to Act to Implement 25 C.F.R. § 36.40

25 C.F.R. § 36.40 sets forth the minimum requirements for a school's library/media program, specifying that "[e]ight (8) to 12 percent of the basic collection must be composed of reference books, currently relevant and in a state of good physical condition, for practical use," § 36.40(a)(2)(ii), that "[a] periodical collection, suitable for the range of student abilities and interests being served . . . be maintained," § 36.40(a)(2)(iii), and that "[a] professional collection for the school staff shall be developed and maintained by the librarian in cooperation with a faculty committee," § 36.40(a)(2)(iv).  Also, Section 36.40(a)(3) requires that, for a school of HES' size, the library be serviced by a 1/5 time librarian.

These regulations require BIE to take specific, discrete action to provide the library and media center resources described in the regulations.  Section 36.40 repeatedly uses mandatory language—stating what the library "must be composed of," what content "shall be developed and maintained," and requiring that there "shall" be a librarian at least 1/5 of the time, *see Sacks*, 466 F.3d at 778, and again, Mr. Hastings has acknowledged that these regulations are mandatory generally and as to HES specifically, SOF ¶ 4.

BIE has indisputably and *for years* failed to act to provide mandated library and media center resources to the students at HES.  HES lacks the required part-time librarian.  Dr. Maxine Roanhorse-Dineyahze, former principal of HES, testified that HES did not have a librarian when she was at the school from April to October of 2018, Mr. Hastings testified

that there is no librarian detailed there now, and Ms. Paddock reported that the librarian detailed to HES in January 2019 simply never showed up for her detail.  SOF ¶¶ 18-20.

HES also lacks appropriate library facilities.  When Mr. Dearman first visited the HES library in 2015, the library was "just a storage room."  SOF ¶ 22.  Although HES now has a library, no one is "checking" to ensure that it "fulfills the requirements of section 36.40."  *Id.*  In March 2018, Catherine Muhammad, a teacher at HES, wrote that the library was "in a shambles," SOF ¶ 21, and BIE Director Tony Dearman testified that the library has gone unused for long stretches of time and "wasn't maintained consistently," SOF ¶ 22.  HES lacks up-to-date reference materials, a periodical collection, a professional collection for staff, and textbooks for the library.  SOF ¶ 23.  When asked directly whether HES's library/media program currently complies with 25 C.F.R. § 36.40, Mr. Hastings answered, "No."  SOF ¶ 24.

### D.   Defendants Have Failed to Act to Implement 25 C.F.R. § 36.41

25 C.F.R. § 36.41 provides that "[e]ach school shall establish a textbook review committee composed of teachers, parents, and students, and school board members," and sets forth the obligations of the textbook committee, including the requirement that "[t]he textbook review committee . . . establish a procedure and criteria for the annual review of textbooks and other materials used to complement instruction," and sets forth minimum standards that the "criteria for annual review" must include.  § 36.41(b).  This regulation requires specific, discrete actions, such as establishing a textbook review committee and criteria for an annual review, and it is mandatory in general and as to HES specifically, *Sacks*, 466 F.3d at 778; SOF ¶ 4.

BIE has indisputably failed to have a textbook review committee and to implement any of their required duties.  BIE's witnesses admitted that there is no review committee at HES.  SOF ¶ 25.  Mr. Hastings testified that BIE does not review the textbooks used at BIE schools to determine whether the schools are in compliance with 25 C.F.R. § 36.41, and that textbooks are not reviewed when assessing curriculum.  SOF ¶¶ 26-27.

**E.     Defendants Have Failed to Act to Implement 25 C.F.R. § 36.42**

25 C.F.R. § 36.42 provides that a BIE school with fewer than 200 students "shall make provisions for a part-time professional counselor."  § 36.42(b)(1).  This regulation requires a specific, discrete action, employing a counselor at least part time, and is mandatory in general and as to HES specifically, *see Sacks*, 466 F.3d at 778; SOF ¶ 4.

