JOSEPH H. HUNT
Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director
LISA A. OLSON, D.C. Bar No. 384266
CAROL FEDERIGHI, TX Bar No. 06872950
CRISTEN C. HANDLEY, MO Bar No. 69114
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 514-5633
Facsimile:  (202) 616-8470
Email: lisa.olson@usdoj.gov
*Counsel for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen C., a minor, by Frank C., guardian ad litem, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>Bureau of Indian Education, *et al.*,<br><br>　　　　　　Defendants. | No. 3:17-cv-08004-SPL<br><br>**DEFENDANTS' MOTION FOR PARTIAL RELIEF FROM THE DECEMBER 17, 2019 ORDER, AND ACCOMPANYING MEMORANDUM** |

　　　　Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, defendants hereby respectfully move the Court for partial relief from the Court's December 17, 2019 Order ("Order") [ECF No. 214].  Defendants moved for summary judgment on all but Count 3 of the Third Amended Complaint ("Complaint"), and the Court denied plaintiffs' motion for summary judgment on Count 3 on grounds that "[d]efendants, as members of the executive branch, are not subject to Section 504" of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504").  Order at 6.  On these same grounds, the Court granted defendants' motion for summary judgment on Count 4.  The relief requested in this motion implicates the Court's Order with respect to Claims 3 and 4 of the Complaint.

　　　　In particular, to ensure consistency with existing authority, defendants seek relief from the ruling that "[d]efendants, as members of the executive branch, are not subject to

Section 504." The language of Section 504 indicates that it applies to "any program or activity conducted by any Executive agency," 29 U.S.C. § 794(a), and the statute has uniformly and consistently been construed to apply to executive agencies. *See, e.g., Lane v. Pena*, 518 U.S. 187, 199 (1996) ("Section 504 . . . extends its coverage to 'program[s] or activit[ies] conducted by any Executive agency."); *J.L. v. Social Sec. Admin.*, 971 F.2d 260, 270 (9th Cir. 1992) ("Therefore, we conclude that a plaintiff states a claim under the Rehabilitation Act by alleging that the government's action . . . discriminates on the basis of handicap."); *see also Taylor v. City of Shreveport*, 798 F.3d 276, 284 (5th Cir. 2015) (acknowledging that a plaintiff could pursue a Rehabilitation Act claim "against a federal *agency*") (emphasis in original); *Rhode Island Handicapped Action Comm. v. Rhode Island Pub. Transit Auth.*, 718 F.2d 490, 497 n.9 (1st Cir. 1983) (noting that "federal agencies . . . are subject . . . to section 504 of the Rehabilitation Act"). On the basis of this authority, defendants are subject to the statutory requirements of Section 504, because the statute prohibits discrimination against individuals with disabilities "under any program or activity conducted by any Executive agency," 29 U.S.C. § 794(a), such as the Bureau of Indian Education's operation of Havasupai Elementary School ("HES"). Defendants therefore seek relief from the Court's ruling that defendants are not subject to Section 504's statutory requirements. *See* Order at 6.[1]

---

[1] The Court has entered summary judgment for defendants on Counts 1, 2, 4, 5, and 6 of the Complaint. Counts 1 and 2 allege that defendants failed to provide a basic education to students at HES in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1) and (2). The Court granted defendants' motion for summary judgment as to Counts 1 and 2 because plaintiffs raised "an impermissible, systematic challenge" that improperly sought "'wholesale' improvement of an agency program under the APA through the court." Order at 4, 5 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

Counts 5 and 6 of the Complaint allege that defendants violated certain requirements under U.S. Department of Education ("DOE") regulations implementing Section 504. The Court granted summary judgment for defendants as to Counts 5 and 6 because the United States Department of the Interior ("DOI") is not subject to those DOE regulations. Order at 9-10. Congress recognized, and the courts have consistently held,

2

1. **The Court Should Consider The Appropriate Remedy With Respect To Count 3 Taking Into Account The Current Status of Defendants' Efforts To Comply With Section 504**

Of the six counts in the Complaint, Count 3 is the only remaining claim in this case. Count 3 alleges that defendants violated Section 504 by failing to provide a system enabling students with disabilities to gain access to a public education. Order at 6. The Court denied plaintiffs' motion for summary judgment as to Count 3 on grounds that defendants are not subject to Section 504. *Id.* at 7. Defendants did not move for summary judgment on Count 3.

Because defendants are subject to Section 504, defendants respectfully submit that the Court should consider the appropriate remedy for Count 3 and allow defendants an opportunity to demonstrate the current status of its compliance with Section 504. Since the filing of the Complaint and continuing to the present, defendants have taken steps to come into compliance with Section 504 and are implementing measures toward full compliance with Section 504 at HES despite the constraints of geography, a housing shortage, and budgetary limitations. *See* Defendants' Responses to Plaintiffs' Separate Statement of Material Facts and Additional Facts Precluding Judgment in Favor of Plaintiffs [ECF No. 195] at ¶¶ 120-156. Defendants request the opportunity to present these facts to the Court so that any relief the Court may order will take the current section 504 compliance efforts into consideration.