HES has frequently failed to employ a part-time professional, and the counselor HES employed for part of the 2018-2019 school year recently quit.  SOF ¶ 28.  Even when HES has had a certified counselor on staff in the 2018-2019 school year, that counselor was often unable to provide counseling services because she was called upon to teach general education.  SOF ¶ 29.  Mr. Hastings conceded that HES does not fulfill the requirements of Section 36.42 when the school counselor is teaching general education.  SOF ¶ 30.

**F.     Defendants Have Failed to Act to Implement 25 C.F.R. § 36.43**

25 C.F.R. § 36.43 provides that "All schools shall provide and maintain a well-balanced student activities program," and sets forth the requirements for that program, including the requirement that all student activities receive School Board approval. § 36.43(a).  The regulation  requires specific, discrete actions, such as requiring schools to offer student activities, including, but not limited to, "special interest clubs, physical activities, student government, and cultural affairs," 25 C.F.R. § 36.43, and is mandatory in general and as to HES specifically, *see Sacks*, 466 F.3d at 778; SOF ¶ 4.

BIE indisputably fails to offer a "well-balanced student activities program" at HES. As BIE's own witnesses acknowledged, HES has historically failed to offer student activities of any sort.  SOF ¶ 31.  In March 2019, HES created a student council, but that is the sole student activity offered at the school; there are no plans to offer other activities.  SOF ¶¶ 32-33.  The student council activity has not received School Board approval.  SOF ¶ 32.

**II.     DOI, THROUGH BIE, HAS INDISPUTABLY DISCRIMINATED AGAINST STUDENTS WITH DISABILITIES IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

BIE fails to meet basic education standards for all HES students, but it does even worse by students with disabilities.  Section 504 of the Rehabilitation Act, 29 U.S.C. § 794,

addresses discrimination against disabled individuals in federally funded programs. *Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 277-78 (1987); *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996) (Section 504 meant "to combat discrimination against disabled persons by public entities receiving federal financial assistance"). "Section 504 contains a broadly-worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals," *Mark H. v. Lemahieu*, 513 F.3d 922, 930 (9th Cir. 2008), and was intended "to protect disabled persons from discrimination arising out of both discriminatory animus and 'thoughtlessness,' 'indifference,' or 'benign neglect.'" *Crowder*, 81 F.3d at 1484 (quoting *Alexander v. Choate*, 469 U.S. 287, 295 (1985)).

Under Section 504, recipients of federal funding must provide individuals with disabilities "meaningful access" to benefits and services offered to individuals without disabilities. *See Alexander*, 469 U.S. at 301. DOE's Section 504 implementing regulations confirm that schools must give students with disabilities an "equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. § 104.4(b)(2).

To prove discrimination under Section 504, Plaintiffs must show that (1) they are disabled; (2) they are "otherwise qualified" to participate in a program or activity; (3) they were excluded from participation in, denied the benefits of, or discriminated against solely because of their disabilities; and (4) the program or activity receives federal funds. 29 U.S.C. 794(a)(1973); *see Weinreich v. L.A. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

The undisputed facts demonstrate that all four elements are met here, and Plaintiffs are entitled to summary judgment. The second and fourth elements require little discussion. On the second element, student Plaintiffs are indisputably "otherwise qualified" to attend HES and other BIE-operated schools because they are (1) school-aged children; (2) eligible "Indian" students under 25 C.F.R. § 39.2, and (3) entitled to a public education from BIE, just like their Native American peers from federally recognized tribes without disabilities. SOF ¶ 36. On the fourth element, Defendants admit that the BIE and HES receive federal funds. SOF ¶ 35. The first and third elements are also satisfied for reasons discussed below.