---

that federal executive agencies are not "recipients of federal financial assistance" so as to fall within the category of entities subject to the DOE regulations in question; DOI's own regulations implementing Section 504 expressly indicate that DOI is not subject to the DOE regulations in question; and DOE has no authority unilaterally to compel other federal agencies to comply with DOE regulations. *See generally* Defendants' Motion and Memorandum in Support of Motion for Partial Summary Judgment ("Def. SJ Memo.") [ECF No. 182] at 13-15; Defendants' Reply in Support of Their Motion for Partial Summary Judgment ("Def. SJ Reply") [ECF No. 203] at 8-12; Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 191] at 11.

Count 4 will be addressed below.

The Court has discretionary power in shaping equity decrees, *U.S. v. Oakland Cannabis Buyers' Co-Op*, 532 U.S. 483, 496 (2001), which should be "mould[ed] [sic] to the necessities of the particular case," *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). "Equitable remedies are a special blend of what is necessary, what is fair, and what is workable." *Id.* In using its equitable power, the Court need not employ "the extraordinary remedy of an injunction" if there are other means of ensuring compliance with a statute. *Oakland Cannabis*, 532 U.S. at 496-98. Given that defendants are diligently taking the actions necessary to come into compliance with Section 504, and are fully committed to continuing those efforts in the future, defendants should be afforded the opportunity to show that there is no need for an injunction to ensure that Section 504 will be effectively enforced, and that all appropriate mechanisms are in place to achieve compliance with Section 504 within the constraints governing HES.

**2.     There Are No Material Facts In Dispute With Respect To Count 4, Which Is Ripe For Decision As A Matter Of Law**

Count 4 of the Complaint alleges that defendants violated Section 504 by failing to transform HES into a trauma informed school in order to provide student plaintiffs impacted by childhood adversity with access to a public education. Order at 7. Plaintiffs claim that the transformation of HES into a trauma informed school would be a "reasonable accommodation" required by Section 504. *Id.* The Court granted defendants' motion for summary judgment with respect to Count 4 on grounds that Section 504 does not apply to defendants. *Id.* at 8.

Because defendants are subject to Section 504, defendants respectfully submit that the Court should address the merits of the parties' arguments regarding Count 4 and grant summary judgment in favor of defendants. Plaintiffs conducted full discovery as to Count 4 and submitted declarations of putative experts regarding the trauma informed practices that defendants allegedly should adopt; the parties have fully briefed the merits of Count 4; and there are no disputes as to any material fact. Count 4 is therefore ripe for decision as a matter of law.

Defendants will not repeat their position here except to emphasize that *plaintiffs' own witnesses* have attested to the *undisputed* facts showing that, as a matter of *law*, the implementation of trauma informed practices at HES would not constitute a "reasonable accommodation." See Def. SJ Memo [ECF No. 182] at 10-13; Def. SJ Reply [ECF No. 203] at 5-8. First, it is not in dispute that instituting trauma informed practices would require major reforms and resources that HES does not have in its current structure.[2] Hence, the measures would involve "fundamental and substantial modifications" of HES and, as a matter of law, are therefore not a "reasonable accommodation." *Zulke v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999) (citing *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

Second, plaintiffs' putative experts have never visited HES, observed the students or teachers there, or considered specifically whether such practices in fact are appropriate for HES.[3] Thus, plaintiffs' experts have failed to make the "fact-specific, individualized

---

[2] Plaintiffs seek wide-ranging changes to HES. *See* Complaint Relief ¶ 3i. And according to plaintiffs' putative experts, instituting trauma-informed practices would require special training and mentoring, Deposition of George Davis ("Davis Dep.") 20:16-20, Deposition of Noshene Ranjbar ("Ranjbar Dep.") 62:2-7, Deposition of Tami DeCoteau ("DeCoteau Dep.") 24:2-7; "experts in . . . education, social work, psychology, . . . occupational therapists," Davis Dep. 22:21-25; additional financial and human resources, Davis Dep. 24:20-22, DeCoteau Dep. 21:10-14, Ranjbar Dep. 49:1-6; access to additional services, Ranjbar Dep. 62:24-63:6; and a consultant to help develop a "shift in adult perspective," Deposition of Lisa Persinger ("Persinger Dep.") 47:4-13.