### A.   Several Student Plaintiffs Are Individuals with Disabilities

Section 504 defines "disability" as a "physical or mental impairment that substantially limits one or more life activities," including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. §§ 12102(1)(A), (2)(A).  Section 504's definition of disability encompasses well-known conditions such as dyslexia or Attention Deficit Hyperactivity Disorder (ADHD), but it is not limited to such conditions, and reaches more broadly to embrace disabling conditions that are not recognized as disabilities for the purposes of similar statutes, such as the Individuals with Disabilities Education Act (IDEA). *Compare* 42 U.S.C. § 12102 (defining disability for purposes of Section 504), *with* 20 U.S.C. § 1401(3)(A)(ii) (defining disability for purposes of IDEA).  Thus, the effects of childhood adversity and complex trauma can rise to the level of a disability under Section 504 when they limit a child's life activities—a possibility this Court previously recognized in denying Defendants' motion to dismiss on this issue.  *See* ECF No. 100 at 7; *see also Peter P. v. Compton Unified Sch. Dist., et al.*, 135 F. Supp. 3d 1098, 1109-11 (C.D. Cal. 2015) (upholding allegations that "complex trauma can result in neurobiological effects constituting a physical impairment" under Section 504).  Plaintiffs' experts and BIE's own witnesses affirmed that exposure to trauma can impact a student's ability to learn, read, think, concentrate, communicate, and work in the classroom.  SOF ¶ 92.

There is no genuine dispute that four of the Student Plaintiffs are individuals with disabilities under Section 504.  Taking each in turn:

**Stephen C.** has . SOF ¶ 37.  Stephen C. also suffers from

1  ███████████████. SOF ¶¶ 37, 40.  Stephen C.'s disabilities indisputably impact his

2  ability to learn, read, think, concentrate, and communicate.  SOF ¶¶ 38-39, 41.

3     **Durell P.** has ███████████████████████████████████

4  ██████████████████████████████████████████████████████████

5  ███████████████████████████████████.  SOF ¶ 46.  Durell P. also suffers

6  from ████████████████████████████████████████████████████████

7  ██████████████████████████████████████████████████.  SOF

8  ¶¶ 46-47.  Durell P.'s disabilities indisputably impact his ability to learn, think, concentrate,

9  and communicate.  SOF ¶ 48.

10     **Taylor P.** has a ███████████████████████████.  SOF ¶ 52.

11  She also has ████████████████████████████████████████████████

12  ████████████████████████.  SOF ¶¶ 52-53.  Taylor P.'s

13  disabilities indisputably affect her ability to learn, think, and concentrate.  SOF ¶¶ 52, 54.

14     **Moana L.** has a ██████████████████████████████████

15  █████████████████████████.  SOF ¶ 57.  Moana L. also has ████████████

16  ██████████████████████████████████████████████████████████

17  ███████████████.  SOF ¶¶ 57-58.  Her disabilities indisputably impact her ability to see,

18  hear, sleep, learn, read, concentrate, think and communicate.  SOF ¶ 59.

19     Two additional Student Plaintiffs, Olaf D. and Freddy P have also been identified as

20  students with disabilities in the course of this litigation.  SOF ¶¶ 71, 73.  HES has failed to

21  identify or evaluate these individuals as students with disabilities, but in the course of this

22  litigation, the students were independently evaluated and determined to have conditions that

23  may warrant protection under Section 504.  SOF ¶¶ 71-73.  Freddy P. has been identified

24  with ██████████████ that impacts his ability to communicate and learn.  SOF ¶ 71.  Olaf

25  D. has been provisionally identified with █████████████████████████████████

26  ████████████████████ that may impact his ability to learn.  SOF ¶ 73.

27     **B.**    **HES Denies Students with Disabilities Meaningful Access to Education**

28     Under Section 504, BIE-operated schools, including HES, must provide students with

disabilities—including individuals impacted by trauma—with "meaningful access" to benefits and services offered to students without disabilities. *See Alexander*, 469 U.S. at 301. In this context, denial of "meaningful access" under Section 504 occurs when a federal grantee (1) denies a qualified individual a "reasonable accommodation" necessary to meaningfully access services or (2) violates a regulation implementing the Rehabilitation Act. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016). In a public school, "reasonable accommodations" include (without limitation) providing a free appropriate public education to all students regardless of the nature or severity of their disabilities. *See, e.g.*, 34 C.F.R. §§ 104.33(a), 104.33(b)(1); *Mark H.*, 513 F.3d at 937-38. Section 504 also requires that a school "must make reasonable modifications to its policies, practices, or procedures whenever modifications are necessary to ensure equal opportunity" for qualified students with disabilities. *Alexander*, 469 U.S. at 300-01.