[3] Plaintiffs rely on putative experts who have never visited HES or worked with the students as a whole, and who have no first-hand knowledge about HES or the Tribe. *See* Ranjbar Dep. 28:3-5, 63:13-66:9; Davis Dep. 44:14-16, 34:22-24, 35:20-36:2, 36:13-21, 38:8-10, 43:9-21, 46:3-6, 46:12-16; DeCoteau Dep. 29:11-18, 45:15-19, 48:4-15. None of plaintiffs' putative experts has gone so far as to say HES should be converted into a trauma-informed school for the benefit of the two student plaintiffs identified as having trauma-related disorders, Taylor P. and Moana L. And in fact, Taylor P. and Moana L. are already receiving special education services through their Individualized Education Programs ("IEPs"), which have been approved by their parents/guardians and legal counsel, and which do not include a need for instituting trauma-informed practices. Should they have any concerns regarding the appropriateness of their IEPs, their parents/guardians

analysis" which is required in order to determine if trauma informed practices, as a matter of law, are a "reasonable accommodation." *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010); *Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) ("[T]he determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry.").

Third, plaintiffs' putative experts admitted that trauma informed practices are still an evolving field.[4] What plaintiffs have proposed are, according to plaintiffs' own putative expert, simply "best practices," DeCoteau Dep. 29:6-10, and an "example … of how trauma-informed practices ought to look," DeCoteau Dep. 37:17-20, in an ideal world. It is not "reasonable" to expect BIE to adopt trauma informed practices on a wholesale basis when there is no consensus -- even among plaintiffs' own putative experts -- as to exactly what those practices should be.

Finally, the testimony of the Bureau of Indian Education's Student Health Program Specialist, Teresia Paul, shows that to transform HES into a trauma informed school would be an undue burden on defendants.[5] None of plaintiffs' evidence refutes the fact that

---

may exercise their administrative remedies under the Individuals with Disabilities Education Act at any time.

[4] Plaintiffs' putative expert admits that trauma-informed practices are an "emerging" area, Persinger Dep. 43:21-22, 46:17, 49:12-13, and that there is no evidence-based model in existence for a trauma-informed school, Persinger Dep. 46:7-17, and therefore no agreed upon set of standards that have been successfully implemented based on empirical evidence that such practices are the best practices, Persinger Dep. 44:23-45:17. None of plaintiffs' experts could name an evidence-based trauma-informed school. *See* Davis Dep. 20:12-13; Ranjbar Dep. 51:21-23; Persinger Dep. 46:7-17; DeCoteau Dep. 17:13-18:16.

[5] Plaintiffs deposed Ms. Paul about the trauma-informed school model that plaintiffs' putative experts were proposing. Paul Dep. 102:3-135:17. Ms. Paul testified that such a model would be unduly burdensome -- because as an academic institution, HES is not equipped to act as a "treatment facility," *id.* 130:3-8, with its "multi-faceted" requirements, *id.* 103:19-23. *See also* Declaration of Teresia Paul [ECF No. 183-23] ¶ 2. Plaintiffs should have anticipated that defendants would be showing an undue burden because plaintiffs themselves introduced the claim that trauma-informed practices are a "reasonable

instituting a trauma-informed system at HES would entail undue financial and logistical burdens.

The only question for the Court to resolve here is whether it is "reasonable" for BIE to adopt trauma informed practices given the facts described above. Because there are no material facts in dispute, the question may be answered as a matter of law and, thus, the Court should find that the adoption of trauma-informed practices would not be a "reasonable accommodation." *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 208 (1982) ("[C]ourts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."); *Zulke*, 166 F.3d at 1048 ("[D]eference is appropriately accorded an educational institution's determination that a reasonable accommodation is not available."); *see also Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) (noting that court would "abstain from an in-depth, *de novo* analysis of suggested accommodations that the school rejected if the institution demonstrates that it conducted such an inquiry itself and concluded that the accommodations were not feasible or would not be effective"). Count 4 has been fully briefed and is ready for a decision. Thus, in addition to clarifying that defendants are subject to Section 504 of the Rehabilitation Act, the Court should also grant summary judgment in defendants' favor on Count 4 on grounds that, as a matter of law, requiring defendants to transform HES into a trauma informed school would not constitute a "reasonable accommodation" under Section 504.

## CONCLUSION

For the foregoing reasons, the Court should grant this motion, rule that defendants are subject to Section 504, set a briefing schedule on the appropriate remedy for Count 3 of the Complaint, and grant summary judgment as a matter of law for defendants on Count 4 of the Complaint.

---

accommodation." Complaint ¶ 278. The fact that plaintiffs neglected to refute Ms. Paul's testimony in any of the ten declarations they submitted from their putative experts in this case is not a basis for disregarding Ms. Paul's declaration.

Dated: January 6, 2020

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
CARLOTTA P. WELLS
Assistant Branch Director

/s/ **Lisa A. Olson**
LISA A. OLSON, D.C. Bar No. 384266
CAROL FEDERIGHI, TX Bar No. 06872950
CRISTEN C. HANDLEY, MO Bar No. 69114
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 514-5633
Facsimile: (202) 616-8470
Email: lisa.olson@usdoj.gov