HES indisputably denies students with disabilities meaningful access to public education because it (1) lacks the staff, space, and resources to meet the needs of its students with disabilities; (2) excludes students with disabilities from school; and (3) fails to provide reasonable accommodations to students with complex trauma. These denials of meaningful access are systematic, and BIE admits that it does not have policies and procedures in place to implement Section 504. As a result of these failures, Student Plaintiffs with disabilities are provided less education and lower quality education than those without disabilities.

### 1.    HES Lacks Adequate Personnel, Space, and Support to Provide Meaningful Access to Education

HES lacks the staff and the space to provide reasonable accommodations to its students with disabilities. There is no dispute that the school has rarely if ever had enough general or special education teachers. SOF ¶¶ 76, 78. If ever fully staffed, HES would employ seventeen professionals. SOF ¶ 74. The two special education positions on HES' organizational chart are often vacant. SOF ¶ 78. BIE either details teachers to HES to serve students with disabilities or leaves the positions unfilled, resulting in extended periods of time, often months, where there is no special education teacher at HES. *Id.*

Due to the lack of adequate teaching staff, HES is unable to meet the needs of students with disabilities.  General education teachers at HES acknowledge that they are not able to meet the needs of students with disabilities or implement these students' accommodations, especially in multi-grade classrooms.  SOF ¶ 77.  When HES does have a special education teacher, the teacher often has to serve as a substitute teacher for general education classes and even as acting principal, to the detriment of special education students who require her services.  SOF ¶ 79.  Because of the chronic absence of special education teachers, students who need specialized instruction often receive no instruction at all.  SOF ¶¶ 78, 80.

The lack of consistent, full staffing at HES has indisputably had an adverse impact on students with disabilities.  SOF ¶ 81.  As HES's current special education teacher acknowledges, with each new teacher, children are "learning a routine[,] personalities and expectations" rather than the material in the curriculum because each new teacher does not "know what's been covered if there's no consistency."  SOF ¶ 82.  Students express anxiety and worry about the staff turnover.  *Id.*

Even when HES has a special education teacher, there is no genuine dispute that HES lacks space, and staff lack sufficient training, to accommodate students with disabilities.  On one occasion, the school determined that it could not place any students with disabilities in a self-contained classroom, even if that was a necessary accommodation.  SOF ¶ 83.  And BIE provides no guidance on how teachers should accommodate students with disabilities: BIE has no written policies regarding Section 504, and teachers receive no materials or training to help them provide meaningful access to students with disabilities.  SOF ¶ 85.

HES has rarely had a certified counselor on staff, and it does not have one now.  SOF ¶ 86.  Instead, BIE provides mental health counselors to students on an inconsistent basis through the IHS and by hiring providers on a contract basis.  *Id.*  These ad-hoc mental health services are not always available to special education students.  SOF ¶¶ 44, 55, 87.  Ms. Boyd described a need for someone besides a school teacher to work with "children with emotional [disabilities] or disturbances."  SOF ¶ 88.  BIE has indisputably failed to rectify this patchwork of mental health and counseling services at HES and does not even have

1   policies concerning the presence of mental health professionals at its schools.  SOF ¶ 89.

2           **2.      HES Unlawfully Excludes Students with Disabilities from School**

3           HES not only fails to reasonably accommodate students with disabilities—it often

4   excludes them entirely.  Section 504 and its implementing regulations prohibit separating

5   students with disabilities from their non-disabled peers unless "it is demonstrated . . . that

6   the education of the person in the regular environment with the use of supplementary aids

7   and  services  cannot  be  achieved,"  and  that  they  participate  in  "nonacademic  and

8   extracurricular services and activities" with their non-disabled peers "to the maximum extent

9   appropriate." 34 C.F.R. § 104.34(a)-(b).  And even when removal is appropriate, students

10  with  disabilities  are  to  be  provided  education  in  *comparable*  facilities.    34  C.F.R.

11  § 104.34(c); *see Mark H.*, 513 F.3d at 937 (acknowledging that §104.34(a)-(c) are "aimed

12  at preventing baseless segregation of disabled and nondisabled students clearly represent a

13  prohibition on simple discrimination as long understood").

14          Removing a student with a disability from the classroom is discriminatory because it

15  leads to "stigmatization and deprivation of opportunities for enriching interaction with

16  fellow students." *J.S., III ex rel. J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986-87

17  (11th Cir. 2017) (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999)).  When

18  done repeatedly, as when students with disabilities are placed on shortened school day

19  schedules, classroom exclusion also deprives students of instruction and opportunities to

20  learn—to the point that the DOE OCR "has repeatedly held that a blanket policy of shortened

21  school days for disabled students violates section 504." *Christopher S. ex rel. Rita S. v.*

22  *Stanislaus Cty. Office of Educ.*, 384 F.3d 1205, 1212 (9th Cir. 2004).

23          Nonetheless, there is no dispute that when HES students with disabilities exhibit non-

24  conforming behaviors, HES often responds by sending the student home or moving them to

25  a shortened schedule, in violation of Section 504.  SOF ¶¶ 42, 49, 90.  Both Stephen C. and

26  Durell P. have been on shortened schedules for extended periods.  SOF ¶¶ 42, 49.

27          What is more, HES has subjected children with disabilities, including Stephen C. and

28  Durell P., to additional stigmatization by contacting law enforcement to remove them from

the classroom and campus.  SOF ¶¶ 43, 50, 91.  Although HES claims not to have space for a special education classroom, it gave police a classroom for office space.  SOF ¶ 84.

### 3. BIE Fails to Provide Reasonable Accommodations to Students at HES with Disabilities Resulting from Trauma

Defendants have indisputably failed to implement effective and reasonable school-wide accommodations that would allow students impacted by childhood trauma to access the benefits of a public education.  Plaintiffs' experts demonstrated—and Defendants' hybrid fact-expert witnesses failed to contradict—both that Student Plaintiffs' trauma impairs their ability to access education, and that reasonable accommodations can allow traumatized children, such as Student Plaintiffs, to access the benefits of a public education.  SOF ¶¶ 41, 48, 54, 59, 94-101.   Experts in education, behavioral health, and neuroscience have identified a number of reasonable accommodations that allow traumatized children to access the benefits of an education—none of which Defendants have implemented.

Dr. Tami DeCoteau testified without contradiction that trauma-informed programs can train teachers to recognize and mitigate the effects of childhood trauma such as trauma-induced behaviors and signs of emotional dysregulation in students.  SOF ¶ 95.  These programs can involve practices such as mindfulness, yoga, breathing, and other self-regulation strategies that fit into the classroom routine.  SOF ¶ 94.  Counselors, special education teachers, and other school staff must also employ trauma-informed principles to avoid exacerbating the effects of trauma.  SOF ¶ 96.  Dr. DeCoteau also described strategies to mitigate the effects of historical trauma in Native American communities, a contributing factor to many of the Student Plaintiffs' adverse childhood experiences.  SOF ¶ 97.

Dr. George Davis testified without contradiction that non-confrontational discipline, expressive activities, teacher training, and academic assistance are all important accommodations for students affected by trauma.  SOF ¶ 98.  Dr. Davis explained that conventional therapies can be ineffective for traumatized children, especially in unsafe and unstable school environments.  SOF ¶ 99.  Restraint and seclusion practices are especially toxic, and "should not be used whatsoever except in an emergency."  SOF ¶ 100.

Addressing the specific experiences of the four Student Plaintiffs impacted by trauma, Dr. Noshene Ranjbar recommended several school wide accommodations to address trauma, including a trauma-informed approach to education and treatment, minimizing bullying, training in cultural sensitivity and de-escalation/behavioral management for school staff, and mind-body interventions such as physical activity and mindfulness.  SOF ¶ 101.

BIE administrators and HES staff repeatedly admitted that the school does not employ *any* trauma-informed strategy in instruction, discipline, or any other aspect of school programming.  SOF ¶ 102.  In fact, several administrators and staff had not heard of the term "complex trauma."  SOF ¶ 103.  Testifying on behalf of BIE, Mr. Dearman admitted that BIE does not have any policies or guidance on trauma-informed care.  SOF ¶ 102.  On occasion, BIE will send a staff member to HES to help students with acute traumatic experiences, such as the death of a student or staff member.  SOF ¶ 104.  These one-off attempts to address new traumatic experiences indisputably fall well short of the systemic relief required to accommodate students affected by childhood trauma.

### III.   DOI, THROUGH BIE, INDISPUTABLY FAILS TO COMPLY WITH THE DOE REGULATIONS THAT IMPLEMENT SECTION 504

There can be no dispute that BIE and HES must comply with the regulations that implement Section 504.  Defendants admit that BIE and HES must comply with 43 C.F.R. Part 17, promulgated by DOI to implement nondiscrimination in DOI's federally assisted programs.  SOF ¶ 105.  In turn, 43 C.F.R. § 17.220 mandates that education programs or activities that receive federal financial assistance comply with DOE's Section 504 requirements at 34 C.F.R. Part 104, subpart D.  The DOI regulations thus confirm that DOE's regulations implementing Section 504 apply to BIE-operated schools, including HES.  Despite these mandates, HES indisputably fails to comply with the DOE regulations implementing Section 504 that address (1) location and notification of students with disabilities, and (2) procedural safeguards for students with disabilities.  *See* 34 C.F.R. §§ 104.32 & 104.36.  BIE's failure to follow these regulations amounts to a denial of meaningful access under Section 504.  *See A.G.*, 815 F.3d at 1206.

**A.    DOI, Through BIE, Violates 34 C.F.R. § 104.32, Mandating "Location and Notification" of Students with Disabilities at HES**

Because unidentified students with disabilities are at risk of being denied meaningful access, Section 104.32 requires that schools identify students who might require reasonable accommodations.  As the Court has previously recognized, BIE must ensure that HES fulfills its affirmative duty to identify, locate and evaluate all children within HES's jurisdiction suspected of having a disability.  ECF No. 100 at 11 (recognizing that Section 104.32 requires DOI to have "a system for identifying and assessing the needs of students with disabilities," and to "effectively communicate with student plaintiff parents and guardians about the services that are required to be available to students with disabilities").

There is no genuine dispute that BIE and HES do not satisfy their identification and location duties under Section 104.32.  HES principals' testimony demonstrated that they do not understand their identification obligations under Section 504.  For example, Dr. Roanhorse-Dineyahze testified that she did not know what kind of assessments were available to students potentially needing special education; Ms. Paddock could not identify any methods by which HES endeavors to identify children in the community who may need special education services; and, when asked what complaint procedures were available under Section 504, Dr. Williamson could point only to procedures under IDEA, which are not available to children who are disabled solely under Section 504.  SOF ¶ 106.  Even when a referral for a special education evaluation has been made, HES does not always have evaluators available to conduct needed evaluations.  SOF ¶ 107.

Student Plaintiffs are unable to access public education and are denied educational benefits due to HES's failure to identify them as students with disabilities.  For example, although HES had actual notice of Moana L.'s ████████ in 2016, and although her grandmother and legal guardian requested an evaluation for special education in March 2018, she was not identified or evaluated for special education services by HES until March 2019.  SOF ¶¶ 60-65.  In fact, HES refused to evaluate Moana L. for special education until she had ████████████████████—corrections that Plaintiffs' expert opined,

-18-

without contradiction, were not necessarily appropriate and that were not required to complete an accurate evaluation of Moana L.'s capabilities and needs.   SOF ¶¶ 62-63. Similarly, Freddy P. has not yet been identified for evaluation for special education despite his parent informing BIE that he received special education while he was in Head Start.   SOF ¶¶ 71-72.   The independent evaluation obtained in this litigation identifies Freddy P. with a ███████████████████████████████.   SOF ¶ 71.   BIE admitted that it does not have any procedures in place for identifying children with complex trauma.   SOF ¶ 102.

**B.    DOI, Through BIE, Violates 34 C.F.R. § 104.36 Mandate of Procedural Safeguards for HES Students with Disabilities**

Section 104.36 requires schools to establish and enact procedural safeguards protecting students with disabilities.   Procedural safeguards must be in place in advance of "actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services." 34 C.F.R. § 104.36.   The required safeguards include (1) notice to families of schools' obligations under Section 504; (2) an opportunity to review records; and (3) an impartial hearing and a review procedure.  34 C.F.R. § 104.36.

HES systematically, and indisputably, fails to comply with the regulations on procedural safeguards in at least three ways.   First, none of Student Plaintiffs' parents or guardians have been provided with notice of HES or BIE's obligations under Section 504. SOF ¶ 108.   Administrators at HES acknowledge that parents are not provided with notification of HES's obligations under Section 504.   SOF ¶ 111.   The HES Student Handbook—the only school-level policy document witnesses identified as even potentially including information on Section 504—does not address HES's obligations under Section 504.  SOF ¶ 112.   And the Handbook is not provided to parents or guardians.  SOF ¶ 113.

Second, HES fails to make student records available to parents.  HES has never informed parents and guardians of the Student Plaintiffs about how to access student records, and has frequently provided parents with incomplete copies of Individualized Education Plans (IEP), or even failed to provide any copy of an IEP.  SOF ¶ 115.  As a result, parents

1   of students with disabilities are unable to review their student's records to ensure that they

2   are accessing the education to which they are entitled.  BIE Administrators have been

3   informed about concerns over the shredding of documents at HES, but have taken no serious

4   action to investigate those concerns.  SOF ¶ 116.

5        Third, HES does not have an impartial hearing and review procedure.  Mr. Dearman

6   acknowledged that BIE does not have any written policies *at all* related to Section 504.  SOF

7   ¶ 117.  Administrators at HES could not describe how a student or parent would file a

8   complaint under Section 504, and it is undisputed that BIE has not identified a Section 504

9   coordinator for HES to whom students or parents can direct complaints.  SOF ¶¶ 114, 118.

10  Current and former principals at HES do not recall receiving any training or materials

11  regarding Section 504 obligations.  SOF ¶ 119.  Teachers confirmed that they did not know

12  of any policies or procedures related to Section 504.  *Id.*

13       Without basic knowledge of the school's obligations under Section 504, and without

14  procedural safeguards, BIE and HES staff are unable to meet their responsibilities to students

15  with disabilities—and BIE is once again in clear violation of binding regulations.

16  **CONCLUSION**

17       Discovery in this case has confirmed what was well known when Plaintiffs filed their

18  original complaint:  Under BIE's control and supervision, HES is in a state of near-constant

19  chaos and disarray, failing to meet even minimal standards for the provision of general

20  education, and systematically failing to meet the needs of students with disabilities.  The

21  situation at HES has persisted for years with BIE's full awareness.   The school's

22  shortcomings are so severe, pervasive, and longstanding that even BIE's own witnesses did

23  not deny them, leaving many of Plaintiffs' allegations established beyond reasonable dispute

24  and appropriate for summary judgment.

25       For the reasons stated herein, Plaintiffs respectfully request that this Court grant

26  partial summary judgment in their favor, establishing Defendants' liability with respect to

27  Counts I, III, IV, V, and VI.

28

1   DATED:  May 31, 2019                    MUNGER, TOLLES & OLSON LLP

2                                           By:        */s/ Emily C. Curran-Huberty*

3                                           Attorneys for Plaintiffs

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of San Francisco, State of California. My business address is 560 Mission Street, Twenty-Seventh Floor, San Francisco, CA 94105-2907.

On May 31, 2019, I served true copies of the following document(s) described as **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, MEMORANDUM IN SUPPORT, SEPARATE STATEMENT OF MATERIAL FACTS AND EXHIBITS THERETO** on the interested parties in this action as follows:

LISA A. OLSON, D.C. Bar No. 384266
CESAR A. LOPEZ-MORALES, MA Bar No. 690545
CARLOTTA WELLS
CAROL FEDERIGHI
CRISTEN C. HANDLEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530
Telephone: (202) 305-8550
Facsimile: (202) 616-8460
Email: cesar.a.lopez-morales@usdoj.gov
    Lisa.Olson@usdoj.gov
    carol.federighi@usdoj.gov
    carlotta.wells@usdoj.gov
    cristen.handley@usdoj.gov
*Attorneys for Defendants*

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address Stephanie.Ferrell@mto.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 31, 2019, at San Francisco, California.

_____
Stephanie Ferrell